UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

---

YPSILANTI TOWNSHIP CITIZENS FOR RESPONSIBLE GOVERNMENT, ballot question committee,

   Plaintiff,

v.

JOCELYN BENSON, in her official capacity as Secretary of State of Michigan, CHARTER TOWNSHIP OF YPSILANTI, and HEATHER JARRELL ROE, in her official capacity as Ypsilanti Township Clerk.

   Defendants.

Case No. 5:22-cv-10614

Hon.

---

Hannah Stocker (P82847)
Attorneys for Plaintiffs
23332 Farmington Road #98
Farmington, MI 48336
(248) 252-6405 (phone)
hannah@stockerlawpllc.com

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, Ypsilanti Township Citizens for Responsible Government ("Plaintiff"), in its capacity as local ballot question committee, by and through its counsel, Hannah Stocker, files this Complaint against Defendants Jocelyn Benson, Secretary of State of Michigan, in her official capacity; the Charter Township of

1

Ypsilanti; and Heather Jarrell Roe, in her official capacity as Ypsilanti Township Clerk.

## INTRODUCTORY STATEMENT AND SUMMARY

1. Plaintiff is a duly-formed ballot question committee that sought to petition to submit a zoning ordinance (the "Revised Zoning Ordinance") adopted by the Board of Trustees of the Charter Township of Ypsilanti (the "Township") to the voters of the township for approval, prior to its enactment.

2. Plaintiff is filing this action to challenge the constitutionality of MCL 125.3402(2), which requires a township resident who wishes to submit a zoning ordinance to the vote of the township's electors to file a petition containing the signatures of 15% of the registered electors residing in the zoning jurisdiction who voted in the last gubernatorial election.

3. Pursuant to MCL 125.3402(2), Plaintiff must collect the requisite number of signatures within 30 days of publication of the Revised Zoning Ordinance.

4. The Charter Township of Ypsilanti contains 23,923 registered electors who voted in the last gubernatorial election. Therefore, Plaintiff must collect 3,588 valid signatures to have its petition accepted and the zoning ordinance submitted to the electors.

5. In larger municipalities, such as the Charter Township of Ypsilanti, MCL 125.3402 places an undue burden on the ability of Plaintiff and other similarly situated parties to qualify to have a challenged Zoning Ordinance submitted to a vote by the people of the township.

6. Plaintiff seeks a declaration that the statute violates the First and Fourteenth Amendments of the United States Constitution as applied in this instance and seek an order enjoining Defendants from enforcing these signature requirements and requiring Defendants to craft remedies relating to these provisions that address constitutional infirmities.

## JURISDICTION AND VENUE

7. Jurisdiction is proper under 28 U.S.C §§ 1331 and 1343 because this is a civil action seeking relief for the deprivation of rights secured by the United States Constitution.

8. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) because it is the judicial district where the Charter Township of Ypsilanti is located and where the majority of events giving rise to this action occurred.

## PARTIES

9. Plaintiff, Ypsilanti Township Citizens for Responsible Government, is a duly-formed ballot question committee which seeks to refer the Revised Zoning Ordinance to a vote of the electors of Ypsilanti Township.

10. Defendant, Jocelyn Benson, is sued in her official capacity as the Michigan Secretary of State. As Secretary of State, she serves as Michigan's chief election officer. Mich. Comp. Laws § 168.21.

11. Defendant, Charter Township of Ypsilanti, is a Michigan municipality governed by the Charter Township Act and Michigan Zoning Enabling Act and located within the Eastern District of Michigan.

12. Defendant, Heather Jarrell Roe, is sued in her official capacity as Clerk of the Township of Ypsilanti, who is responsible for determining whether the submitted petition is adequate. *See* Mich. Comp. Laws § 125.3402(3)(b).

## BACKGROUND FACTS AND ALLEGATIONS

## THE MICHIGAN ZONING ENABLING ACT

13. The Michigan Zoning Enabling Act (the "MZEA"), Mich. Comp. Laws § 125.3101 et seq., authorizes and regulates the creation, modification, and enforcement of zoning ordinances in municipalities in the State of Michigan.

14. Under the MZEA, local units of government can regulate land development through the use of zoning ordinances. Mich. Comp. Laws § 125.3201.

15. To carry out these mandates, the MZEA requires the formation of a zoning or planning commission, which investigates and develops a zoning ordinance, and evaluates public opinion as it relates to the zoning ordinance. *See* Mich. Comp. Laws §§ 125.3301; 125.3305.

16. Following at least one public hearing, the zoning or planning commission shall submit its recommendations, which include a zoning plan denoting the areas subject to zoning, boundaries for zoning districts, the text of the zoning ordinance with the necessary maps and zoning regulations, and the manner of administering and enforcing the zoning ordinance, to the requisite local unit of government. Mich. Comp. Laws § 125.3305.

17. After considering the zoning or planning commissions' recommendations and making any changes or revisions, the local legislative body votes on the zoning ordinance. Mich. Comp. Laws § 125.3401.

18. A proposed zoning ordinance will only be adopted if approved by a majority of the local legislative body, Mich. Comp. Laws § 125.3308(5), and, if subject to voter's referendum, the approval of the majority of the township's voters. See Mich. Comp. Laws § 125.3402.

19. Registered electors of a township or county can challenge zoning ordinances or amendments that have been approved by the local legislative body by

5

filing a Notice of Intent to file a petition for referendum. *See* Mich. Comp. Laws § 125.3402.

20. If the notice is filed, the petitioner has 30 days to collect signatures in the community equal to 15% of the number of votes cast by registered electors in the community in the last gubernatorial election. Mich. Comp. Laws § 125.3402(2).

21. The petitioner shall file the petition with the local clerk upon obtaining the requisite number of signatures. *See* Mich. Comp. Laws § 125.3402(3).

22. If the petition is filed by the deadline, is in the proper form, and contains the requisite number of valid signatures, the zoning ordinance (or parts of it) will only become effective if it is approved by the county or township's electors at the next regular or special election. Mich. Comp. Laws § 125.3402(3)(c).

## ZONING ORDINANCE AMENDMENT

23. In 2019, the Charter Township of Ypsilanti (the "Township") tasked its Planning Commission and Development Team with revising its Zoning Ordinance.

24. After a delay in the project due to COVID-19, the Planning Commission developed a Revised Zoning Ordinance which established new districts, amended district boundaries, and set regulations for marihuana facilities and establishments within the industrial and commercial district.

25. If enacted, the Revised Zoning Ordinance allows an unlimited number of marihuana facilities and establishments to operate within any industrial and

6

commercial district (the "I-C district"), as long as the businesses are not located within 1,000 feet of a place of worship or school or childcare facility and 300 feet from a public park. § 416 (C)(4).

26. Additionally, the Draft Zoning Map extends the I-C district westward, abutting R-4 and R-5 residential districts.

27. Following public hearing on November 23, 2021, the Planning Commission submitted the Revised Zoning Ordinance to the Ypsilanti Board of Trustees.

28. Having revised the Zoning Ordinance and held public readings of it on January 18, 2022 and February 15, 2022, respectfully, a majority of Board of Trustees voted in favor of enacting the revised Zoning Ordinance on February 15, 2022.

29. On February 24, 2022, the Township published its "Notice of Adoption of an Amendment to the Zoning Ordinance Charter Township of Ypsilanti Township" (the "Notice") in the Washtenaw Legal News.

**CHALLENGE TO ZONING ORDINANCE AMENDMENT AND ACTIONS OF PLAINTIFF**

30. On March 1, 2022, Latrice T. Moore, a citizen of the Township, filed her "Notice of Intent to File Petition pursuant to MCL 125.3402."

31. Ms. Moore has coordinated with Plaintiff to meet the requirements of Mich. Comp. Laws § 125.3402.

7

32. Plaintiff was established as a local ballot question committee by filing a statement of organization with the Washtenaw County Clerk pursuant to Mich. Comp. Laws § 169.224(1) and 169.236(2).

33. Plaintiff was established to help the citizens of the Township exercise their right of referendum and vote on whether the Amended Zoning Ordinance should be enacted.

34. Upon information and belief, there were 23,923 registered voters in the Township who voted in the last gubernatorial election.

35. Therefore, pursuant to the MZEA, Plaintiff must obtain 3,588 signatures by March 26, 2022 to refer the Zoning Ordinance to a vote of the Township's electors.

36. Plaintiff has hired the professional signature-gathering firm Let the Voters Decide to collect signatures and has agreed to pay an average of $20.00 per valid signature.

37. Cognizant of the short timeframe to obtain signatures, Plaintiff submitted an expedited printing order for petitions on February 23, 2022.

38. Despite expediting its order, Plaintiff did not receive its petitions until February 25, 2022, at which time, Plaintiff began to distribute them to Let the Voters Decide.

39. On February 28, 2022, Let the Voters Decide began canvassing for signatures

40. Upon information and belief, as of March 20, 2022, day 24 of 30 to collect signatures, Plaintiff has obtained an approximately 4,000 signatures, containing only 1,600 signatures which are valid, and has spent approximately $50,000.00 for signatures and petition circulation.

## CAUSES OF ACTION

### COUNT I – VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

41. The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

42. The First Amendment of the United States Constitution prohibits the abridgment of speech and political association.

43. The First Amendment applies to the states through the Fourteenth Amendment.

44. All persons violating the First Amendment under color of state law are liable in equity and at law under 42 U.S.C. § 1983.

45. Plaintiff is a ballot question committee that has actively and diligently attempted to obtain sufficient signatures to refer the Revised Zoning Ordinance to a vote of the Township's electors.

46. Although Plaintiff has diligently canvassed the Township to obtain signatures, Plaintiff has been unable to obtain the 3,588 valid signatures necessary to refer the revised Zoning Ordinance to the voters.

47. The 15 percent signature threshold in conjunction with the 30-day time frame to obtain signatures, as set forth in Mich. Comp. Laws § 125.3402(2), violates Plaintiff's right to free political speech and direct democracy, as it makes it nearly impossible for Plaintiff to satisfy the petition prerequisites to submit the Revised Zoning Ordinance to the voters.

48. Mich. Comp. Laws § 125.3402 is a ballot access law.

49. When assessing the validity of ballot access laws, a court must analyze the "character and magnitude of the asserted injury" to the plaintiff's constitutional rights in relation to the government's interest in enforcing the regulation. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

50. If an undue burden is placed on the plaintiff's constitutional rights, strict scrutiny applies and a regulation is deemed invalid, unless it is narrowly tailored to advance a compelling state interest. *See Graveline v. Benson*, 992 F.3d 524, 534 (Mich. Ct. App. 2021).

51. Mich. Comp. Laws § 125.3402(2), as applied to Plaintiff and similarly situated parties, violates Plaintiff's First and Fourteenth Amendment right to free political speech, including direct democracy, and free political association.

52. Mich. Comp. Las § 125.3402(2) places an undue burden on Plaintiff's right to referenda and ballot access.

53. In a large township, such as the Charter Township of Ypsilanti, petitioners must gather an unreasonably high number of signatures (thousands) within a 30-day time frame in order to challenge a Zoning Ordinance enacted by the legislative body.

54. In practice, this is, if not, then close to, impossible, as petitioners often must wait several days to obtain their petitions from the printer, effectively shaving days off of their already tight deadline.

55. Additionally, once signatures are obtained, the petitioner must verify each one to ensure that there are no duplicates and confirm that the proper number of signatures have been collected.

56. A petitioner must obtain signatures well in excess of the required amount, as petitions often contain duplicates and signatures from unregistered voters or voters who do not reside within the municipality.

57. Generally, if a duplicate signature is found, both the original signature and the duplicate are disqualified from the petition.

58. By requiring Plaintiff to obtain such a high threshold for signatures within a limited time, § 125.3402 effectively robs Plaintiff of the ability to "scrub" signatures in order to reject duplicates, signatures from unregistered voters, or to

otherwise cure any signature deficiencies and constitutes an undue burden on their right to free political speech.

59. Additionally, the high signature threshold and scant window of opportunity limits the right of referendum under Mich. Comp. Laws § 125.3402 in populous townships to only the most organized and well-funded of advocacy organizations, thereby effectively barring private citizens and many advocacy groups from engaging in these efforts.

60. A private citizen is unlikely to obtain more than 3,000 signatures within 30 days by his own individual efforts, or even the cumulative efforts of a number of volunteer citizens.

61. Thus, the high signature threshold and limited timeframe effectively mandates the use of a signature-gathering company.

62. Signature-gathering companies require petitioners to pay out higher rates per signature.

63. In this case alone, Plaintiff has paid an average of $20.00 per each valid signature gathered.

64. Requiring such a high number of signatures is cost prohibitive and precludes the average citizen from reaching the signature threshold in an expeditious manner.

65. Additionally, winter weather predominantly precludes the canvassing of signatures in high traffic areas.

66. Were the signatures gathered in summer, canvassers could obtain high quantities of signatures in limited time frames by frequenting busy public spaces and attending events.

67. However, with minimal winter events and less public traffic, canvassers must go door-to-door, thereby gathering signatures in a less efficient and more time consuming manner.

68. The Township creates an undue burden on signature gathering, as it lacks geographically central areas frequented by heavy foot traffic from which canvassers can obtain signatures.

69. As such, Mich. Comp. Laws § 125.3402 places a severe burden on plaintiff's First and Fourteenth Amendment rights.

70. If a state regulation imposes a severe burden on a plaintiff's constitutional rights, strict scrutiny applies and the regulation will only be upheld if it is narrowly drawn to advance a state interest of compelling importance. *See Graveline v. Benson*, 992 F.3d 524, 534 (Mich. Ct. App. 2021).

71. Mich. Comp. Laws § 125.3402 is not narrowly tailored to advance the government's interest in regulating elections, as less restrictive means exist.

72. The regulation could implement a tiered signature requirement, where the number of signatures required is inversely proportional to the size of the municipality, such as the system set forth in Mich. Comp. Laws § 168.544f.

73. Conversely, the regulation could be modified to extend the time frame to obtain signatures for referenda petitions in large townships.

74. As applied to Plaintiff under the circumstances, the signature threshold requirement in conjunction with the 30-day timeframe set forth in Mich. Comp. Laws §125.3402(2) is burdensome, unreasonable, and not narrowly tailored to meet any compelling or legitimate state interest.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants;

B. Declare that the 15 percent signature threshold requirement in conjunction with the 30-day timeframe set forth in Mich. Comp. Laws § 125.3402(2) is unconstitutional as applied to Plaintiff, and therefore unenforceable;

C. Issue a temporary restraining order and/or preliminary injunction prohibiting State Defendants from enforcing the signature submission deadline in Mich. Comp. Laws § 125.3402(2) as it applies to Plaintiff and similarly situated local ballot question committees;

D.  Issue a temporary restraining order and/or preliminary injunction prohibiting Defendants from enforcing the signature requirements contained in Mich. Comp. Laws § 125.3402(2) as it applies to Plaintiff and similarly situated local ballot question committees;

E.  Order that Plaintiff has 90 days to complete canvassing signatures to satisfy the requirements of Mich. Comp. Laws § 125.3402(2);

F.  Order that Defendants craft appropriate remedies with regard to petition signature requirements and submission deadline as found in Mich. Comp. Laws § 125.3402(2), so as to rectify constitutional infirmities and allow Plaintiff an opportunity to refer the amended Zoning Ordinance to the voter's at the next general or special election; and

G.  Grant or award such other relief as the Court may deem just, equitable or appropriate under the circumstances.

Respectfully Submitted,

Dated:  March 22, 2022

By: /s/ Hannah Stocker
_____
Hannah Stocker (P82847)
Attorneys for Plaintiff
23332 Farmington Road, #98
Farmington, MI 48336
(248) 252-6405 (telephone)
Hannah@stockerlawpllc.com