# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

YPSILANTI TOWNSHIP CITIZENS FOR RESPONSIBLE GOVERNMENT, ballot question committee,

        Plaintiff,

v.

JOCELYN BENSON, in her official capacity as Secretary of State of Michigan, CHARTER TOWNSHIP OF YPSILANTI, and HEATHER JARRELL ROE, in her official capacity as Ypsilanti Township Clerk.

        Defendants.

Case No. 5:22-cv-10614-SFC-CI

Hon. Sean F. Cox

Hannah Stocker (P82847)
Attorneys for Plaintiffs
23332 Farmington Road #98
Farmington, MI 48336
(248) 252-6405 (phone)
hannah@stockerlawpllc.com

## MOTION FOR PRELIMINARY INJUNCTION & TEMPORARY RESTRAINING ORDER

Plaintiff, Ypsilanti Township Citizens for Responsible Government, by and through its attorney, Hannah Stocker, hereby moves for a preliminary injunction pursuant to Fed. R. Civ. Pro. 65(a) and temporary restraining order pursuant to Fed. R. Civ. Pro. 65(b) against Defendants, Jocelyn Benson, Heather Jarrell Roe, as

1

Ypsilanti Township Clerk, and the Charter Township of Ypsilanti, prohibiting enforcement of Mich. Comp. Laws § 125.3402(2) until disposition of the present matter on the merits.

In satisfaction of E.D. Mich. L.R. 7.1, concurrence in the instant relief was requested, but no response was obtained.

WHEREFORE, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order and enjoin the enforcement of Mich. Comp. Laws § 125.3402(2) until disposition of this case on the merits or any other relief the Court deems just.

Respectfully Submitted,

Dated:  March 23, 2022

/s/ Hannah Stocker
By: _____
Hannah Stocker (P82847)
23332 Farmington Road, #98
Farmington, MI 48336
(248) 252-6405 (telephone)
Hannah@stockerlawpllc.com

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

YPSILANTI TOWNSHIP CITIZENS FOR RESPONSIBLE GOVERNMENT, ballot question committee,

        Plaintiff,

v.

JOCELYN BENSON, in her official capacity as Secretary of State of Michigan, CHARTER TOWNSHIP OF YPSILANTI, and HEATHER JARRELL ROE, in her official capacity as Ypsilanti Township Clerk.

        Defendants.

Case No.

Hon.

Hannah Stocker (P82847)
Attorneys for Plaintiffs
23332 Farmington Road #98
Farmington, MI 48336
(248) 252-6405 (phone)
hannah@stockerlawpllc.com

## BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

## CONCISE STATEMENT OF ISSUES PRESENTED

To warrant a preliminary injunction, Plaintiff must show (1) a strong likelihood of success on the merits; (2) that it would suffer irreparable injury absent the injunction; (3) that the injunction would not cause substantial harm to others; and (4) that the injunction is in the public interest. Has Plaintiff shown that Mich. Comp. Laws § 125.3402(2) is unconstitutional as applied to itself and other similarly situated parties, as it places an undue burden on ballot access in large townships and is not narrowly tailored to advance a legitimate government interest?

## <u>CONTROLLING AUTHORITY FOR RELIEF SOUGHT</u>

U.S. Const. amend I: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend XIV, § 1: All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

*Anderson-Burdick Test*: Under this test, courts must analyze the "character and magnitude of the asserted injury" to the plaintiff's constitutional rights in relation to the defendant's interest in enforcing the regulation. *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

## **TABLE OF CONTENTS**

I.    **INTRODUCTION**    **1**

II.    **BACKGROUND & FACTS**    **2**

    **A. The Michigan Zoning Enabling Act**    **2**

    **B. Charter Township of Ypsilanti**    **4**

    **C. The Zoning Amendment**    **4**

III.    **LAW & ARGUMENT**    **7**

    **A. Because Mich. Comp. Laws § 125.3402(2)'s 30-day time limit imposes a severe burden on entities gathering signatures in heavily-populated townships, Plaintiff has shown a strong likelihood of success on the merits.**    **7**

        i.    **Mich. Comp. Laws § 125.3402(2)'s 30-day signature collection limit imposes a significant burden on Plaintiff's First and Fourteenth Amendment rights in this case.**    **9**

        ii.    **Because strict scrutiny applies, Mich. Comp. Laws § 124.3402(2) is unconstitutional as applied, as it is not narrowly tailored to advance an important government interest.**    **17**

    **B. Plaintiff will suffer irreparable injury absent an injunction or issuance of a temporary restraining order.**    **19**

    **C. The grant of a preliminary injunction serves the public interest, as it will prevent the application of an unconstitutional law to similarly situated plaintiffs and cause little to no harm to the public interest.**    **20**

IV.    **CONCLUSION**    **22**

# INDEX OF AUTHORITIES

**Cases:**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)                                7

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012)                      7

*Buckley v. ACLF*, 525 U.S. 182 (1998).                                       17

*Burdick v. Takushi*, 504 U.S. 428 (1992)                                     7, 8

*Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006)
                                                                             21

*Connection Distrib. Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998)           19, 20

*Eldrod v. Burns*, 427 U.S. 347 (1976)                                        20

*Graveline v. Benson*, 992 F.3d 524, 534 (Mich. Ct. App. 2021).               8

*Graveline v. Johnson*, 336 F. Supp.3d 801 (E.D. Mich. 2018)                  7

*Korash v. City of Livonia*, 388 Mich. 737; 202 N.W.2d 803 (Mich. 1972)
                                                                         15, 16

*Libertarian Pty of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006)          8

*Libertarian Pty of Ohio v. Husted*, 751 F.3d 403 (6th Cir. 2014)         19, 20

*Meyer v. Grant*, 486 U.S. 414; 108 S. Ct. 1886; 100 L.Ed.2d 425 (1988)       9

*New Alliance Pty of Alabama v. Hand*, 933 F.2d 1568 (11th Cir. 1991)         17

*Newsom v. Norris*, 888 F.2d 371 (6th Cir. 1989)                              20

*Nken v. Holder*, 556 U.S. 418 (2009)                                         21

*N.Y. Times v United States*, 403 U.S. 713 (1971)                             20

*Pursuing Am.'s Greatness v. F.E.C.*, 831 F.3d 500 (D.C. Cir. 2016)          21

*Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)          21

*Settles v. Detroit City Clerk*, 169 Mich. App. 797; 427 N.W.2d 188 (Mich. Ct. App 1988)
          10, 15

*Storer v. Brown*, 415 U.S. 724 (1974)          17

*Whitman v. Galien Township*, 298 Mich. App. 672 (Mich. Ct. App. 2010)   2

*Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968)          10

**Statutes:**

Michigan Zoning Enabling Act, 2006 PA 110, Mich. Comp. Laws § 125.3101 *et seq.*          1

Mich. Comp. Laws § 125.3201          16

Mich. Comp. Laws § 125.3202(1)          2

Mich. Comp. Laws § 125.3301          2

Mich. Comp. Laws § 125.3305          3

Mich. Comp. Laws § 125.3308(5)          3

Mich. Comp. Laws § 125.3401          3

Mich. Comp. Laws § 125.3402          1, 6, 7, 9, 10, 14, 18

Mich. Comp. Laws § 125.3402(1)          3

Mich. Comp. Laws § 125.3402(2)          1, 3, 7, 9, 10, 15, 16, 17, 21, 22

Mich. Comp. Laws § 125.3402(3)(c)          4

Mich. Comp. Laws § 125.3403          17

Mich. Comp. Laws § 168.544f                                    19

Mich. Comp. Laws § 168.641(1)                                 19

**Constitutions**

Mich. Const. 1963, Art. 2, § 9                                18

Mich. Const. 1963, Art. 4, § 13                               18

## I.      INTRODUCTION

Although imparted with the broad power of initiative and referendum, citizens of townships have little authority when it comes to zoning ordinances. While the Michigan Zoning Enabling Act, 2006 PA 110, Mich. Comp. Laws § 125.3101 *et seq*. (the "MZEA"), specifically Mich. Comp. Laws § 125.3402(2), allows for a township resident to petition for a zoning ordinance passed by the township to be submitted to the voters for approval prior to enactment, this power is effectively nullified when a township has a substantial population.   This is especially troublesome in situations like the present, where the township has proposed a zoning ordinance that would potentially permit an unlimited number of marihuana businesses close to residential areas. Plaintiff, a ballot question committee formed for the purpose of petitioning to allow Ypsilanti Township's voters to decide whether to enact the Zoning Ordinance, herein moves to enjoin enforcement of this statute in the present case until disposition of this case on the merits.

Plaintiff has a high likelihood of success on the merits, as Mich. Comp. Laws § 125.3402's 15 percent signature threshold in conjunction with its 30-day limit on signature gathering, as applied in populous townships, unduly burdens petitioner's First and Fourteenth Amendment rights to free political speech and direct democracy. Given that there are less restrictive means to achieving the government's goals of regulating elections, it is likely that Plaintiff will prevail on the merits.

Additionally, the harm to Plaintiff's First Amendment rights if this statute is enforced substantially outweighs the government's interest in regulating elections. As such, a preliminary injunction should issue in this matter.

## II.    BACKGROUND & FACTS

### A. The Michigan Zoning Enabling Act

Municipalities have no authority to regulate land use by zoning legislation, unless such action has been expressly authorized by the legislature. *Whitman v. Galien Township*, 298 Mich. App. 672, 679 (Mich. Ct. App. 2010). The MZEA allows local municipalities to regulate zoning within their jurisdictions by passing zoning ordinances. Mich. Comp. Laws § 125.3202(1). Under the MZEA, "[t]he legislative body of a local unit of government may provide by ordinance for the manner in which the regulations and boundaries of districts or zones shall be determined and enforced or amended or supplemented." Mich. Comp. Laws § 125.3202(1).

To carry out these mandates, the MZEA requires the formation of a zoning or planning commission. *See* Mich. Comp. Laws § 125.3301. The zoning commission investigates, develops, and evaluates public opinion of the zoning ordinance. Following at least one public hearing, the zoning commission proposes to the local legislative body a zoning plan denoting the areas subject to zoning, boundaries for zoning districts, the text of the zoning ordinance with the necessary maps and zoning regulations, and the manner of administering and enforcing the zoning ordinance.

Mich. Comp. Laws § 125.3305. After considering these materials, any public comments, and having made any changes, the local legislative body votes on the zoning ordinance. Mich. Comp. Laws § 125.3401. The proposed zoning ordinance or amendment is adopted only if approved by majority vote of the local legislative body. Mich. Comp. Laws § 125.3308(5).

However, majority vote of the legislative body does not guarantee enactment of the proposed zoning ordinance or amendment. The MZEA reserves the right of referendum to the people. See Mich. Comp. Laws § 125.3402(1) A registered elector in a municipality can lobby to have the zoning ordinance or amendment submitted to the people for approval or rejection. *See* Mich. Comp. Laws §§ 125.3402 and 125.3403. In counties and townships, the elector must submit a notice of intent to file a petition for referendum within seven days after publication of the zoning ordinance. Mich. Comp. Laws § 125.3402(1). If the notice is filed,

> the petitioner shall have 30 days following the publication of the zoning ordinance to file a petition signed by a number of registered electors residing in the zoning jurisdiction not less than 15% of the total vote cast within the zoning jurisdiction for all candidates for governor at the last preceding general election at which a governor was elected, with the clerk of the legislative body requesting the submission of a zoning ordinance or part of a zoning ordinance to the electors residing in the zoning jurisdiction for their approval.

Mich. Comp. Laws § 125.3402(2).

If the petition is filed by the deadline, is in the proper form, and contains the requisite number of valid signatures, the zoning ordinance (or parts of the zoning ordinance) will only become effective if it is approved by the county or township's electors at the next regular or special election. Mich. Comp. Laws § 125.3402(3)(c).

### B. Charter Township of Ypsilanti

The State of Michigan is made up of cities, villages, and townships. Michigan has 1,240 townships, which account for 96 percent of its land area outside of cities. Of these townships, only 38 have populations in excess of 20,000 people, and only five – including the Charter Township of Ypsilanti (the "Township") – have populations exceeding 50,000. Ex. 1. The Township is home to 55,670 citizens and 40,205 registered electors. Ex. 2. Of those registered electors, 23,649 cast votes for governor in the 2018 election. Ex. 2.

### C. The Zoning Amendment

In 2019, the Township tasked its Planning Commission and Development Team with revising its zoning ordinance. After a delay in the project due to COVID-19, the Planning Commission developed a revised zoning ordinance which established new districts, amended district boundaries, and, importantly, set regulations for marihuana facilities and establishments within the industrial and commercial districts of the Township. See Charter Twp. of Ypsilanti, Ordinance 20-498 (Feb. 15, 2022), https://ytown.org/Doc-Repository/Download-Documents/Clerks-Office-Documents/Ordinances-And-Resolutions/2022/2022-

4

Approved-Ordinances/2nd-Reading-Ordinance-No.-2022-498-Amending-the-Entire-Township-Zoning-Ordinance.pdf ("Charter Twp. Ord.").   If enacted, the revised zoning ordinance would allow marihuana facilities and establishments to operate within any industrial and commercial district (the "I-C district"), as long as the businesses were not located within 1,000 feet of a place of worship, school, or childcare facility and not within 300 feet of a public park. Charter Twp. Ord. § 416 (C)(4). Additionally, the Draft Zoning Map extends the I-C district westward, thereby abutting R-4 and R-5 residential districts. Ex. 3.

On November 23, 2021, the Planning Commission held a public hearing to receive public comment on the adoption of the Draft Zoning Ordinance and Draft Zoning Map. Following this meeting, the Draft Zoning Ordinance was revised. On January 11, 2022, the Planning Commission approved the Draft Zoning Ordinance and Draft Zoning Map and sent them to the Ypsilanti Board of Trustees (the "Board") for approval. On January 18, 2022, the Board engaged in the first reading of the Draft Zoning Ordinance.  On February 15, 2022, the Board held a second reading of the Draft Zoning Ordinance and voted in favor of its enactment.

On February 24, 2022, the Township published its "Notice of Adoption of an Amendment to the Zoning Ordinance Charter Township of Ypsilanti Township" in the Washtenaw County Legal News. On March 1, 2022, Latrice T. Moore, a citizen of the Township who is concerned about the impact of an unlimited number of

marihuana dispensaries in close proximity to residential areas, submitted her Notice of Intent to File Petition Pursuant to MCL 125.3402. **Ex. 4**.

Because 23,649 registered electors voted for governor in the Township in 2018, Citizens for Responsible Government is required to collect 3,548 valid signatures by March 26, 2022 to fulfill the mandates of the MZEA. To do so, Plaintiff has utilized the professional signature-gathering firm, Let the Voters Decide, and agreed to pay the circulators an average of $20.00 per valid signature. As of March 20, 2022, Let the Voters Decide has canvassed for signatures 24 days and, although approximately 4,000 signatures have been collected, only obtained an estimated 1,600 valid signatures. At this time,    approximately $50,000.00 has been spent for signatures and petition circulation for this effort. However, because it still lacks the requisite number of signatures to turn in the petition, Plaintiff has been unable to fully verify the signatures and check for any duplicates.

Plaintiff has brought this present action to challenge the constitutionality of Mich. Comp. Laws § 125.3402 as applied to any populous township. Given the impending deadline to turn in the petition, Plaintiff hereby moves for entry of a preliminary injunction, preventing the disqualification of Plaintiff's petition based on the number of signatures collected until final disposition of the present matter.

## III.   LAW AND ARGUMENT

When considering a motion for preliminary injunction, a district court should balance the following factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of an injunction. *Graveline v. Johnson*, 336 F. Supp.3d 801, 807 (E.D. Mich. 2018). "In First Amendment cases, 'the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits [since] the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the state action.'" *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012) (citations omitted). A preliminary injunction should be granted if a plaintiff demonstrates that the circumstances demand it. *Graveline*, 336 F. Supp.3d at 807.

Given that Mich. Comp. Laws § 125.3402 imposes a severe burden on Plaintiff and other parties similarly situated, there is a strong likelihood of success on the merits. Therefore, a preliminary injunction is warranted.

### A. Because Mich. Comp. Laws § 125.3402(2)'s 30-day time limit imposes a severe burden on entities gathering signatures in heavily-populated townships, Plaintiff has shown a strong likelihood of success on the merits.

When assessing the validity of ballot access laws, a court must apply the *Anderson-Burdick* test. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick*

7

*v. Takushi*, 504 U.S. 428 (1992). Under this test, courts must analyze the "character and magnitude of the asserted injury" to the plaintiff's constitutional rights in relation to the defendant's interest in enforcing the regulation. *Anderson*, 470 U.S. at 789; *see also Libertarian Pty of Ohio v. Blackwell*, 462 F.3d 579, 587 (6th Cir. 2006) (noting that "the Court must not only determine the legitimacy and strength of each of [the state's] interests [in promulgating the litigation]; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.") Different magnitudes of infringement implicate different scrutiny standards. Therefore, "to accurately apply [the *Anderson-Burdick*] test, [the Court] must first determine the actual burden placed upon [the parties] and their voter-supporters." *Libertarian Pty of Ohio,* 462 F.3d at 586.

In assessing the burden to the voters, courts should look to the associational rights at issue; whether alternate means are available to exercise those rights; the effect of the regulations on the voters, parties, and candidates; and evidence of the real impact the restriction has on the process; and the interests of the state relative to the scope of the election. *Id.* at 587. If the state regulation imposes a severe burden on the plaintiff's constitutional rights, strict scrutiny applies and the regulation will only be upheld if it is narrowly drawn to advance a state interest of compelling importance. *See Graveline v. Benson*, 992 F.3d 524, 534 (Mich. Ct. App. 2021). If

the regulation imposes a lesser burden, a court must weigh the burden on the plaintiff against the state's asserted interest and chosen means of pursing it. *Id.* at 535.

### i. Mich. Comp. Laws § 125.3402(2)'s 30-day signature collection limit imposes a significant burden on Plaintiff's First and Fourteenth Amendment rights in this case.

Strict scrutiny governs the case at hand. Mich. Comp. Laws § 125.3402 implicates significant associational rights. As the Supreme Court has observed:

> The circulation of a[]…petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change. Although a petition circulator may not have to persuade potential signatories that a particular proposal should prevail to capture their signatures, he or she will at least have to persuade them that the matter is one deserving of the public scrutiny and debate that would attend its consideration by the whole electorate. This will in almost every case involve an explanation of the nature of the proposal and why its advocates support it. Thus, the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as "core political speech." *Meyer v. Grant*, 486 U.S. 414, 421-22; 108 S. Ct. 1886; 100 L.Ed.2d 425 (1988) (internal citations omitted).

Under Mich. Comp. Laws § 125.3402, township citizens may only exercise the right of referenda as to a zoning ordinance if they submit a petition signed by 15 percent of the number of voters who participated in the last gubernatorial election in that municipality. *See* Mich. Comp. Laws § 125.3402(2). This is the only avenue that voters have to challenge zoning ordinances in a township, as there is no general right to initiate ordinances in municipalities, *Settles v. Detroit City Clerk*, 169 Mich. App. 797, 801-802; 427 N.W.2d 188 (Mich. Ct. App. 1988), and, even if there were, Michigan courts have held that the right of initiative does not extend to zoning ordinances. *Korash v. City of Livonia*, 388 Mich. 737; 202 N.W.2d 803 (Mich. 1972). Given that § 125.3402(2) pertains to whether or not a referenda petition gets placed on the ballot, this law directly implicates the right to direct democracy and "the right of qualified voters . . . to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968).

As applied to Plaintiff and those similarly situated, Mich. Comp. Laws § 125.3402 places a significant burden on these constitutionally protected rights. To begin, it requires an excessive number of signatures. The Township has 55,670 citizens, 23,649 of whom voted in the 2018 gubernatorial election. Therefore, Plaintiff has to obtain 3,548 valid signatures within the 30-day time frame for the referendum petition to be placed on the ballot for the next regular or special election.

This is difficult as petitioners often must obtain signatures well in excess of what is required under the law to meet signature thresholds. The nature of petition circulation is that a large number of signatures are invalid for various reasons, normally that the petition signer signed multiple times (in which case, all duplicate signatures are disqualified) or the signer is not a registered voter residing within the municipality (which is especially problematic here where the Township is adjacent to the City of Ypsilanti, and voters share the same mailing address). Thus, while the statute requires approximately 3,548 signatures here, the reality is that Plaintiff is required to obtain far more (perhaps as much as 150 percent of that number) in order to ensure that it has secured a sufficient number of valid signatures to meet the required threshold.  This would not be difficult to achieve in a township that only contains 1,000 voters who participated in the last election. However, the statute, as applied to large townships, places an unreasonably high burden on the petitioner and other, similarly-situated groups, especially in conjunction with the time frame.

Although the statute expressly sets forth a 30-day period to obtain signatures, in application, Plaintiff has significantly less time to do so. Each petition must be printed and, even with due diligence (as was the case here), a petitioner generally will not receive its printed petition for many days. In this case, Plaintiff did not receive its printed petitions until      the evening of February 25, 2022. As such, Plaintiff could not begin circulating its petition until two days into the 30-day period

(February 26, 2022). Additionally, this timeline was reduced, as, despite its best efforts, Plaintiff was unable to distribute the petitions to all paid circulators until February 28, 2022.

This timeframe is further hindered by the nature of the actual petitioning process. Plaintiff must verify each and every signature obtained to ensure it has met the minimum threshold to submit its petition. (This process can take between three to five days on an expedited timetable.) The purpose of this is to ensure the circulators have not obtained duplicate signatures[1] or signatures of electors who do not reside in the Township. Political expert Mark Grebner has opined that in a ballot initiative campaign such as the one herein, by the end of the campaign, "20% of the signature collected would prove to be duplicates, meaning that 40% of the late signatures will essentially be lost, unless the petitions are carefully searched for duplicates to be struck." Ex. 4. As such, if Plaintiff received the 3,548[th] signature on the thirtieth day of the process, it would risk jeopardizing substantially more signatures if it could not validate the signature and ensure there were no duplicates

---

[1] Under Michigan Petition rules, if a signature is signed twice, both signatures are struck. See Department of State, Second Staff Report: Fair and Equal Michigan Initiative Petition (July 21, 2021), p. 3, https://www.michigan.gov/documents/sos/Staff_Report_v2_Fair_and_Equal_MI_0 72121_Final_730836_7.pdf. This is a significant problem and in and of itself imposes a burden on Plaintiff's right to direct democracy, as even if they gather valid signatures, these are at risk of being invalidated if a duplicate signature is obtained. Ex. 4.

prior to filing the petition with the township clerk. By requiring Plaintiff to obtain such a high threshold for signatures within a limited time, § 125.3402 effectively robs Plaintiff of the ability to "scrub" signatures in order to reject duplicates, signatures from unregistered voters, or to otherwise cure any signature deficiencies.

Additionally, weather and geographical conditions further complicate Plaintiff's ability to secure signatures within the time frame. Although Plaintiff has diligently canvased the Township to obtain signatures, the time of year and Township geography have impeded Plaintiff's ability to obtain these signatures in a timely matter. Plaintiff has been restricted to collecting these signatures in the months of February and March. These are two of the coldest months of the year, with minimal outdoor events and infrequent foot traffic in public areas. Whereas spring, summer, or fall may allow Plaintiff to potentially secure hundreds of signatures at outdoor events or in heavily foot trafficked areas,[2] Plaintiff does not have the same opportunities to do so in the winter.  Additionally, even if people were more frequently out in public, the Township lacks geographic focus and contains few heavily frequented public spaces that would allow Plaintiff to obtain significant numbers of signatures in public. See Ex. 4 – Mark Grebner Affidavit. Given that the

_____

[2] See Mark Grebner, *Mark Grebner on Petition Drives*, STEVE HARRY PUBLIC POLICY.COM (Aug. 21, 2011), http://steveharrypublicpolicy.com/Grebner.htm (noting that local canvassers often turn their attention to public events, rather than door-to-door as "door-to-door [amongst other things] doesn't initially produce as many signatures per hour as a public event."

Township lacks areas that allow for the concentrated gathering of signatures, Plaintiff has been predominantly limited to securing signatures through use of door-to-door (an admittedly inefficient and ineffective form of) canvassing. This, in and of itself, presents a bar to a private citizen's ability to call for referenda in highly populated areas.

The high signature threshold and scant window of opportunity limits the right of referendum under Mich. Comp. Laws § 125.3402 in populous townships to only the most organized and well-funded of advocacy organizations, thereby effectively barring private citizens and many advocacy groups from engaging in these efforts. A private citizen may be able to easily secure signatures from 15 percent of the electorate in a township with a population of several hundred, but would be unlikely to obtain more than 3,000 signatures within 30 days by their own individual efforts, or even the cumulative efforts of a number of volunteer citizens. Thus, the high signature threshold and limited timeframe effectively mandates the use of a signature-gathering company. Requiring such a high number of signatures is cost prohibitive and precludes the average citizen from reaching the signature threshold in an expeditious manner. *See* Ex. 4 (noting that "collecting sufficient signatures [in the Township] would require an intensive door-to-door canvass, which is very expensive if conducted by paid canvassers, or very labor-intensive and difficult to manage if conducted by volunteers.") Indeed, here, Plaintiff is paying its circulators

an extremely high rate of approximately $20.00 per valid signature due to the short timeframe. By contrast, in most circumstances, petitioners pay circulators at a rate of $1-$2 per signature.[3] Therefore, at the present, increased rate, it would cost at least $70,000.00 for Plaintiff to obtain 3,548 signatures (many of which may be invalid, thereby requiring Plaintiff to pay for even more signatures). Given these figures, the average citizen would be unable to obtain enough signatures to file a valid referendum petition under Mich. Comp. Laws § 125.3402 in a populous township, making the statute cost-prohibitive. See Ex. 4.

Finally, Mich. Comp. Laws § 125.3402(2)'s signature requirement in conjunction with the 30-day time frame specifically burdens the right to referendum. As briefly discussed above, dissatisfied citizens have no other way to challenge zoning ordinances. In Const. 1963, Art. 2, § 9, the people of Michigan reserved to themselves "the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject laws enacted by the legislature, called the referendum." "However, this reserved power does not include the power of initiative or referendum with respect to local ordinances." *Settles v. Detroit City Clerk*, 169 Mich. App. 797, 802; 427 N.W.2d 188 (Mich. Ct. App. 1988) (citing *Korash v. Livonia,* 388 Mich. 737, 742 n 3, 202 N.W.2d 803 (Mich. 1972)). Rather,

---

[3] *Yes on Term Limits, Inc. v. Savage*, No. Civ-07-680-L., 2007 WL 2670178, at *1 (W.D. Okla. Sept. 7, 2007) (unpublished).

such powers with respect to local ordinances are derived from various state statutes. *Id*. Thus, there is no general right to initiate or refer an ordinance in a township, and that right must be derived from a specific statute, such as Mich. Comp. Laws § 125.3402. Thus, if petitioners are effectively prohibited from pursuing a referendum under that statute, they have no other recourse. Moreover, even if there were a general right of initiative in townships, and petitioners could even theoretically seek to amend a zoning ordinance through that authority, Michigan courts have found that these general powers do not extend to zoning ordinances. See, Korash, *supra*.

Unlike other statutes, which grant citizens the ability to amend charters or implement ordinances through initiative, the MZEA leaves the power to adopt zoning regulations exclusively to the local unit of government. *See* Mich. Comp. Laws § 125.3201. As such, beyond public comment at a public hearing and referendum, citizens have no input into their township's zoning ordinances and no recourse against the township if they are unable to file adequate petitions. Mich. Comp. Laws § 125.3204 is the only mechanism for citizens to directly challenge a zoning decision of a township.

Thus, the signature and timing requirements of Mich. Comp. Laws § 125.3402(2), when applied to populous townships, effectively combine to insulate zoning ordinances from popular scrutiny. By requiring petitioners to obtain a large number of signatures within a short timeframe, the statute all but ensures that zoning

ordinances or amendments will not be subject to a referendum. Therefore, Mich. Comp. Laws § 125.3402(2) places an undue burden on Plaintiff's First and Fourteenth Amendment rights and strict scrutiny should apply.

> ### ii. Because strict scrutiny applies, Mich. Comp. Laws § 125.3402(2) is unconstitutional as applied, as it is not narrowly tailored to advance an important government interest.

To be upheld under strict scrutiny, a government regulation must be narrowly tailored to advance a compelling state interest. *Buckley v. ACLF*, 525 U.S. 182, 192, n. 12 (1998). To do so, the state must demonstrate there was no less restrictive means by which it could achieve its important interest. *See New Alliance Pty of Alabama v. Hand*, 933 F.2d 1568, 1576 (11th Cir. 1991). The regulation shall not be upheld if a less restrictive means is available. *See Anderson, supra*, at 806.

The State can advance no legitimate interest in requiring Plaintiff to obtain the signatures of 15 percent of the Township's registered electors ***within 30 days.*** Although courts have recognized that states have the authority to regulate the time, place, and manner of holding elections and to ensure that the elections are fair, honest, and orderly, *see e.g. Storer v. Brown*, 415 U.S. 724, 730 (1974), this regulation is not narrowly tailored to advance that goal. Less restrictive measures exist for Defendants to advance that interest. For example, Mich. Comp. Laws § 125.3403 allows city and village citizens to challenge proposed amendment by submitting a protest petition signed by the owners of at least 20% of the land

included in the proposed change or within an area extending outward 100 feet from any point of the boundary of the proposed change.

By way of further example, Mich. Const. 1963, Art. 2, § 9 requires a person seeking to invoke the right of referendum with regard to a state law to obtain "petitions signed by a number of registered electors, not less than… five percent for referendum of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected…" Moreover, that provision also allows such petitioners a much longer timeframe to gather such signatures, namely, the referendum authority must be invoked "within 90 days following the final adjournment of the legislative session at which the law was enacted." *Id*. Thus, at minimum, a party seeking to refer a state law has 90 days to gather signatures (assuming the law was enacted on the same day the Legislature adjourned *sine die* pursuant to Mich. Const. 1963, Art. 4, § 13), and, in reality, will likely have a number of months to obtain signatures if the law was enacted well before the Legislature adjourned *sine die*. As such, the signature and timing requirements in Mich. Comp. Laws § 125.3402 are not narrowly tailored to fulfill the legitimate government interest of regulating elections.

However, it would be easy to remedy this failure. For example, Defendant could advance this interest by requiring a number of signatures determined by the population of the municipality. For example, state law requires a candidate for

18

certain offices to obtain a number of valid signatures on a nominating petition. This number varies depending upon the population of the district in which that candidate is running. Mich. Comp. Laws § 168.544f. By requiring a "one size fits all" number of signatures pursuant to Mich. Comp. Laws § 124.3402, the State has effectively created a threshold that is impossible to overcome in populous townships. Alternatively, Plaintiff can be allotted more time to reach the threshold, as the zoning ordinance can be voted on at either the next regular election[4] or any special election, *called for the specific purpose of voting on the zoning ordinance*, in the township. *See* Mich. Comp. Laws § 124.3402(3)(c).

Given that no legitimate government interest exists to require Plaintiff to obtain over 3,000 signatures in such a short timeframe, Plaintiff will likely succeed on the merits and a preliminary injunction should issue.

### B.  Plaintiff will suffer irreparable injury absent an injunction or issuance of a temporary restraining order.

If this Court does not grant the injunction or a temporary restraining order, Plaintiff and those similarly situated will suffer irreparable injury, as they will be effectively barred from challenging zoning decisions in their local municipalities.

It is well settled that even minimal loss of First Amendment freedoms "unquestionably constitutes irreparable injury." *Libertarian Pty of Ohio v. Husted*,

---

[4] Regular elections are held either the first Tuesday after the first Monday in May, August, or November. See Mich. Comp. Laws § 168.641(1).

751 F.3d 403, 412 (6th Cir. 2014); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998); *Eldrod v. Burns*, 427 U.S. 347, 373 (1976); *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989); *N.Y. Times v United States*, 403 U.S. 713, 715 (1971) (Black, J., concurring).  If Mich. Comp. Laws § 125.3402(2) is enforced as written, Plaintiff will be unable to obtain sufficient signatures to refer the Zoning Ordinance to vote of a people. *See e.g.* Exhibit 4. As such, Plaintiff will likely be deprived of its First and Fourteenth Amendment rights to free political speech and will suffer irreparable harm.

Furthermore, citizens of the Township will be harmed, absent an injunction, as they will be denied the opportunity to vote on relevant amendments to the Township's zoning ordinance, particularly as to whether marihuana businesses will be allowed to open within a mile of residential housing within the Township. The advent of these businesses could lead to a decrease in property values and affect the safety and general welfare of the Township's citizens, as the businesses may cause an increase in crime and public nuisances. As such, Plaintiff, and others similarly situated, would be irreparably harmed absent the grant of a preliminary injunction.

**C. The grant of a preliminary injunction serves the public interest, as it will prevent the application of an unconstitutional law to similarly situated plaintiffs and cause little to no harm to the public interest.**

The questions of harm to others and serving the public interest are inversely proportional to the likelihood of success on the merits. *Husted*, 751 F.3d at 412

(quoting *Connection Dist. Co. v. Reno*, 154 F.3d 281, 288 (1998)). "[B]ecause the questions of harm to the parties and the public interest generally cannot be addressed properly in the First Amendment context without first determining if there is a constitutional violation, the crucial inquiry often is, and will be in this case, whether the state action at issue is likely to be found constitutional." *Id.* The primary factor showing irreparable harm to Plaintiff, i.e. the denial of its constitutional rights, also shows why the public interest is furthered by an injunction. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that irreparable harm and public interest "merge" when the government is a party). "[T]he public interest lies in a correct application of the federal constitutional and statutory provisions upon which claimants have brought this claim and ultimately . . . upon the will of the people of Michigan being effected in accordance with Michigan law." *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006) (internal quotation and citation omitted). It logically flows that "enforcement of an unconstitutional law is always contrary to the public interest." *Pursuing Am.'s Greatness v. F.E.C.*, 831 F.3d 500, 511 (D.C. Cir. 2016) (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)).

Given that Mich. Comp. Laws § 125.3402(2) unduly burdens the right to refer proposed zoning ordinances as applied to Plaintiff and similarly situated parties, it is in the public interest to enjoin Defendants to enforcing it. Additionally, Defendant

will suffer little to no harm by enjoining the enforcement of the zoning ordinance until disposition of this matter, as the referendum seeks only to repeal portions of the ordinance authorizing marihuana businesses within the Township and, particularly, within the vicinity of residential areas.

As such, a preliminary injunction and temporary restraining order should issue until a disposition of this case on the merits.

## IV.   CONCLUSION

For the foregoing reasons, this Court should issue a Preliminary Injunction and/or temporary restraining order and enjoin the enforcement of Mich. Comp. Laws § 125.3402(2) until disposition of this case on the merits.

WHEREFORE, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order and enjoin the enforcement of Mich. Comp. Laws § 125.3402(2) until disposition of this case on the merits or any other relief the Court deems just.

Respectfully Submitted,

Dated:  March 23, 2022

/s/ Hannah Stocker

By: _____
      Hannah Stocker (P82847)
      23332 Farmington Road, #98
      Farmington, MI 48336
      (248) 252-6405 (telephone)
      Hannah@stockerlawpllc.com

22