# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

YPSILANTI TOWNSHIP CITIZENS FOR RESPONSIBLE GOVERNMENT, ballot question committee,

        Plaintiff,

v.

JOCELYN BENSON, in her official capacity as Secretary of State of Michigan, CHARTER TOWNSHIP OF YPSILANTI, and HEATHER JARRELL ROE, in her official capacity as Ypsilanti Township Clerk.

        Defendants.

Case No. 2:22-cv-10614

Hon. Sean F. Cox

| | |
|---|---|
| Hannah Stocker (P82847)<br>Attorneys for Plaintiffs<br>23332 Farmington Road #98<br>Farmington, MI 48336<br>(248) 252-6405 (phone)<br>hannah@stockerlawpllc.com | James E. Tamm (P38154)<br>Richard V. Stokan, Jr (P61997)<br>Maxwell G. Shuart (P85692)<br>Kerr, Russell and Weber, PLC<br>Attorney for Defendants Roe and Charter Township of Ypsilanti<br>500 Woodward Ave, Ste. 2500<br>Detroit, MI 48226<br>(313) 961-0200 (phone)<br>(313) 961-0388 (facsimile)<br>jtamm@kerr-russell.com<br>rstokan@kerr-russell.com<br>mhuart@kerr-russell.com |
| Heather S. Meingast (P55439)<br>Erik A. Grill (P64713) | |

1

| | |
|---|---|
| Assistant Attorneys General<br>Attorneys for Defendant Benson<br>P.O. Box 30736<br>Lansing, MI 48909<br>(517) 335-7659 (phone)<br>(517) 335-7640 (facsimile)<br>meingasth@michigan.gov<br>grille@michigan.gov | |

# FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Ypsilanti Township Citizens for Responsible Government ("Plaintiff"), in its capacity as local ballot question committee, by and through its counsel, Hannah Stocker, files this First Amended Complaint, as of right pursuant to Fed. R. Civ. Pro 15(a)(1)(B) against Defendants Jocelyn Benson, Secretary of State of Michigan, in her official capacity; the Charter Township of Ypsilanti; and Heather Jarrell Roe, in her official capacity as Ypsilanti Township Clerk.

## INTRODUCTORY STATEMENT AND SUMMARY

1. Plaintiff is a duly-formed ballot question committee that sought to petition to submit a zoning ordinance (the "Revised Zoning Ordinance") adopted by the Board of Trustees of the Charter Township of Ypsilanti (the "Township") to the voters of the township for approval, prior to its enactment.

2. Plaintiff is filing this action to challenge the constitutionality of MCL 125.3402(2), which requires a township resident who wishes to submit a zoning

ordinance to the vote of the township's electors to file a petition containing the signatures of 15% of the registered electors residing in the zoning jurisdiction who voted in the last gubernatorial election.

3. Pursuant to Mich. Comp. Laws § 125.3402(2), Plaintiff must collect the requisite number of signatures within 30 days of publication of the Revised Zoning Ordinance to refer it to a vote of the township's electors.

4. In the 2018 gubernatorial election, 23,856 registered electors voted in the Township. Therefore, Plaintiff must collect 3,578 valid signatures to have its petition accepted and the zoning ordinance submitted to the electors.

5. In larger municipalities, such as the Charter Township of Ypsilanti, Mich. Comp. Laws § 125.3402 places an undue burden on the ability of Plaintiff and other similarly situated parties to qualify to have a challenged Zoning Ordinance submitted to a vote by the people of the township.

6. Plaintiff seeks a declaration that the statute violates the First and Fourteenth Amendments of the United States Constitution as applied in this instance and seek an order enjoining Defendants from enforcing these signature requirements and requiring Defendants to craft remedies relating to these provisions that address constitutional infirmities.

7.  Plaintiff further seeks a declaration that Defendants, Heather Jarrell Roe and the Charter Township of Ypsilanti, violated its substantive due process right to free political speech.

8.  Plaintiff brings this action under 42 U.S.C. § 1983 to vindicate its rights under the Fourteenth Amendment to the United States Constitutional against deprivation of liberty without due process of law.

## JURISDICTION AND VENUE

9.  Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because this is a civil action seeking relief for the deprivation of rights secured by the United States Constitution.

10. Jurisdiction also arises under 42 U.S.C. § 1983 in relation to Defendants Heather Jarrell Roe and the Charter Township of Ypsilanti's, violation of Plaintiff's constitutional rights to due process.

11. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) because it is the judicial district where the Charter Township of Ypsilanti is located and where the majority of events giving rise to this action occurred.

## PARTIES

12. Plaintiff, Ypsilanti Township Citizens for Responsible Government, is a duly-formed ballot question committee which seeks to refer the Revised Zoning Ordinance to a vote of the electors of Ypsilanti Township.

13. Defendant, Jocelyn Benson, is sued in her official capacity as the Michigan Secretary of State. As Secretary of State, she serves as Michigan's chief election officer. Mich. Comp. Laws § 168.21.

14. Defendant, Charter Township of Ypsilanti, is a Michigan municipality governed by the Charter Township Act and Michigan Zoning Enabling Act and located within the Eastern District of Michigan.

15. Defendant, Heather Jarrell Roe, is sued in her official capacity as Clerk of the Township of Ypsilanti, who is responsible for determining whether the submitted petition is adequate. *See* Mich. Comp. Laws § 125.3402(3)(b).

## BACKGROUND FACTS AND ALLEGATIONS

## THE MICHIGAN ZONING ENABLING ACT

16. The Michigan Zoning Enabling Act (the "MZEA"), Mich. Comp. Laws § 125.3101 et seq., authorizes and regulates the creation, modification, and enforcement of zoning ordinances in municipalities in the State of Michigan.

17. Under the MZEA, local units of government can regulate land development through the use of zoning ordinances. Mich. Comp. Laws § 125.3201.

18. To carry out these mandates, the MZEA requires the formation of a zoning or planning commission, which investigates and develops a zoning ordinance, and evaluates public opinion as it relates to the zoning ordinance. *See* Mich. Comp. Laws §§ 125.3301; 125.3305.

19. Following at least one public hearing, the zoning or planning commission shall submit its recommendations, which include a zoning plan denoting the areas subject to zoning, boundaries for zoning districts, the text of the zoning ordinance with the necessary maps and zoning regulations, and the manner of administering and enforcing the zoning ordinance, to the requisite local unit of government. Mich. Comp. Laws § 125.3305.

20. After considering the zoning or planning commissions' recommendations and making any changes or revisions, the local legislative body votes on the zoning ordinance. Mich. Comp. Laws § 125.3401.

21. A proposed zoning ordinance will only be adopted if approved by a majority of the local legislative body, Mich. Comp. Laws § 125.3308(5), and, if subject to voter's referendum, the approval of the majority of the township's voters. See Mich. Comp. Laws § 125.3402.

22. Registered electors of a township or county can challenge zoning ordinances or amendments that have been approved by the local legislative body by

6

filing a Notice of Intent to file a petition for referendum. *See* Mich. Comp. Laws § 125.3402.

23. If the notice is filed, the petitioner has 30 days to collect signatures in the community equal to 15% of the number of votes cast by registered electors in the community in the last gubernatorial election. Mich. Comp. Laws § 125.3402(2).

24. The petitioner shall file the petition with the local clerk upon obtaining the requisite number of signatures. *See* Mich. Comp. Laws § 125.3402(3).

25. If the petition is filed by the deadline, is in the proper form, and contains the requisite number of valid signatures, the zoning ordinance (or parts of it) will only become effective if it is approved by the county or township's electors at the next regular or special election. Mich. Comp. Laws § 125.3402(3)(c).

## ZONING ORDINANCE AMENDMENT

26. In 2019, the Charter Township of Ypsilanti (the "Township") tasked its Planning Commission and Development Team with revising its Zoning Ordinance.

27. After a delay in the project due to COVID-19, the Planning Commission developed a Revised Zoning Ordinance which established new districts, amended district boundaries, and set regulations for marihuana facilities and establishments within the industrial and commercial district.

28. If enacted, the Revised Zoning Ordinance allows an unlimited number of marihuana facilities and establishments to operate within any industrial and

7

commercial district (the "I-C district"), as long as the businesses are not located within 1,000 feet of a place of worship or school or childcare facility and 300 feet from a public park. § 416 (C)(4).

29. Additionally, the Draft Zoning Map extends the I-C district westward, abutting R-4 and R-5 residential districts.

30. Following public hearing on November 23, 2021, the Planning Commission submitted the Revised Zoning Ordinance to the Ypsilanti Board of Trustees.

31. Having revised the Zoning Ordinance and held public readings of it on January 18, 2022 and February 15, 2022, respectfully, a majority of Board of Trustees voted in favor of enacting the revised Zoning Ordinance on February 15, 2022.

32. On February 24, 2022, the Township published its "Notice of Adoption of an Amendment to the Zoning Ordinance Charter Township of Ypsilanti Township" (the "Notice") in the Washtenaw Legal News.

**CHALLENGE TO ZONING ORDINANCE AMENDMENT AND ACTIONS OF THE PARTIES**

33. On March 1, 2022, Latrice T. Moore, a citizen of the Township, filed her "Notice of Intent to File Petition pursuant to MCL 125.3402."

34. Ms. Moore has coordinated with Plaintiff to meet the requirements of Mich. Comp. Laws § 125.3402.

8

35. Plaintiff was established as a local ballot question committee by filing a statement of organization with the Washtenaw County Clerk pursuant to Mich. Comp. Laws § 169.224(1) and 169.236(2).

36. Plaintiff was established to help the citizens of the Township exercise their right of referendum and vote on whether the Revised Zoning Ordinance should be enacted.

37. In the Township, 23,856 registered voters voted in the last gubernatorial election.

38. Therefore, pursuant to the MZEA, Plaintiff needed to obtain 3,578 valid signatures by March 26, 2022 to refer the Revised Zoning Ordinance to a vote of the Township's electors.

39. Plaintiff hired the professional signature-gathering firms, Let the Voters Decide and Larsosa Management Service, to collect signatures.

40. Let the Voters Decide charged Plaintiff for signature as follows:

| February 28 to March 11 | $10.67 per valid signature |
| March 12 to March 17 | $17.33 per valid signature |
| March 17 to March 26 | $23.33 per valid signature |

41. Larsosa Management Service, who began collecting signatures for Plaintiff on March 16, 2022, charged for signature as follows:

9

| March 16 to March 22 | $20.00 per valid signature |
|---|---|
| March 23 to March 26 | $26.15 per valid signature |

42. Cognizant of the short timeframe to obtain signatures, Plaintiff submitted an expedited printing order for petitions on February 23, 2022.

43. Despite expediting its order, Plaintiff did not receive its petitions until February 25, 2022, at which time, Plaintiff began to distribute them to Let the Voters Decide.

44. From February 28, 2022 to March 26, 2022, the signature-gathering firms worked to obtain signatures.

45. On March 23, 2022, Plaintiff's Counsel contacted Defendant Roe to coordinate a time and place to accept the signatures on Saturday, March 26, 2022, the thirtieth day after publication of the Revised Zoning Ordinance.

46. On March 26, 2022, Defendant Roe and/or other agents of the Township government informed Plaintiff that she/they would not accept any petitions after 5:15 PM on that date.

47. Defendant Township and Defendant Roe's Counsel led Plaintiff to believe that March 26, 2022 was the deadline for Plaintiff to turn in its petitions.

48. On March 26, 2022, Plaintiff turned in petitions containing 7,895 signatures to Defendant Roe.

49. Plaintiff paid the signature-gathering firms approximately $100,000.00 in conjunction to this ballot initiative.

50. On April 13, 2022, Defendant Roe finished canvassing the signatures and informed Plaintiff that more than 5,000 of the submitted signatures were invalid.

51. On that date, Defendant Roe sent Plaintiff correspondence indicating as follows:

> Upon a review of the signatures and comparison with the Qualified Voter File, it was determined that 2,754 valid signatures were submitted. This falls short of the 3,578 signatures needed to place the referendum on the ballot. Therefore, a referendum will not be placed on the August ballot.

52. On April 12, 2022 and April 13, 2022, Plaintiff's Counsel requested a document containing a list of the that were invalidated by the Township Clerk.

53. Defendant's Counsel denied Plaintiff's Counsel's request.

54. Because Defendant Roe has deemed Plaintiff did not obtain 3,758 valid signatures, Defendant Roe has refused to place the Revised Zoning Ordinance on the August ballot.

## CAUSES OF ACTION

### COUNT I – VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

55. The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

56. The First Amendment of the United States Constitution prohibits the abridgment of speech and political association.

57. The First Amendment applies to the states through the Fourteenth Amendment.

58. All persons violating the First Amendment under color of state law are liable in equity and at law under 42 U.S.C. § 1983.

59. Plaintiff is a ballot question committee that has actively and diligently attempted to obtain sufficient signatures to refer the Revised Zoning Ordinance to a vote of the Township's electors.

60. Although Plaintiff has diligently canvassed the Township to obtain signatures and secured 7,895 signatures, according to the Township Clerk, Plaintiff has been unable to obtain 3,578 valid signatures necessary to refer the Revised Zoning Ordinance to the voters.

61. The 15 percent signature threshold in conjunction with the 30-day time frame to obtain signatures, as set forth in Mich. Comp. Laws § 125.3402(2), violates Plaintiff's right to free political speech and direct democracy, as it makes it nearly impossible for Plaintiff to satisfy the petition prerequisites to submit the Revised Zoning Ordinance to the voters.

62. Mich. Comp. Laws § 125.3402 is a ballot access law.

63. When assessing the validity of ballot access laws, a court must analyze the "character and magnitude of the asserted injury" to the plaintiff's constitutional rights in relation to the government's interest in enforcing the regulation. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

64. If an undue burden is placed on the plaintiff's constitutional rights, strict scrutiny applies and a regulation is deemed invalid, unless it is narrowly tailored to advance a compelling state interest. *See Graveline v. Benson*, 992 F.3d 524, 534 (Mich. Ct. App. 2021).

65. Mich. Comp. Laws § 125.3402(2), as applied to Plaintiff and similarly situated parties, violates Plaintiff's First and Fourteenth Amendment right to free political speech, including direct democracy, and free political association.

66. Mich. Comp. Las § 125.3402(2) places an undue burden on Plaintiff's right to referenda and ballot access.

67. In a large township, such as the Charter Township of Ypsilanti, petitioners must gather an unreasonably high number of signatures (thousands) within a 30-day time frame in order to challenge a Zoning Ordinance enacted by the legislative body.

68. In practice, this is, if not, then close to, impossible, as petitioners often must wait several days to obtain their petitions from the printer, effectively shaving days off of their already tight deadline.

69. Additionally, once signatures are obtained, the petitioner must verify each one to ensure that there are no duplicates and confirm that the proper number of signatures have been collected.

70. A petitioner must obtain signatures well in excess of the required amount, as petitions often contain duplicates and signatures from unregistered voters or voters who do not reside within the municipality.

71. Generally, if a duplicate signature is found, both the original signature and the duplicate are disqualified from the petition.

72. By requiring Plaintiff to obtain such a high threshold for signatures within a limited time, § 125.3402 effectively robs Plaintiff of the ability to "scrub" signatures in order to reject duplicates, signatures from unregistered voters, or to otherwise cure any signature deficiencies and constitutes an undue burden on their right to free political speech.

73. Additionally, the high signature threshold and scant window of opportunity limits the right of referendum under Mich. Comp. Laws § 125.3402 in populous townships to only the most organized and well-funded of advocacy organizations, thereby effectively barring private citizens and many advocacy groups from engaging in these efforts.

74. A private citizen is unlikely to obtain more than 3,000 signatures within 30 days by his own individual efforts, or even the cumulative efforts of a number of volunteer citizens.

75. Thus, the high signature threshold and limited timeframe effectively mandates the use of a signature-gathering company.

76. Signature-gathering companies require petitioners to pay out higher rates per signature.

77. In this case alone, Plaintiff has paid between $10.67 and $26.00 per each valid signature gathered.

78. Requiring such a high number of signatures is cost prohibitive and precludes the average citizen from reaching the signature threshold in an expeditious manner.

79. Additionally, winter weather predominantly precludes the canvassing of signatures in high traffic areas.

80. Were the signatures gathered in summer, canvassers could obtain high quantities of signatures in limited time frames by frequenting busy public spaces and attending events.

81. However, with minimal winter events and less public traffic, canvassers must go door-to-door, thereby gathering signatures in a less efficient and more time consuming manner.

82. The Township creates an undue burden on signature gathering, as it lacks geographically central areas frequented by heavy foot traffic from which canvassers can obtain signatures.

83. As such, Mich. Comp. Laws § 125.3402 places a severe burden on plaintiff's First and Fourteenth Amendment rights.

84. If a state regulation imposes a severe burden on a plaintiff's constitutional rights, strict scrutiny applies and the regulation will only be upheld if it is narrowly drawn to advance a state interest of compelling importance. *See Graveline v. Benson*, 992 F.3d 524, 534 (Mich. Ct. App. 2021).

85. Mich. Comp. Laws § 125.3402 is not narrowly tailored to advance the government's interest in regulating elections, as less restrictive means exist.

86. As applied to Plaintiff under the circumstances, the signature threshold requirement in conjunction with the 30-day timeframe set forth in Mich. Comp. Laws §125.3402(2) is burdensome, unreasonable, and not narrowly tailored to meet any compelling or legitimate state interest.

87. Mich. Comp. Law § 125.3402(2) violates Plaintiff's First and Fourteenth Amendment rights to free political speech and ballot access.

### COUNT II – DEFENDANT ROE AND DEFENDANT TOWNSHIP VIOLATED PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHT TO POLITICAL SPEECH AND BALLOT ACCESS

88. The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

89. The Fourteenth Amendment of the United States Constitution and art I, § 17 of the Michigan Constitution prevent the deprivation of life, liberty or property without due process of law. This substantive guarantee is intended to prevent state actors from employing their power in an abusive or oppressive manner.

90. Defendant Roe and Defendant Township's application of the Mich. Comp. Laws § 125.3402 violates substantive due process in that she inhibited Plaintiff's ability to utilize the full statutory period to collect and vet signatures.

91. Defendant Roe and Defendant Township violated Plaintiff's procedural due process right in they fail to provide proper notice.

92. Defendant Roe and Defendant Township's employees misled Plaintiff into believing that March 26, 2022 was the deadline to submit signatures when the actual deadline was several days later.

93. Defendant Roe and Defendant Township's actions are arbitrary and capricious, as Plaintiff might have obtained sufficient signatures had Defendant abided by the timelines set forth in Mich. Comp. Laws § 125.3402.

94. Defendant Roe has a duty to follow Mich. Comp. Laws § 125.3402 and the Michigan Election Law, specifically Mich. Comp. Laws § 168.13.

95.   Failing to allot to Plaintiff the full 30-day filing timeline set forth in Mich. Comp. Laws § 125.3402 is unconstitutionally arbitrary and does not serve any legitimate state interest.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A.   Enter judgment in favor of Plaintiff and against Defendants;

B.   Declare that the 15 percent signature threshold requirement in conjunction with the 30-day timeframe set forth in Mich. Comp. Laws § 125.3402(2) is unconstitutional as applied to Plaintiff, and therefore unenforceable;

C.   Declare that Defendant Roe and Defendant Township acted arbitrarily and capriciously in applying Mich. Comp. Laws § 125.3402, thereby violating Plaintiff's right to substantive and procedural due process;

D.   Issue a preliminary injunction prohibiting State Defendants from enforcing the signature submission deadline in Mich. Comp. Laws § 125.3402(2) as it applies to Plaintiff and similarly situated local ballot question committees;

E.   Issue a preliminary injunction prohibiting Defendants from enforcing the signature requirements contained in Mich. Comp. Laws § 125.3402(2) as it applies to Plaintiff and similarly situated local ballot question committees;

F.  Order that Plaintiff has 30 days to complete canvassing signatures to satisfy the requirements of Mich. Comp. Laws § 125.3402(2);

G.  Order that Defendants craft appropriate remedies with regard to petition signature requirements and submission deadline as found in Mich. Comp. Laws § 125.3402(2), so as to rectify constitutional infirmities and allow Plaintiff an opportunity to refer the amended Zoning Ordinance to the voter's at the next general or special election; and

H.  Grant or award such other relief as the Court may deem just, equitable or appropriate under the circumstances.

Respectfully Submitted,

Dated: April 18, 2022

By: /s/ Hannah Stocker
_____
Hannah Stocker (P82847)
Attorneys for Plaintiff
23332 Farmington Road, #98
Farmington, MI 48336
(248) 252-6405 (telephone)
Hannah@stockerlawpllc.com