UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

YPSILANTI TOWNSHIP CITIZENS FOR
RESPONSIBLE GOVERNMENT, ballot
question committee,

                                      Case No.: 5:22-cv-10614

      Plaintiff,                   Hon. Sean F. Cox

vs.

JOCELYN BENSON, in her official capacity
as Secretary of State of Michigan,
CHARTER TOWNSHIP OF YPSILANTI,
and HEATHER JARRELL ROE, in her
official capacity as Ypsilanti Township
Clerk,

      Defendants.

---

HANNAH STOCKER (P82847)
Attorneys for Plaintiff
23332 Farmington Road, #98
Farmington, MI 48336
(248) 252-6405
hannah@stockerlawpllc.com

JAMES E. TAMM (P38154)
RICHARD V. STOKAN, JR. (P61997)
MAXWELL G. SHUART (P85692)
KERR, RUSSELL AND WEBER, PLC
Attorneys for Defendants
Charter Township of Ypsilanti
and Heather Jarrell Roe
500 Woodward Avenue, Ste. 2500
Detroit, MI 48226-3427
(313) 961-0200/(313) 961-0388 Fax
jtamm@kerr-russell.com
rstokan@kerr-russell.com
mshuart@kerr-russell.com

---

**DEFENDANT CHARTER TOWNSHIP OF YPSILANTI AND
HEATHER JERRELL ROE'S
RESPONSE TO PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF**

**NOW COMES** Defendants, Charter Township of Ypsilanti and Heather Jarrell Roe, by and through their legal counsel Kerr, Russell and Weber, PLC, and respectfully move for an order denying Plaintiff's renewed motion for preliminary injunction.

Plaintiff's Renewed Motion repeats the assertion that MCL 125.3402 is a ballot access law governed by the Supreme Court's *Anderson/Burdick* framework. The provision, however, is not a "ballot access law" in the traditional sense considered by the Sixth Circuit. Plaintiff's theory that the statute is a ballot access law that imposes a severe burden on Plaintiff's constitutional rights is inaccurate. Under the facts, Sixth Circuit authority provides that the proper standard of review is rational basis. Even assuming the *Anderson/Burdick* framework has some application to this case, which Defendants' do not concede because those cases and its progeny are distinguishable, a rational basis test is the correct scope under which to review the statute. Because a rational basis test is the appropriate standard of review under the facts, Plaintiff is unlikely to succeed on the merits and its request for a preliminary injunction must be denied.

For similar reasons, Plaintiff's new claims alleging violation of procedural and substantive due process are also unlikely to succeed on the merits. Plaintiff's

assertion that it was "misled" is also inaccurate, and Plaintiff is unable to meet the standard established by the Supreme Court necessary to a successful showing that its due process rights have been violated. Because Plaintiff cannot meet the applicable standard and its claims are unlikely to find success on the merits, Plaintiff's request for a preliminary injunction should be denied.

**WHEREFORE**, Defendants Charter Township of Ypsilanti and Heather Jarrell Roe respectfully request that this Honorable Court deny Plaintiff's renewed motion for preliminary injunction and grant any other relief that this Court should find is equitable and just.

Respectfully submitted,

KERR, RUSSELL AND WEBER, PLC
By: /s/ *James E. Tamm*
James E. Tamm (P38154)
Attorneys for Defendants Charter Township
of Ypsilanti and Heather Jarrell Roe
500 Woodward Avenue, Suite 2500
Detroit, MI 48226-3427
T: 313-961-0200; F: (313) 961-0388
Dated: April 28, 2022                    jtamm@kerr-russell.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

YPSILANTI TOWNSHIP CITIZENS FOR
RESPONSIBLE GOVERNMENT, ballot
question committee,

                              Case No.: 5:22-cv-10614

       Plaintiff,                   Hon. Sean F. Cox

vs.

JOCELYN BENSON, in her official capacity
as Secretary of State of Michigan,
CHARTER TOWNSHIP OF YPSILANTI,
and HEATHER JARRELL ROE, in her
official capacity as Ypsilanti Township
Clerk,

       Defendants.

_____

HANNAH STOCKER (P82847)
Attorneys for Plaintiff
23332 Farmington Road, #98
Farmington, MI 48336
(248) 252-6405
hannah@stockerlawpllc.com

JAMES E. TAMM (P38154)
RICHARD V. STOKAN, JR. (P61997)
MAXWELL G. SHUART (P85692)
KERR, RUSSELL AND WEBER, PLC
Attorneys for Defendants
Charter Township of Ypsilanti
and Heather Jarrell Roe
500 Woodward Avenue, Ste. 2500
Detroit, MI 48226-3427
(313) 961-0200/(313) 961-0388 Fax
jtamm@kerr-russell.com
rstokan@kerr-russell.com
mshuart@kerr-russell.com

_____

# DEFENDANTS' BRIEF IN OPPOSITION
# TO PLAINTIFF'S MOTION FOR
# <u>PRELIMINARY INJUNCTION</u>

## TABLE OF CONTENTS

**STATEMENT OF ISSUES PRESENTED**…………………………………………2

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**…….…………3

**INDEX OF AUTHORITIES**…………………………………………………...4

**STATEMENT OF FACTS**…………………………………….………………6

**STANDARD OF REVIEW**…………………………………………...………11

**LAW AND ARGUMENT**……………………………………………………12

      **I.**    **Plaintiff is unlikely to succeed on the merits**……….………………………………….………12

            **A.**    **The *Anderson*/*Burdick* framework does not apply**………..13

            **B.**    **If *Anderson*/*Burdick* applies, rational basis is still the appropriate standard of review**……………………….....19

            **C.**    **There has been no violation of procedural due process**…..22

            **D.**    **There has been no violation of substantive due process**…..23

      **II.**    **Irreparable Injury**……………………………………….…24

      **III.**    **The requested injunction would cause substantial harm to others**………………………………………………..…25

      **IV.**    **An injunction is not in the public interest**………………...…...25

**CONCLUSION & RELIEF REQUESTED**……………………………….…26

## STATEMENT OF ISSUES PRESENTED

(1)     Whether Plaintiff's request for a preliminary injunction should be
      denied because Plaintiff has failed to establish the requisite elements
      for this request for extraordinary relief.

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Taxpayer's United for Assessment Cuts v. Austin*, 994 F.2d 291 (6th Cir. 1993)

# INDEX OF AUTHORITIES

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)………………………………..passim

*Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012)………………………………..…...18

*Burdick v. Takushi*, 504 U.S. 428 (1992)…………………………………...…passim

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012)……………………...….11

*Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182 (1999)…………..17

*Corning Glass Works v. Lady Cornella, Inc.*, 305 F. Supp. 1229 (E.D. Mich. 1969)
……………………………………………………………………………….…11

*Dobrovolny v. Moore*, 126 F.3d 1111 (8th Cir. 1997)…………………...……….18

*EJS Properties, LLC v. Toledo*, 698 F.3d 845 (6th Cir. 2012)……………….…..24

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006)……….....18

*Gonzales v. Nat'l Bd. Of Med. Exam'rs*, 225 F.3d 620 (6th Cir. 2000)…………….25

*Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644 (6th Cir. 2007)……………….11

*Huron Valley Pub. Co. v. Booth Newspapers, Inc.*, 336 F.Supp. 659 (E.D. Mich. 1972)……………………………………………………………………………11

*John Doe No. 1 v. Reed*, 561 U.S. 186 (2010)………………………………...13, 22

*Libertarian Party of Ky v. Grimes*, 835 F.3d 570 (6th Cir. 2016)…………..............19

*Marijuana Policy Project v. United States*, 304 F.3d 82 (D.C. Cir. 2002)……...…..18

*Maryland v. King*, 133 S. Ct. 1 (2012)………………………………………….....25

*Meyer v. Grant*, 486 U.S. 415 (1988)…………………………………….14, 15, 16

*Molinari v. Bloomberg*, 564 F.3d 587 (2d Cir. 2009)……………………..….…..18

*New Motor Vehicle Bd. Of Cal. V. Orrin W. Fox Co.,* 434 U.S. 1345 (1977)………26

*Settles v. City of Detroit Clerk*, 169 Mich. App. 797 (Mich. Ct. App. 1988)……....22

*Schmitt v. LaRose*, 933 F.3d 628, 643 (6th Cir. 2019)…………..…13, 14, 17, 19, 20

*Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291 (6th Cir. 1993)……………………………………………………….…15, 16, 17, 21, 22

*Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020)………………………...….…20

*Village of Euclid, Ohio v. Amber Realty Co.*, 272 U.S. 365 (1926)…………......…12

*Wirzburger v. Galvin*, 412 F.3d 271 (1st Cir. 2005)……………………..……...…18

**Statutes**:

MCL 125.3402…………………………………………………………..……passim

## STATEMENT OF FACTS

In March of 2020, the Ypsilanti Township Board of Trustees adopted the 2040 Master Plan. This Plan was the culmination of extensive public engagement and resident input regarding the future growth and development of Ypsilanti Township. With input from resident and other stakeholder groups in mind, the Ypsilanti Planning Commission set out to prepare a comprehensive update to the Township's Zoning Ordinance. After over a year of public meetings and legal review, the comprehensive update was presented at a public hearing hosted by the Planning Commission on November 23, 2021. Comments and recommendations given at the public hearing, in addition to the results of public workshops, were considered and reflected in changes to the draft ordinance. On January 11, 2022, the Planning Commission unanimously recommended adoption of the 2022 Zoning Ordinance and Map by the Ypsilanti Board of Trustees.

On January 18, 2022, at the Board of Trustees regular meeting, the Board held a reading of the proposed Zoning Ordinance. The first reading of proposed ordinance 2022-498, to amend and re-adopt the entire township zoning ordinance and map, was approved unanimously via resolution 2022-03. A second reading was held on February 15, 2022, at a regular meeting of the Board of Trustees and the comprehensive zoning update was adopted unanimously.

Under the State of Michigan's Zoning Enabling Act, MCL 125.3101 et seq. (ZEA), before an adopted or amended zoning ordinance may take effect, a local agency of government like the Charter Township of Ypsilanti is required to publish a notice of ordinance adoption within 15 days from adoption. MCL 125.3401. Compliant with the ZEA, Ypsilanti published a "Notice of Adoption" in the Washtenaw Legal News on February 24, 2022.

Unlike many states, Michigan's ZEA provides an avenue for "a registered elector residing in the zoning jurisdiction of a county or township" to submit "the zoning ordinance to the electors for their approval or rejection" at the next regular election or special election. MCL 125.3402(1)-(3). To have an ordinance or part of an ordinance placed on the next election's ballot, the registered elector is required to file a Notice of Intent with the clerk of the relevant legislative body within 7 days from the date of publication. MCL 125.3402(1). The petitioner then has 30 days from publication to file a petition signed by "a number of registered electors residing in the zoning jurisdiction not less than 15% of the total vote cast within the zoning jurisdiction for all candidates for governor at the last preceding general election at which a governor is elected." MCL 125.3402(2). On meeting these prerequisites, the legislative body is charged with providing the "manner of submitting the zoning ordinance or part of the zoning ordinance to the electors for their approval or rejection and determining the result of the election." MCL 125.3402(3).

In the Complaint initiating this action, Plaintiff asserts that Latrice Moore filed a Notice of Intent pursuant to MCL 125.3402(1) on March 1, 2022. (Complaint, ECF No. 1, Page ID. 7). It is asserted that Moore coordinated with Plaintiff to gather signatures, that 3,588 signatures were required to meet the 15% threshold, and that Plaintiff hired a professional signature-gatherer firm to collect signatures. (Complaint, ECF No. 1, Page ID. 8).

In its Renewed Motion for Preliminary Injunction, Plaintiff claims that it was misled into believing that the petition signatures were required to be submitted on Saturday, March 26, 2022, to comply with the deadline set forth in MCL 125.3402. (Plaintiff's Motion, ECF No. 22, Page ID. 210-211). As shown by Plaintiff's Exhibit 5 to its Motion, Plaintiff's attorney was responsible for raising the question of when the petitions were due under Michigan's election law after she requested that the signatures be accepted on Saturday, March 26. (ECF No. 22-5, Page ID. 260-262). Responding to Plaintiff's request to turn in its signatures, the Township did nothing more than satisfy Plaintiff's request by promptly making arrangements to open the Township offices to accept Plaintiff's petitions. At no point did the Township refuse to accept petition signatures until the extended deadline set by the Michigan election law expired. Further, the Township had no obligation to correct Plaintiff's attorney's mistaken belief as to when the petition signatures were required to be submitted. Notwithstanding the extended deadline, the Township's clerk made the effort to

accommodate Plaintiff's request and open the Township offices to accept the petitions. At no point did the Township clerk "mislead" Plaintiff or refuse to accept signatures in advance of the extended deadline. Additionally, no effort was made by plaintiff to submit additional petition signatures after Saturday, March 26, 2022, even though Plaintiff's counsel had determined that petitions could be submitted on Monday, March 28, 2022. (Plaintiff's Motion, ECF No. 22-5, Page ID. 260-262).

By submitting around 7,985 signatures to the Township, it remains unclear which of the statutory prerequisites to holding a referendum on a township ordinance Plaintiff finds insurmountable. Given that Plaintiff has submitted over double the number of required signatures, Plaintiff must concede that the statute's prerequisites do not make it "nearly impossible for Plaintiff to satisfy the petition requirements." (Complaint, ECF No. 1, Page ID. 10). By filing this lawsuit, Plaintiff either lacked confidence that its signatures were valid or was already aware of the deficiencies that accompanied a majority of the gathered signatures.

Even though it is clear that the ZEA signature requirements are easily satisfied, Plaintiff asks that this Court hold the statute's 15% signature threshold and 30-day window to obtain signatures unconstitutional on the theory that the statute places an unreasonable burden on ballot access, and Plaintiff requests an injunction on this basis. Plaintiff has not made the showing necessary to warrant this grant of extraordinary relief. Because the statute at issue is not a ballot access law that

imposes a severe burden on Plaintiff's constitutional rights, strict scrutiny is not the proper standard of review. Rather, rational basis applies, and because Plaintiff has not asserted that the statute is irrational or arbitrary, Plaintiff is unlikely to succeed on the merits of that claim.

In addition, Plaintiff's amended pleadings and renewed motion bring claims for the violation of substantive and procedural due process under the Fourteenth Amendment based on it being "misled" by the Township. The emails upon which Plaintiff bases this interpretation demonstrate that there was no affirmative representation made or refusal to accept signatures beyond the statutory deadline. Plaintiff's assertion that this action was arbitrary and capricious action is unconvincing. As a result, Plaintiff is unlikely to succeed on the merits of its claim that its due process rights have been violated and the request for a preliminary injunction should be denied.

Regardless of the inaccuracies and mischaracterizations that appear in Plaintiff's Amended Complaint and Renewed Motion, a fatal flaw regarding Plaintiff's claims remains: the authority cited therein does not support any right to relief under the circumstances presented. Where Plaintiff is unable to make the requisite showing that is likely to succeed on the merits, its Renewed Motion for Preliminary Injunction should be denied.

## STANDARD OF REVIEW

It is well settled that a preliminary injunction is an extraordinary remedy which should be granted only upon a clear showing of substantial likelihood of success at trial and irreparable injury if the defendant is not restrained. *Corning Glass Works v. Lady Cornella, Inc.*, 305 F. Supp. 1229 (E.D. Mich. 1969). A movant must meet an even higher standard for relief where, as here, the injunction will change rather than maintain the status quo or where the injunction will provide the movant substantially all the relief sought during the trial on the merits. *See Huron Valley Pub. Co. v. Booth Newspapers, Inc.*, 336 F.Supp. 659 (E.D. Mich. 1972). In First Amendment cases, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (internal citations and quotations omitted). This is because the public interest and any potential harm to the parties or others "largely depends on the constitutionality of the [statute]" *Id*.

Courts balance four factors in determining whether to grant a temporary or preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012).

## LAW AND ARGUMENT

### I.        Plaintiff is unlikely to succeed on the merits

Plaintiff's Renewed Motion repeats the assertion that MCL 125.3402 is a ballot access law governed by the Supreme Court's *Anderson/Burdick* framework. As noted in Defendants' Motion to Dismiss (ECF No. 18), however, the provision at issue is not a "ballot access law." MCL 125.3402 is part of Michigan's statutory scheme governing zoning, and as such is social and economic regulation that is subject to a rational basis standard of review. See *Village of Euclid, Ohio v. Amber Realty Co.*, 272 U.S. 365 (1926). Plaintiff's theory that the statute at issue is a ballot access law that imposes a severe burden on Plaintiff's constitutional rights is inaccurate. Plaintiff submitted over double the number of required signatures. Further, the authority cited by Plaintiff does not support its assertion that strict scrutiny applies. Where Sixth Circuit precedent does not provide that a higher level of exacting scrutiny beyond rational basis applies under the facts, Plaintiff is unlikely to succeed on the merits of its claim that MCL 125.3402 is unconstitutional.

For similar reasons Plaintiff's claim that its due process rights have been violated is also unlikely to succeed on the merits. Plaintiff has asserted no property interest or constitutional right on which to premise its claim for violation of procedural due process. Plaintiff has also asserted that its substantive due process rights have been violated, requiring a showing of arbitrary and capricious action by

Township officials. Plaintiff's interpretation that actions of the Township regarding the signature filing deadline were arbitrary and capricious is not supported by law or Plaintiff's Exhibit (Plaintiff's Motion, ECF No. 22-5, Page ID. 260-262).

A.    The *Anderson/Burdick* framework does not apply

In the context of statutory prerequisites governing Ohio's municipal ballot-initiative process, the Sixth Circuit has referenced Justice Sotomayor's prior directive that

> …we must be mindful of the character of initiatives and referenda. These mechanisms of direct democracy are not compelled by the Federal Constitution. It is instead up to the people of each State, acting in their sovereign capacity, to decide whether and how to permit legislation by popular action. States enjoy 'considerable leeway' to choose the subjects that are eligible for placement on the ballot and to specify the requirements for obtaining ballot access (e.g., the number of signatures required, the time for submission, and the method of verification). *John Doe No. 1 v. Reed*, 561 U.S. 186, 212 (2010) (Sotomayor, J., concurring).

*Schmitt v. LaRose*, 933 F.3d 628, 643 (6th Cir. 2019) (Bush, J., concurring). In *Schmitt*, the proponent of ballot initiatives challenged a county board of elections' refusal to place initiatives on the ballot after its petitions were refused on the ground that they proposed administrative, rather than legislative, action. *Id*. at 636. The majority in *Schmitt* rejected plaintiff's assertion that a strict scrutiny standard of review applied because the statute placed a prior restraint on political speech, finding instead that the laws at issue did "not directly restrict core expressive conduct; rather, the laws regulate the process by which initiative legislation is put before the

electorate, which has, at most, a second-order effect on protected speech." *Id*. at 638. Rather than applying strict scrutiny on plaintiff's prior restraint theory, the majority found that First Amendment challenges to state election regulations are generally evaluated under the *Anderson/Burdick* framework.

The concurring opinion in *Schmitt* questioned whether the First Amendment is implicated where, as in this lawsuit, the challenged statute regulates only the mechanics of the initiative process. *Id*. at 643. Finding that the "Supreme Court has not addressed the precise scope of First Amendment interests, if any, that are implicated by laws that regulate only the mechanics of the initiative process," the concurrence found the closest precedent on point to be *Meyer v. Grant*, 486 U.S. 415 (1988). Contrary to Plaintiff's framing of *Meyer v. Grant*, the issue was not the "duration" of political speech. (Plaintiff Motion, ECF No. 22, Page ID. 196). The issue in *Meyer* was a Colorado statute banning paid petition gatherers, which regulated citizens' ability to advocate for initiative petitions, therefore amounting to a regulation of political speech. The same issue is not presented by the facts of this case, where Plaintiff complains of the number of signatures required and timeframe available to obtain signatures. Thus, as found by the *Schmitt* concurrence and equally applicable here, the Supreme Court's opinions in *Anderson* and *Burdick*, "though concerning election regulation . . . do not address the key question raised in this case: is the First Amendment impinged upon by statutes regulating the election mechanics

concerning initiative petitions?" *Id*. at 644. Finding that *Anderson/Burdick* and its progeny focused on State laws that limited a candidate's ability to appear on the ballot, the concurrence found that "this circuit has generally limited the application of *Anderson* and *Burdick* to freedom-of-association challenges to ballot access laws- i.e. laws that burden candidates from appearing on the ballot." *Id*. (citations omitted). Under the facts of the present lawsuit, the issues are different from those presented in *Meyer*, *Burdick*, *Anderson*, or *Graveline*. Rather than regulate candidate ballot access by applying different standards to candidates from different parties or regulating political speech, the issue here is state regulation of the zoning ordinance referendum process. As noted by the concurrence in *Schmitt*, the most appropriate Sixth Circuit authority for purposes of this dispute is *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291 (6th Cir. 1993). In *Taxpayers United*, a citizen group and its individual members sought to have an initiative placed on the Michigan ballot. Pursuant to Michigan election law, the group was required to obtain signatures from registered voters in the state totaling 8% of those cast in the most recent gubernatorial election. *Id*. at 293. There, plaintiffs needed roughly 192,000 valid signatures for its initiative to be certified, and pursuant to Michigan election law once gathered the signatures were submitted to the State Board of Canvassers for a determination of whether the petition was sufficient under Michigan law. *Id*.

After a host of plaintiffs' signatures were disqualified pursuant to the Board's usual verification procedures, plaintiffs were approximately 7,000 signatures short. Suit was then brought alleging denial of the group's "right to vote and their right to engage in political speech." *Id*. at 294. Rejecting plaintiffs' argument, the *Taxpayers United* court held that "although the Constitution does not require a state to create an initiative procedure, if it creates such a procedure, the state cannot place restrictions on its use that violate the federal Constitution." *Id*. at 295. The court then noted that no authority existed for plaintiffs' assertion that signing a petition to initiate legislation is entitled to the same protection as the right to vote, and as a result found that plaintiffs' right to free speech and political association had not been impinged. *Id*. at 296-97. The court found that

> [b]ecause the right to initiate legislation is a wholly state-created right, we believe that the state may constitutionally place nondiscriminatory, content-neutral limitations on the plaintiffs' ability to initiate legislation. Unlike the challenged provision in *Meyer*, Michigan's initiative system does not restrict the means that the plaintiffs can use to advocate their proposal. Further, the Michigan procedure does not limit speech on the basis of content.

*Id*. at 297. The court went on to find that,

> as the Supreme Court has recognized in other contexts, a state has a strong interest in ensuring that its elections are run fairly and honestly. *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). It also has a strong interest in ensuring that proposals are not submitted for enactment into law unless they have sufficient support. *See id*. at 788, n. 9. The Michigan procedure does nothing more than impose nondiscriminatory, content-neutral restrictions on the plaintiffs' ability to use the initiative procedure that serve Michigan's interest in maintaining the integrity of

the initiative process. Our result would be different if, as in *Meyer*, the plaintiffs were challenging a restriction on their ability to communicate with other voters about proposed legislation, or if they alleged they were being treated differently than other groups seeking to initiate legislation. But, in the instant case, we believe that it is constitutionally permissible for Michigan to condition the use of its initiative procedure on compliance with content-neutral, non-discriminatory regulations that are, as here, reasonably related to the purpose of administering a fair initiative procedure.

Accordingly, the court concluded that the plaintiffs' First Amendment claim was without merit. *Id*.

The court in *Taxpayers United*, however, did not specifically address whether the Michigan statute at issue in fact regulated First Amendment speech. *Id.* at 293-94, 296-97. Instead, the court assumed that it did but nonetheless upheld the statute, applying a rational basis standard of review. As found by the concurring opinion in *Schmitt*:

> Thus, under *Taxpayers United*, statutes that, in a content-neutral and non-discriminatory fashion, implement and ensure compliance with eligibility requirements for citizen initiative petitions are subject, at most, to only rational-basis review under the First Amendment. See *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 192 (1999) (citing *Taxpayers United* favorably for its holding). *Schmitt*, 933 F.3d at 645.

Finally, the *Schmitt* concurrence surveyed the legal landscape among the circuits, finding that

> *Taxpayers United*…align[s] with decisions of a majority of other circuits that have addressed statutes relating to the regulation of election mechanics. These circuits have similarly concluded that non-discriminatory referendum regulations are, at most, subject to rational-

> basis review. *See Molinari v. Bloomberg*, 564 F.3d 587 (2d Cir. 2009)
> (holding referendum statutes are only subject to rational-basis review);
> *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006)
> (en banc) (same); *Marijuana Policy Project v. United States*, 304 F.3d
> 82 (D.C. Cir. 2002) (same); *Dobrovolny v. Moore*, 126 F.3d 1111 (8th
> Cir. 1997) (same). But see *Angle v. Miller*, 673 F.3d 1122 (9th Cir.
> 2012) (holding referendum regulations imposing subject-matter
> restrictions are subject to heightened scrutiny); *Wirzburger v. Galvin*,
> 412 F.3d 271 (1st Cir. 2005) (same).

*Id*. at 646. Applying rational basis review to the facts of *Taxpayers United*, the Sixth Circuit determined that statutory requirements (1) to use a form petition sheet, (2) to disqualify signatures because they were on forms that did not comply with the statute, (3) excluding signatures because they were dated incorrectly, (4) excluding signatures of persons who signed twice, and (5) the Board's method of verifying signatures, were not irrational and therefore passed constitutional muster. The court concluded by reminding that

> "[m]oreover, even if the method that Michigan has chosen to canvass
> its initiative petitions is not the best method, as stated above, under the
> rational relationship analysis, a state is not required to use the best
> method for examining its petitions. A state is only constitutionally
> required to use a method that is rationally related to the legitimate
> interest of ensuring that an election is fair and honest. The system used
> by Michigan does just that." *Id*. at 299.

Thus, for purposes of the present dispute, it is not clear that the *Anderson*/*Burdick* framework applies. The provision at issue is not a "ballot access law" in the traditional sense of using different eligibility criteria for candidates from the non-major political parties, nor does it regulate political speech. The provision

is part of Michigan's Zoning Enabling Act, which was enacted to codify the law regarding local units of government regulating the development and use of land and to provide for the adoption of zoning ordinances. There is no right under the Michigan or federal Constitution to a referendum on a zoning ordinance. Considering Sixth Circuit authority on the question, given the circumstances of this case there is no violation of Plaintiff's rights under the First Amendment. Because a rational basis test is the correct standard under which to review the statute at issue, and the State has strong interests in ensuring its elections are run fairly and that ordinances are not submitted to a vote without sufficient support, Plaintiff is unlikely to succeed on the merits.

### B. If *Anderson/Burdick* applies, rational basis is still the appropriate standard of review

Even assuming that the *Anderson/Burdick* framework has some application to this case, which Defendants do not concede because those cases and its progeny are distinguishable, a rational basis test remains the proper scope of review. As applied in the Sixth Circuit, under the *Anderson/Burdick* framework a court "weigh[s] the character and magnitude of the burden the State's rule imposes on [Plaintiff's constitutional rights] against the interest the State contends justify that burden, and consider[s] the extent to which the State's concerns make the burden necessary." *Schmitt*, 933 F.3d at 638. The Sixth Circuit's *Anderson/Burdick* analysis follows three steps:

> "[t]he first, most critical step, is to consider the severity of the restriction. Laws imposing severe burdens on plaintiffs' rights are subject to strict scrutiny, but lesser burdens … trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. Regulations that fall in the middle warrant a flexible analysis that weighs the state's interests and chosen means of pursuing them against the burden of the restriction. At the second step, we identify and evaluate the state's interests in and justifications for the regulation. The third step requires that we assess the legitimacy and strength of those interests and determine whether the restrictions are constitutional. (citations and internal quotations omitted).

*Id*. at 639.

In the present dispute, Plaintiff asserts that the prerequisites of MCL 125.3402 are "extraordinarily difficult" to meet and that the 30 day-time limit is "a severe infringement on their right to speak." (Plaintiff's Motion, ECF No. 22, Page ID. 199-200). While not conceding that the *Anderson/Burdick* framework applies, even assuming that it does the applicable standard of review remains rational basis because any alleged "burden" imposed by the statutory prerequisites is not "severe." "The hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Libertarian Party of Ky v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016). Here, Plaintiff's inability to have the zoning ordinance placed on the ballot is not the result of unreasonable statutory prerequisites, and the Sixth Circuit has regularly upheld ballot access regulations. See *Thompson v. Dewine*, 959 F.3d 804, 808-09 (6th Cir. 2020) ("*Schmitt*, 933 F.3d at 641-42 (upholding Ohio's provision of only mandamus review for challenges to a Board of Elections' ruling over compliance with ballot

initiative requirements against a First Amendment challenge); *Ohio Ballot Bd.*, 885 F.3d at 448 (upholding Ohio's single-subject requirement for ballot initiatives against a First Amendment challenge); *Taxpayers United*, 994 F.2d at 296-97 (upholding Michigan's number of signatures requirement for ballot initiatives against a First Amendment challenge))."

The fact remains that Plaintiff submitted 7,895 signatures, more than double the number required by statute. Plaintiff now seeks an injunction as an avenue to have its zoning ordinance placed on the ballot because it was unable to meet the requirements to do so pursuant to MCL 125.3402. Plaintiff's allegation that the statute imposes "severe" burdens does not invalidate the State of Michigan's chosen means of ensuring its elections are run fairly and honestly and ensuring that ordinances are not submitted to voters without sufficient support. As held by the Supreme Court, the State has a strong interest in such assurances. *Anderson*, 460 U.S. at 788, 788 n. 9. Rather than being the result of a "severe" statutory burden, Plaintiff's filings in this lawsuit supply the reasons it was unable to gather enough valid signatures in the allotted timeframe: the weather, geography, delays at the printer, and being charged an excessive amount per signature by the signature-gatherer firm it selected. Plaintiff's business acumen is not before the court. The statutory prerequisites of MCL 125.3402 are, however, and where the requirements are no more than reasonable, nondiscriminatory, content-neutral regulations that

serve the State's strong interests without imposing a severe burden on plaintiff's constitutional rights, rational basis review applies pursuant to the *Anderson/Burdick* framework. Because rational basis is the appropriate standard of review and Plaintiff has not identified anything irrational or arbitrary about MCL 125.3402, Plaintiff is unlikely to succeed on the merits.

### C.   There has been no violation of procedural due process

Plaintiff's Renewed Motion asserts that its procedural due process rights have been violated because the statute "deprives Plaintiff of its right to ballot access without providing an opportunity to be heard," while also providing that the Fourteenth Amendment prevents the deprivation of life, liberty, or property without due process of law. (Plaintiff's Motion, ECF No. 22, Page ID. 206). Plaintiff has not asserted a property right in this case. Further, there is no constitutional right to ballot access under these circumstances, making it unclear what Plaintiff is premising its procedural due process claim on. See *John Doe No. 1 v. Reed*, 561 U.S. 186, 212 (2010) (Sotomayor, J., concurring), *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291,295 (6th Cir. 1993), *Settles v. City of Detroit Clerk*, 169 Mich. App. 797, 802; 427 N.W.2d 188 (Mich. Ct. App. 1988).

Plaintiff then alleges that its procedural due process rights have been violated because it was "actively misled" by Township officials. (Plaintiff Motion, ECF No. 22, Page ID. 209). This is simply untrue. Plaintiff's Exhibit demonstrates that

Plaintiff was aware of the deadline and had reviewed the applicable law. (Plaintiff Motion, ECF No. 22-5, Page ID. 260-262). Plaintiff's Exhibit also shows that no affirmative representation was made by the Township. At no point did the Township refuse to accept Plaintiff's signatures beyond the time that Plaintiff itself requested to turn in the petition signatures. Contrary to Plaintiff's assertion and clearly demonstrated by Plaintiff's Exhibit, Clerk Roe at no point "took an affirmative position" or "actively misled Plaintiff." (Plaintiff Motion, ECF No. 22, Page ID. 209).

Where Plaintiff has not premised its procedural due process claim on the deprivation of a constitutional right and was not misled by Clerk Roe, Plaintiff is unlikely to succeed on the merits of its procedural due process claim.

### D. There has been no violation of substantive due process

Plaintiff's Renewed Motion also references the Fourteenth Amendment's substantive due process component, noting that the Supreme Court has interpreted this to "protect[] against arbitrary and capricious actions of government officials in application of the law." As Plaintiff points out, to make "a successful substantive due process claim, one must show that a government official has engaged in behavior that shocks the conscience." (Plaintiff Motion, ECF No. 22, Page ID. 210).

Contrary to Plaintiff's assertion, Defendant Roe did not act arbitrarily or capriciously by allegedly "misleading Plaintiff." That Plaintiff was "misled" is

simply the interpretation of Plaintiff's attorney, when in fact the Township did not refuse to accept signatures beyond the extended deadline that applied by operation of the Michigan election law. The Michigan Zoning Enabling Act is not vague on this point as it clearly states that "[a] petition and election under this section are subject to the Michigan election law, 1954 PA 116, MCL 168.1 to 168.992." The fact that Plaintiff turned in 7,895 signatures and only 2,754 were valid has nothing to do with the failure of Clerk Roe or Township officials carrying out their duties as elected officials. Because no conduct of the Township was egregious, arbitrary or capricious, and the Township's responses to Plaintiff's email about turning in its petition does not "shock the conscience," Plaintiff is unlikely to succeed on the merits of its substantive due process claim. See *EJS Properties, LLC v. Toledo*, 698 F.3d 845, 862 (6th Cir. 2012), where the court found that

> the behavior against EJS in this case does not 'shock the conscience.' Perhaps it is unfortunate that the solicitation of a bribe by a public official does not shock our collective conscience…[b]ut, although we condemn McCloskey for his misconduct, we simply cannot say that his behavior is so shocking as to shake the foundation of this country. While appellees' alleged conduct was reprehensible, it is not that type of conduct which so 'shocks the conscience' that it violates appellant's due substantive due process rights.

## II.    Irreparable Injury

Plaintiff asserts that should enforcement of MCL 125.3402 not be enjoined, Plaintiff "and those similarly situated will suffer irreparable injury, as they will be effectively barred from challenging zoning decisions in their local municipalities."

(Plaintiff Motion, ECF No. 22, Page ID. 212). This is simply not true. As referenced in Defendants' Motion to Dismiss, there have been other instances where courts have issued judicial opinions demonstrating that other citizens groups successfully had ordinance referendums placed on the ballot. (Defendant Motion to Dismiss, ECF No. 18, Page ID. 142). Further, even if irreparable harm is shown in the sense that a referendum will not be placed on the next election's ballot, Plaintiff has not demonstrated a likelihood of success on the merits of their claim. As the Sixth Circuit has held, "a finding that there is simply no likelihood of success on the merits is usually fatal" to a request for injunctive relief. *Gonzales v. Nat'l Bd. Of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). Further, the other factors relevant to an injunction weigh against Plaintiff's and in favor of Defendants.

### III. The requested injunction would cause substantial harm to others

An injunction would irreparably harm the state. The Supreme Court has recognized that "anytime a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (C.J. Roberts in chambers) (quoting *New Motor Vehicle Bd. Of Cal. V. Orrin W. Fox Co.,* 434 U.S. 1345, 1351 (1977). The statute challenged here was duly enacted by the Michigan legislature.

### IV. An injunction is not in the public interest

The injunctive relief sought here is not in the public interest. The people of Michigan have a strong interest in having the State's laws effectuated. Further, there is a strong interest present in ensuring that referendum elections are run fairly and honestly and ensuring that proposals are not submitted unless they have sufficient support. *Anderson*, 460 U.S. at 788, 788 n. 9.

## CONCLUSION & RELIEF REQUESTED

Because Plaintiff has not met the factors that justify the extraordinary relief requested, which is enjoining enforcement of a duly enacted Michigan statute, for the reasons set forth above Defendants respectfully request that this Honorable Court deny Plaintiff's Renewed Motion for Preliminary Injunction and grant any other relief that this Court shall deem just and proper.

Respectfully submitted,

KERR, RUSSELL AND WEBER, PLC
By: */s/ James E. Tamm*
James E. Tamm (P38154)
Attorneys for Defendants Charter Township
of Ypsilanti and Heather Jarrell Roe
500 Woodward Avenue, Suite 2500
Detroit, MI 48226-3427
T: 313-961-0200; F: (313) 961-0388
Dated: April 28, 2022        jtamm@kerr-russell.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2022, I filed the foregoing document with the Clerk of the Court using the Court's electronic filing system which will electronically serve all parties of record.

/s/ *James E. Tamm*
