UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YPSILANTI TOWNSHIP CITIZENS FOR
RESPONSIBLE GOVERNMENT, ballot
question committee,

No. 5:22-cv-10614

      Plaintiff,

HON. SEAN F. COX

MAG. CURTIS IVY, JR.

v

JOCELYN BENSON, in her official capacity
as Secretary of State of Michigan, CHARTER
TOWNSHIP OF YPSILANTI, and
HEATHER JARRELL ROE, in her official
capacity as Ypsilanti Township Clerk,

**DEFENDANT SECRETARY
OF STATE JOCELYN
BENSON'S RESPONSE TO
PLAINTIFF'S RENEWED
MOTION FOR
PRELIMINARY
INJUNCTION**

      Defendants.

Hannah Stocker (P82847)
Attorney for Plaintiff
23332 Farmington Road, #98
Farmington, Michigan 48336
248.252.6405
hannah@stockerlawpllc.com

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant Benson
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

_____/

**DEFENDANT SECRETARY OF STATE JOCELYN BENSON'S
RESPONSE TO PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY
INJUNCTION**

i

# TABLE OF CONTENTS

Page

Table of Contents ................................................................................. ii

Index of Authorities ........................................................................... iv

Concise Statement of Issues Presented .............................................. vii

Statement of Facts ................................................................................1

    Requirements of Michigan's Zoning Enabling Act .......................................1

    Plaintiff's Petition Under the ZEA .................................................2

    Ballot Printing and Distribution Deadlines ....................................4

    Procedural History .........................................................................5

Argument...............................................................................................6

I.    Plaintiff's motion for preliminary injunction should be denied where it has not shown a strong likelihood of success on the merits of the claims or that the requested injunction would provide Plaintiff actual relief from its claimed injuries........................................................................6

    A.    Plaintiff has not shown a strong likelihood of success on the merits of its First and Fourteenth Amendment claims. ........................7

        1.    Plaintiff has no likelihood of success against the Secretary of State because the Secretary has nothing to do with enforcing the Michigan Zoning Enabling Act. ..............8

        2.    Plaintiff has not shown a strong likelihood of success because it has failed to establish the existence of any First Amendment interest in a state process for the approval of zoning ordinances. .................................10

        3.    Plaintiff has not shown a strong likelihood of success because the Michigan Zoning Enabling Act does not impose a severe burden on Plaintiff's First Amendment rights..........................................................................14

B.    Plaintiff has failed to specify the injunctive relief they seek in order to avoid its claimed irreparable harm, and the requested injunction would require this Court to rewrite the statute. .................19

C.    The balance of harms weighs in favor of the Defendants, and an injunction would be contrary to the public interest.............................20

Conclusion and Relief Requested ...........................................................................21

# INDEX OF AUTHORITIES

Page

**Cases**

*American Party of Texas v. White*, 415 U.S. 767 (1974).........................................16

*Anderson v. Celebrezze,* 460 U.S. 780 (1983).................................................. 13, 14

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012) ...........................................7

*Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182
  (1999)..................................................................................................................10

*Burdick v. Takushi*, 504 U.S. 428 (1992)........................................................ 14, 15

*Citizens for Tax Reform v. Deters*, 518 F.3d 375 (6th Cir. 2008) ...........................11

*Citizens Protecting Michigan's Constitution v. Sec'y of State*, 921 N.W.2d
  247 (2018)..........................................................................................................16

*Comm. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot
  Bd.,* 885 F.3d 443 (6th Cir. 2018) ................................................................. 12, 14

*Corning Glass Works v. Lady Cornella, Inc.*, 305 F. Supp. 1229 (E.D. Mich.
  1969) .....................................................................................................................6

*Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008)..................................15

*Graveline v. Benson*, 992 F.3d 524 (6th Cir. 2021)..................................................11

*Green Party of Arkansas v. Martin*, 649 F.3d 675 (8th Cir. 2011) ........................18

*Green Party of Tenn. v. Hargett (Hargett I)*, 767 F.3d 533 (6th Cir. 2014) ...........14

*Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644 (6th Cir. 2007) ......................7

*Huron Valley Pub. Co. v. Booth Newspapers, Inc.*, 336 F. Supp. 659 (E.D.
  Mich. 1972) ...........................................................................................................7

*Jenness v. Forton*, 403 U.S. 431 (1971) ..................................................................16

*John Doe No. 1 v. Reed*, 561 U.S. 186 (2010)..........................................................10

*Libertarian Party of Ky v. Grimes*, 835 F.3d 570 (6th Cir. 2016)...........................17

*Maryland v. King*, 133 S. Ct. 1 (2012) ....................................................21

*Meyer v. Grant*, 486 U.S. 414 (1988) ....................................................11

*Munro v. Socialist Workers Party,* 479 U.S. 189 (1986)........................................16

*NEOCH v. Blackwell,* 467 F.3d 999 (6th Cir. 2006) ..................................................8

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co*., 434 U.S. 1345 (1977)..........21

*Nken v. Holder,* 556 U.S. 418 (2009) ....................................................20

*Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329 (6th Cir. 2016) .........14

*Ohio Republican Party v. Brunner,* 543 F.3d 357 (6th Cir. 2008).......................7, 8

*Schmitt v. LaRose*, 933 F.3d 628 (6th Cir. 2019)....................................................14

*Storer v. Brown*, 415 U.S. 724 (1974) ....................................................15

*Summit County Democratic Cent. & Exec Comm. v. Blackwell,* 388 F.3d 547
   (6th Cir. 2004) ..........................................................................................8

*Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291 (6th Cir.
   1993)...................................................................................................... 10, 11

*Thompson v. Dewine*, 976 F.3d 610 (2020)........................................ 16, 21

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997)..............................16

*Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2nd
   Cir. 1995)..................................................................................................7

**Statutes**

Mich. Comp. Laws § 125.3401(7) ............................................................1

Mich. Comp. Laws § 125.3402................................................................*passim*

Mich. Comp. Laws § 125.3402(1)............................................................1

Mich. Comp. Laws § 125.3402(2) ...................................................... 1, 8, 9

Mich. Comp. Laws § 125.3402(3) ............................................................2

Mich. Comp. Laws § 125.3402(4) ...................................................................2

Mich. Comp. Laws § 125.3403 ....................................................................19

Mich. Comp. Laws § 168.471 .......................................................................5

Mich. Comp. Laws § 168.646a ...................................................................4, 5

Mich. Comp. Laws § 168.714 ....................................................................4, 5

Mich. Comp. Laws § 168.759a ...................................................................4, 5

Mich. Comp. Laws § 125.3402(2) ..................................................................5

Mich. Comp. Laws § 168.21 ..........................................................................9

Mich. Comp. Laws § 168.471 .......................................................................4

**Constitutional Provisions**

Mich. Const. 1963, art 2, § 4.................................................................. 4, 5, 16

U.S. Const. art. I, § 4..................................................................................15

## CONCISE STATEMENT OF ISSUES PRESENTED

1.      Whether Plaintiff is not entitled to a preliminary injunction against the Secretary of State where she has no role in the petition process under the Michigan Zoning Enabling Act?

2.      Whether the Michigan Zoning Enabling Act does not impose a severe burden on the Plaintiff's First Amendment rights?

3.      Whether the Plaintiff has failed to demonstrate the existence of a First Amendment interest in Michigan's statutory process for zoning ordinances approved by popular vote before they become effective?

4.      Whether the preliminary injunction should be denied where the proposed injunction would require this Court effectively rewrite the statute?

## STATEMENT OF FACTS

**Requirements of Michigan's Zoning Enabling Act**

Section 401 of Michigan Zoning Enabling Act (ZEA) provides that, within 15 days following the adoption of a zoning ordinance by the local legislative body, a notice of ordinance adoption must be published in a newspaper of general circulation in the local unit of government.  Mich. Comp. Laws § 125.3401(7).  Then, within 7 days after the publication of the notice, a registered elector residing in the zoning jurisdiction may file a notice of intent to file a petition requesting the submission of the ordinance to the electorate for  approval.  Mich. Comp. Laws § 125.3402(1).  Once a notice of intent to file a petition is filed, the petitioner has 30 days from the publication of the ordinance to file a petition signed by a number of registered electors residing in the zoning district that is not less than 15% of the total vote cast in the zoning jurisdiction for all candidates for governor in the last preceding gubernatorial election.  Mich. Comp. Laws § 125.3402(2).  That petition must be filed with the clerk of the legislative body.  Mich. Comp. Laws § 125.3402(2).

Once the notice of intent is filed under Mich. Comp. Laws § 125.3402(1), the ordinance does not take effect until the one of the following events occurs:

1. A petition is not filed within the 30 days provided by Mich. Comp. Laws § 125.3402(2); or

2. The clerk determines that a petition filed under Mich. Comp. Laws § 125.3402(2) is inadequate; or

1

> 3. The clerk determines that a filed petition is adequate and the ordinance is approved by a majority of electors residing in the zoning district at the next regular election or at a special election called for the purpose.

Mich. Comp. Laws § 125.3402(3).  The petitions, and any election held as a result of a petition, are subject to the Michigan Election Law, Mich. Comp. Laws § 168.1, *et seq.*  Mich. Comp. Laws § 125.3402(4).

The Amended Complaint in this case does not challenge any part of the Michigan Election Law.  (ECF No. 20, PageID.155-173.)  The Michigan Secretary of State has no role or function in the petition process set forth in the ZEA.  Mich. Comp. Laws § 125.3402.

**Plaintiff's Petition Under the ZEA**

Plaintiff Ypsilanti Township Citizens for Responsible Government (YTCRG) alleges that it is a ballot question committee seeking to refer an Ypsilanti Township zoning ordinance to the electors of Ypsilanti Township.  (ECF No. 20, PageID.159, ¶12.)  YTCRG seeks to refer the Revised Zoning Ordinance passed by Ypsilanti Township Board of Trustees on February 15, 2022.  (ECF No. 20, PageID.162, ¶31.)  Ypsilanti Township published notice of the ordinance on February 24, 2022.  (ECF No. 20, PageID.162, ¶32.)  Latrice T. Moore filed a notice of intent to file a petition on March 1, 2022, and Plaintiff alleges that Ms. Moore coordinated with it.  (ECF No. 20, PageID.162, ¶33.)

Plaintiff states that 23,856 people in Ypsilanti Township voted in 2018, and so they calculated that the petition needed 3,578 signatures. (ECF No. 20, PageID.163, ¶37-38.) And, since the ordinance was published on February 24, 2022, the 30-day period to file the petition ended on March 26, 2022. (ECF No. 20, PageID.163, ¶38.) On March 26, 2022, Plaintiff turned in petitions containing 7,895 signatures. (ECF No. 20, PageID.164, ¶48.) Plaintiffs allege that they spent approximately $100,000 on their petition effort. (ECF No. 20, PageID.165, ¶49.)

On April 13, 2022, Plaintiff received correspondence from Defendant Ypsilanti Township Clerk Jarrell Roe, informing them that over 5,000 signatures on their petition had been determined to be invalid, and that only 2,754 signatures were valid. (ECF No. 20, PageID.165, ¶50-51.) Plaintiff's petition, therefore, did not have a sufficient number of signatures, and the ordinance would not be put on the ballot for approval by the electors. (ECF No. 20, PageID.165, ¶51, 54.)

Plaintiff further alleges that, on March 23, 2022, it contacted the township clerk to coordinate delivery of the petition signatures on March 26, 2022—which was a Saturday. (ECF No. 20, PageID.164, ¶45.) Plaintiff alleges that the clerk stated on March 25, 2022 that they would not accept any petitions after 5:15 p.m. that day. (ECF No. 20, PageID.164, ¶46.) In this lawsuit, Plaintiff cites to Mich. Comp. Laws §168.13, which provides that, "anything required by this act to be done by a day certain, except the final day for applying for an absentee ballot, if

that day falls on a Saturday, Sunday or legal holiday, may be done within the same time limits on the next secular day." *See, e.g.* ECF No. 20, PageID.172, ¶94.) Plaintiff alleges that the clerk misled them into believing that March 26, 2022 was the deadline, but since that was a Saturday they should have been allowed to file on that Monday. (ECF No. 20, PageID.172, ¶92.) Plaintiff alleges that they might have obtained sufficient signatures if they had been allowed the additional two days. (ECF No. 20, PageID.172, ¶93.) This necessarily means that Plaintiff believed it could have obtained at least 824 valid signatures in two days.

**Ballot Printing and Distribution Deadlines**

Petitions to place county and local questions on the August 2022 primary ballot must have been filed with the clerks by April 26, 2022. Mich. Comp. Laws 168.471. Ballot wording of local proposals to be presented at the August 2022 primary election must be certified by May 10 and forwarded to county clerks within two days. Mich. Comp. Laws § 168.646a. Primary ballots must be delivered to local clerks by June 18, 2022. Mich. Comp. Laws § 168.714. Clerks must electronically transmit or mail absent voter ballots to uniformed services or overseas absent voters by June 18, 2022. Mich. Comp. Laws § 168.759a. Absent voter ballots for the primary must be available for issuance to voters by June 23, 2022. Mich. Const. 1963, Art 2, § 4.

Petitions to place county and local questions on the November 2022 ballot must be filed with the clerks by August 2, 2022. Mich. Comp. Laws § 168.471. Ballot wording of local proposals to be presented at the November 2022 election must be certified by August 16 and forwarded to county clerks within two days. Mich. Comp. Laws § 168.646a. General election ballots must be delivered to local clerks by September 24, 2022. Mich. Comp. Laws § 168.714. Clerks must electronically transmit or mail absent voter ballots to uniformed services or overseas absent voters by September 24, 2022. Mich. Comp. Laws § 168.759a. Absent voter ballots for the primary must be available for issuance to voters by September 29, 2022. Mich. Const. 1963, Art 2, § 4.

**Procedural History**

Plaintiff filed its original complaint on March 22, 2022. (ECF No. 1, PageID.1.) At that time, Plaintiff alleged that they were "unlikely" to obtain more than 3,000 signatures by the deadline. (ECF No. 1, PageID.12, ¶60.) The next day, they filed a motion for preliminary injunction seeking to enjoin the enforcement of Mich. Comp. Laws §125.3402(2). The Court held an expedited status conference on March 30, 2020, during which there was discussion that Plaintiff had filed petitions with almost 8,000 signatures and that the township was in the process of canvassing them. The Court ordered the parties to return for another conference on April 11, 2022, when it was expected that the canvass would

be completed.  During the 2nd status conference, Plaintiff's counsel stated that they were unsure if it still intended to pursue a preliminary injunction.  (ECF No. 19, PageID.153.)  On April 11, 2022, Defendant Ypsilanti Township filed a motion to dismiss.  The Court ordered that if Plaintiff wished to seek a preliminary injunction, that it would file a new motion by April 18, 2022 that addressed all relevant facts occurring since March 23, 2022, specify the injunctive relief sought, and attach a proposed preliminary injunction order.  (ECF No. 19, PageID.153-154.)  Defendants' response briefs would be due on April 28, 2022, and any reply briefs would be filed no later than May 2, 2022.

## ARGUMENT

**I.**   **Plaintiff's motion for preliminary injunction should be denied where it has not shown a strong likelihood of success on the merits of the claims or that the requested injunction would provide Plaintiff actual relief from its claimed injuries.**

Preliminary injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001).  It is well settled that a preliminary injunction will be granted only upon a clear showing of substantial likelihood of success on the merits at trial and irreparable injury if the defendant is not restrained.  *Corning Glass Works v. Lady Cornella, Inc.*, 305 F. Supp. 1229 (E.D. Mich. 1969).  A movant must meet an even higher standard for relief where—as here—the injunction will alter rather than maintain the status quo or

where the injunction will provide the movant with substantially all the relief sought during the trial on the merits. *See generally Huron Valley Pub. Co. v. Booth Newspapers, Inc.*, 336 F. Supp. 659 (E.D. Mich. 1972); *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 34 (2nd Cir. 1995).

Courts consider four factors in determining whether to grant a temporary or preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012). In First Amendment cases, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (internal citations and quotations omitted). This is because the public's interest and any potential harm to the parties or others "largely depend on the constitutionality of the [state action]." *Id.*

### A. Plaintiff has not shown a strong likelihood of success on the merits of its First and Fourteenth Amendment claims.

The Sixth Circuit has long held that in determining whether to grant an injunction, the movant must show a "strong likelihood of success on the merits." *See e.g. Ohio Republican Party v. Brunner,* 543 F.3d 357, 361 (6th Cir. 2008);

*NEOCH v. Blackwell,* 467 F.3d 999, 1009 (6th Cir. 2006); *Summit County Democratic Cent. & Exec Comm. v. Blackwell,* 388 F.3d 547, 550 (6th Cir. 2004).

Plaintiff brings two counts in its amended complaint:  one alleging that the 15% signature requirement and the 30-day time period provided by Mich. Comp. Laws § 125.3402(2) operate in conjunction to violate their First and Fourteenth Amendment rights to speech and political association, and one against the Township Defendants for substantive due process based upon the controversy over the calculation of the date for the deadline to file the petition.  (ECF No. 20, PageID.165-172.)  Because Count II states that it is brought only against the Township Defendants, the Secretary of State will not address that claim in this brief.

### 1. Plaintiff has no likelihood of success against the Secretary of State because the Secretary has nothing to do with enforcing the Michigan Zoning Enabling Act.

In order to obtain a preliminary injunction against the Secretary of State, YTCRG must show a strong likelihood that it will prevail at trial against the Secretary.  See e.g. *Ohio Republican Party,* 543 F.3d at 361.  In this case, that means that YTCRG must show a strong likelihood that it can establish that the Secretary of State violated its First and Fourteenth Amendment rights through the enforcement of Mich. Comp. Laws § 125.3402(2).  YTCRG cannot hope to prevail

on that claim against the Secretary of State, however, because the Secretary has nothing to do with enforcing that statute.

Mich. Comp. Laws § 125.3402(2) imposes no duty or obligation upon the Secretary of State, and no part of Mich. Comp. Laws § 125.3402 even mentions the Secretary of State.  Instead, Mich. Comp. Laws § 125.3402 refers only to "the clerk of the legislative body."  Mich. Comp. Laws § 125.3402(2-3).  Plaintiff YTCRG, however, admits in its amended complaint that Defendant Roe is the Clerk of the Township of Ypsilanti.  (R. 20, PageID.159, ¶15.)  Simply put, the Secretary of State has nothing to do with zoning ordinances, the Plaintiff's petition, or any alleged violation of its constitutional rights.

The only allegation against the Secretary of State in the Amended Complaint states that she serves as Michigan's chief election officer.  (ECF No. 20, PageID.159, ¶14.)  This is an accurate statement of the Secretary's supervisory role over local election officials in the performance of their duties under the Michigan Election Law.  Mich. Comp. Laws §168.21.  But Plaintiff YTCRG is not challenging any part of the election law or the Secretary's direction on how the election law is to be enforced.  YTCRG is instead challenging the ZEA, and has made no allegations of how the Secretary of State did anything with regard to that act that violated its constitutional rights.  Plaintiff has failed to state a claim against the Secretary of State, and it has consequently failed to demonstrate a strong

9

likelihood of success on the merits of any claim against the Secretary of State.

Plaintiff's motion for preliminary injunction should be denied.[1]

> **2.** **Plaintiff has not shown a strong likelihood of success because it has failed to establish the existence of any First Amendment interest in a state process for the approval of zoning ordinances.**

As a threshold matter, Plaintiff YTCRG has no fundamental right to initiate or refer legislation, *see, e.g., John Doe No. 1 v. Reed, 561 U.S. 186, 212 (2010) (Sotomayor, J., concurring) (*"[W]e must be mindful of the character of initiatives and referenda. These mechanisms of direct democracy are not compelled by the Federal Constitution."); see also *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993) ("[T]he right to an initiative is not guaranteed by the federal Constitution").  Each state, acting in its sovereign capacity, has the power to decide whether and how to permit legislation by popular action.  *Reed*, 561 U.S. at 212 (Sotomayor, J., concurring).  "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally.*"  Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 191 (1999).

---

[1] While Count II states that it is brought only against the Township Defendants, it bears brief observation that, even if Plaintiff intended to include the Secretary in Count II, the Secretary's argument here would apply equally to Count II because there are no allegations in the Amended Complaint that the Secretary of State had anything to do with this petition or the calculation of the deadline.

However, once having adopted an initiative process, a state may violate the federal Constitution if it "unduly restricts the First Amendment rights of its citizens who support the initiative." *Taxpayers United*, 994 F.2d at 295 (citing *Meyer v. Grant*, 486 U.S. 414 (1988)). Accordingly, "although the Constitution does not require a state to create an initiative procedure, if it creates such a procedure, the state cannot place restrictions on its use that violate the federal Constitution." *Id*. Nonetheless, the Supreme Court has emphasized that, "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process." *Buckley*, 525 U.S. at 191.

Here, however, Plaintiff has failed to identify the specific First Amendment interests involved in their zoning ordinance referendum, or to fully explain how the ZEA imposes restrictions that violate the federal Constitution. Notably, Plaintiff cites to no cases expressing the scope of First Amendment protections for initiative processes. Instead, YTCRG's brief refers to cases involving ballot access *for independent candidates*, like *Graveline v. Benson*, 992 F.3d 524, 534 (6th Cir. 2021), or that address unrelated aspects of petition circulation, such as bans on paid circulators, *Meyer v. Grant,* 486 U.S. 414, 421-22 (1988), or how circulators are to be paid, *Citizens for Tax Reform v. Deters*, 518 F.3d 375 (6th Cir. 2008). Pointedly, Mich. Comp. Laws § 125.3402 is silent as to whether or how circulators may be paid. None of these cases addressed the circulation of zoning ordinance

11

petitions or establishes a threshold for state initiative or referenda petitions.

Plaintiff has offered no legal authority setting forth federal constitutional

requirements for such state-granted petition processes.

In fact, federal courts have noted the "considerable leeway" states have to

construct their initiative processes.  *See e.g. Comm. to Impose Term Limits on the*

*Ohio Supreme Court v. Ohio Ballot Bd.,* 885 F.3d 443, 446 (2018).  But most

tellingly, the Sixth Circuit has already *rejected* claims very similar to the ones

advanced by YTCRG here.  In *Taxpayers United,* the Sixth Circuit reviewed a

Michigan statute requiring that each initiative petition have a certain number of

valid signatures from registered voters before the initiative could appear on the

ballot.  994 F.2d at 293. The Court upheld the statute, and in so doing made the

following apt analysis:

> We also conclude that the plaintiffs' rights to free speech and political
> association have not been impinged. Because the right to initiate
> legislation is a wholly state-created right, we believe that the state
> may constitutionally place nondiscriminatory, content-neutral
> limitations on the plaintiffs' ability to initiate legislation. Unlike the
> challenged provisions in *Meyer*, Michigan's initiative system does not
> restrict the means that the plaintiffs can use to advocate their proposal.
> Further, the Michigan procedure does not limit speech on the basis of
> content.
>
> Moreover, as the Supreme Court has recognized in other contexts, a
> state has a strong interest in ensuring that its elections are run fairly
> and honestly.  It also has a strong interest in ensuring that proposals
> are not submitted for enactment into law unless they have sufficient
> support.  The Michigan procedure does nothing more than impose
> nondiscriminatory, content-neutral restrictions on the plaintiffs' ability

> to use the initiative procedure that serve Michigan's interest in
> maintaining the integrity of its initiative process. Our result would be
> different if, as in *Meyer*, the plaintiffs were challenging a restriction
> on their ability to communicate with other voters about proposed
> legislation, or if they alleged they were being treated differently than
> other groups seeking to initiate legislation. But, in the instant case, we
> believe that it is constitutionally permissible for Michigan to condition
> the use of its initiative procedure on compliance with content-neutral,
> nondiscriminatory regulations that are, as here, reasonably related to
> the purpose of administering an honest and fair initiative procedure.
> Accordingly, we conclude that the plaintiffs' First Amendment claim
> is without merit.

*Id.* at 296-297.  Here, just as in *Taxpayers United*, the Michigan procedures are

non-discriminatory and content-neutral.  The ZEA petition process does not restrict

how YTCRG could communicate with voters about their proposal or treat them

differently than other zoning ordinance petitions.  Instead, it conditioned the

ordinance referenda process on ensuring that the petition has sufficient support in

the zoning jurisdiction, which is exactly the kind of restriction previously upheld

by both the Sixth Circuit and the U.S. Supreme Court.  *Id.* (citing *Anderson v.*

*Celebrezze,* 460 U.S. 780, 788 n.9 (1983).)  It is also significant that these cases

concerned statewide initiative processes, which generally involve larger signature

requirements and more expansive speech or association interests than the local

zoning ordinance matter at issue here.  While ordinance petitions are not entitled to

less protection, it is difficult to imagine that zoning ordinance petitions would be

entitled to *greater* protection than the statewide petition in *Taxpayers United*.

13

Plaintiff's arguments run contrary to standing precedent of this Circuit and are without merit.  Plaintiff has not demonstrated a strong likelihood of success and its motion for preliminary injunction should be denied.

### 3. Plaintiff has not shown a strong likelihood of success because the Michigan Zoning Enabling Act does not impose a severe burden on Plaintiff's First Amendment rights.

Even if Plaintiff has a protected First Amendment right at stake, it has not shown that the ZEA imposes a severe burden on that right.

To analyze state initiative process requirements, the Sixth Circuit has applied the *Anderson-Burdick* analysis from *Anderson v. Celebrezze,* 460 U.S. 780, 786-87 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992).  *Comm. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.,* 885 F.3d 443, 448 (6th Cir. 2018); *Schmitt v. LaRose*, 933 F.3d 628, 639 (6th Cir. 2019).  Under the *Anderson-Burdick* framework, if a state imposes "severe restrictions" on a plaintiff's constitutional right, its regulations survive only if "narrowly drawn to advance a state interest of compelling importance."  *Burdick*, 504 U.S. at 434.  But "minimally burdensome and nondiscriminatory" regulations are subject to a "less-searching examination closer to rational basis" and "'the State's important regulatory interests are generally sufficient to justify the restrictions.'"  *Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329, 335 (6th Cir. 2016) (citing *Green Party of Tenn. v. Hargett (Hargett I)*, 767 F.3d 533, 546 (6th Cir. 2014), and

14

quoting *Burdick*, 504 U.S. at 434).  Regulations falling somewhere in between—

"i.e., regulations that impose a more-than-minimal but less-than-severe burden—

require a 'flexible' analysis, 'weighing the burden on the plaintiffs against the

state's asserted interest and chosen means of pursuing it.' "  *Ohio Democratic

Party*, 834 F.3d at 627 (quoting *Hargett I*, 767 F.3d at 546).

But here, Plaintiff YTCRG has not articulated a "severe" burden on its

rights, and what it offers instead are grievances that the process is not as easy for it

as Plaintiff seem to think it should be.  The First and Fourteenth Amendments,

however, do not require initiative or referenda to be easy.  The "right to vote in any

manner . . . [is not] absolute," *Burdick*, 504 U.S. at 433 (citation omitted); the

Constitution recognizes the states' clear prerogative to prescribe time, place, and

manner restrictions for holding elections.  U.S. Const. art. I, § 4, cl. 1.  Indeed,

there "must be a substantial regulation of elections if they are to be fair and honest

and if some sort of order, rather than chaos, is to accompany the democratic

processes." *Burdick*, 504 U.S. at 433 (quoting *Storer v. Brown*, 415 U.S. 724, 730

(1974)).  Federal law thus generally defers to the states' authority to regulate the

right to vote. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 203-04

(2008) (Stevens, J., op.) (recognizing that neutral, nondiscriminatory regulation

will not be lightly struck down).  Michigan's Constitution expressly provides that

the Legislature "shall enact laws . . . to preserve the purity of elections," and to

"guard against abuses of the elective franchise[.]"  Mich. Const. 1963 art. 2, § 4(2).

Also, the Sixth Circuit in *Thompson v. Dewine* held that the state interests

supporting Ohio's petition requirements were not merely legitimate, but

compelling.  976 F.3d 610, 618 (2020).

With respect to signature requirements, the U.S. Supreme Court has

recognized that states, like Michigan, have an important interest in requiring some

preliminary showing of a significant modicum of support before granting access to

their ballots.  *See e.g. Jenness v. Forton*, 403 U.S. 431, 441 (1971); *American*

*Party of Texas v. White*, 415 U.S. 767, 783 (1974); *Munro v. Socialist Workers*

*Party,* 479 U.S. 189, 194 (1986); *Timmons v. Twin Cities Area New Party*, 520

U.S. 351, 367 (1997).  The Michigan Supreme Court has observed that "[t]here

may be an 'overarching right' to the initiative petition, 'but only in accordance

with the standards of the constitution; otherwise, there is an "overarching right" to

have public policy determined by a majority of the people's democratically elected

representatives.' "  *Citizens Protecting Michigan's Constitution v. Sec'y of State*,

921 N.W.2d 247, 252 (2018) (footnote and citations omitted).  While that case

involved initiative petitions to amend the Michigan Constitution, the principles

apply equally to initiatives.  And as the Michigan Supreme Court observed in that

case, the enactment of "a signature requirement" in the Michigan Constitution for

initiatives can be "viewed" as a "clear[ ] and [ ] stringent limitation" on the right of

initiative.  *Id*. at 260 (footnotes and citations omitted).  Michigan's interest in ensuring a modicum of support for legislative initiatives is thus substantial when individuals or groups seek to act as legislators by invoking the initiative process.  And article 2, § 9's signature requirement advances that important interest in Michigan by requiring Plaintiff to demonstrate that its proposed initiative has a significant modicum of public support in the relevant jurisdiction.

It should not escape notice that—by its plain terms—Mich. Comp. Laws § 125.3402 provides that zoning ordinances do not go into effect during the 30-day petition period, or—in the event of an adequate petition—during the entire time until the next regular election.  Thus, petitions effectively freeze the zoning ordinance and prevent any developments or actions attendant to such ordinances.  The paralyzing effect of the process is obviously a factor in the legislative decision setting the time for petitioning.  The ZEA plainly seeks to reserve the process to only those issues on which there is a sufficient body of public support to justify the extraordinary delays it creates.

YTCRG complains of the costs it incurred in collecting signatures.  Initiatives and referenda may involve a cost, but YTCRG is not entitled to free access to the ballot.  *See, e.g.*, *Libertarian Party of Ky v. Grimes*, 835 F.3d 570, 577 (6th Cir. 2016) ("the incidental costs of gathering signatures on petitions do not come close to exclusion from the ballot, and thus do not impose a severe

burden on ballot access"). *See also Green Party of Arkansas v. Martin*, 649 F.3d 675, 683 (8th Cir. 2011) ("Although the Green Party may incur some costs because of its choice to hire individuals to collect signatures, the ballot access scheme does not impose severe burdens on the Green Party and Arkansas need not collapse every barrier to ballot access.")

Similarly, YTCRG cannot insist that it is "impossible" to gather signatures when it actually collected more than double the number of signatures required. It is true that a surprisingly high number of those signatures were determined to be invalid, but that is not something that can be attributed to the statute and is instead something that might be related to Plaintiff's methods of gathering signatures. Moreover, Plaintiff's claim that the additional 2.5 days might have allowed them to gather over 800 additional valid signatures belies any claim that gathering 3,578 in 30 days is either impossible or unreasonable.

Plaintiff YTCRG has failed to show that the ZEA imposes a "severe" burden" on its First and Fourteenth Amendment rights, and have failed to demonstrate a strong likelihood of success. Plaintiff's motion for preliminary injunction should be denied.

**B.** **Plaintiff has failed to specify the injunctive relief they seek in order to avoid its claimed irreparable harm, and the requested injunction would require this Court to rewrite the statute.**

Plaintiff asserts that it will be irreparably harmed if an injunction does not issue because it will be precluded from having the zoning ordinance placed on the ballot for approval.  But not every ordinance need be approved by ballot proposal, and Plaintiff might still petition its local government to amend the ordinance to address the group's concerns.  *See, e.g.* Mich. Comp. Laws § 125.3403.  Further, Plaintiff cannot claim to have been irreparably harmed by not obtaining something it is not legally entitled to—it gathered nearly 8,000 signatures but there were not 3,578 valid signatures in what Plaintiff submitted.  Plaintiff has not shown that it was denied sufficient signatures by virtue of the time limit as opposed to a lack of support in the community.

Further, it remains unclear what specific injunctive Plaintiff seeks to avoid its claimed harm.  In this Court's April 12, 2022, Order, it directed Plaintiff to specify the injunctive relief it was seeking and to attach a proposed injunction.  In the proposed order attached to the motion, Plaintiff states its requested relief as that the Defendants are:

> Enjoined and restrained from enforcing Mich. Comp. Laws § 125.3402 in so far as it prevents petitioners in large townships, such as Plaintiff, from obtaining access to the ballot if they have not obtained the signatures of 15% of the number of voting electors in the last gubernatorial election in the township.

19

(ECF No. 22-1, PageID.216.)  This proposed order, however, simply bars enforcement of the statute without suggesting anything that would take its place.  If the 15% requirement is eliminated for "large townships" (a phrase that has no suggested definition), what would townships use in its place?  Would petitions even be required, or would the act of filing notice be sufficient to place zoning ordinance referenda on the ballot?  If there is a new signature threshold, what number does Plaintiff suggest to be constitutional?  Neither the proposed order nor Plaintiff's brief offer any answers.  In order to avoid chaos, it would be incumbent upon this Court to design a new zoning ordinance petition process (only for "large townships") and set new thresholds and time limits.  Essentially, Plaintiff is asking this Court to rewrite the statute according to vaguely described terms.  This Court should decline to invent new statutory requirements, especially where Plaintiff is unable or unwilling to do so themselves.

### C.  The balance of harms weighs in favor of the Defendants, and an injunction would be contrary to the public interest.

The remaining factors, "harm to the opposing party and weighing the public interest . . . merge when the Government is the opposing party."  *Nken v. Holder,* 556 U.S. 418, 435 (2009).  While there will be no irreparable harm to the Plaintiff without an injunction, the issuance of an injunction will irreparably harm the State and its citizens.  The Supreme Court has recognized that "anytime a State is enjoined by a court from effectuating statutes enacted by representatives of its

people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S. Ct. 1, *3 (2012) (C.J. Roberts in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977). The zoning laws challenged here were duly enacted by the Michigan Legislature, and, as discussed above, they serve an important governmental interest. The people of Michigan have a strong interest in having the State's election-related laws effectuated. *See Maryland*, 567 U.S. at *3. As the Sixth Circuit recognized in the *Thompson* decision, "serious and irreparable harm will thus result if [the state] cannot conduct its election in accordance with its lawfully enacted ballot-access regulations. *Thompson*, 976 F.3d at 618.

Conversely, the harms claimed by the Plaintiff may just as readily be ascribed to deficiencies in its own process for gathering and validating signatures, or frankly the lack of support for its petition. In this case, granting the Plaintiff the relief it seeks would allow it to skip over the process applied to all other zoning petitions, and would be a windfall rather than an equity.

This Court should deny Plaintiff's request for preliminary injunctive relief.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Secretary of State Jocelyn Benson respectfully asks that this Honorable Court enter an order denying Plaintiff's renewed motion for preliminary injunction, together with any other relief that the Court determines to be appropriate under the circumstances.

Respectfully submitted,

*s/Erik A. Grill*
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendant Benson
P. O. Box 30736
Lansing, Michigan 48909
517.335.7659
grille@michigan.gov
P64713

Dated:  April 28, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2022, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Erik A. Grill*
Erik A. Grill (P64713)
Assistant Attorney General
Attorney for Defendant Benson
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
P64713