# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

YPSILANTI TOWNSHIP CITIZENS FOR RESPONSIBLE GOVERNMENT, ballot question committee,

        Plaintiff,

v.

JOCELYN BENSON, in her official capacity as Secretary of State of Michigan, CHARTER TOWNSHIP OF YPSILANTI, and HEATHER JARRELL ROE, in her official capacity as Ypsilanti Township Clerk.

        Defendants.

Case No. 5:22-cv-10614-SFC-CI

Hon. Sean F. Cox

| | |
|---|---|
| Hannah Stocker (P82847)<br>Attorneys for Plaintiffs<br>23332 Farmington Road #98<br>Farmington, MI 48336<br>(248) 252-6405 (phone)<br>hannah@stockerlawpllc.com | James E. Tamm (P38154)<br>Richard V. Stokan, Jr (P61997)<br>Maxwell G. Shuart (P85692)<br>Kerr, Russell and Weber, PLC<br>Attorney for Defendants Roe and Charter Township of Ypsilanti<br>500 Woodward Ave, Ste. 2500<br>Detroit, MI 48226<br>(313) 961-0200 (phone)<br>(313) 961-0388 (facsimile)<br>jtamm@kerr-russell.com<br>rstokan@kerr-russell.com<br>mhuart@kerr-russell.com |
| Heather S. Meingast (P55439)<br>Erik A. Grill (P64713)<br>Assistant Attorneys General | |

| | |
|---|---|
| Attorneys for Defendant Benson<br>P.O. Box 30736<br>Lansing, MI 48909<br>(517) 335-7659 (phone)<br>(517) 335-7640 (facsimile)<br>meingasth@michigan.gov<br>grille@michigan.gov | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS CHARTER TOWNSHIP OF YPSILANTI AND HEATHER JARRELL ROE'S MOTION TO DISMISS

**NOW COMES** Plaintiff, Ypsilanti Township Citizens for Responsible Government, by and through its attorney, Hannah Stocker, and respectfully request that this Honorable Court deny Defendant Charter Township of Ypsilanti and Defendant Jarrell Roe's Motion to Dismiss.

Contrary to Township Defendant's assertions, Plaintiff has stated a claim upon which relief can be granted. Mich. Comp. Laws § 125.3402 is, at its core, a ballot access law. Ballot access through petition circulation directly implicates core political speech. See e.g. *Meyer v. Grant*, 486 U.S. 414, 421-422 (1988). Numerous Supreme Court decisions have invalidated laws that impose undue burdens on this speech. *See e.g. Buckley v. Amer. Const. Law Foundation*, 525 U.S. 182 (1999); *Meyer v. Grant*, 486 U.S. 414 (1988). As such, Plaintiff has stated a claim upon which relief can be granted.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant Township and Defendant Roe's Motion to Dismiss.

Respectfully Submitted,

Dated:  April 18, 2022

/s/ Hannah Stocker

By: _____

Hannah Stocker (P82847)
23332 Farmington Road, #98
Farmington, MI 48336
(248) 252-6405 (telephone)
Hannah@stockerlawpllc.com

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

---

YPSILANTI TOWNSHIP CITIZENS FOR
RESPONSIBLE GOVERNMENT, ballot
question committee,

        Plaintiff,

v.

JOCELYN BENSON, in her official capacity
as Secretary of State of Michigan,
CHARTER TOWNSHIP OF YPSILANTI,
and HEATHER JARRELL ROE, in her
official capacity as Ypsilanti Township
Clerk.

        Defendants.

Case No. 5:22-cv-10614-SFC-CI

Hon. Sean F. Cox

---

| | |
|---|---|
| Hannah Stocker (P82847)<br>Attorneys for Plaintiffs<br>23332 Farmington Road #98<br>Farmington, MI 48336<br>(248) 252-6405 (phone)<br>hannah@stockerlawpllc.com | James E. Tamm (P38154)<br>Richard V. Stokan, Jr (P61997)<br>Maxwell G. Shuart (P85692)<br>Kerr, Russell and Weber, PLC<br>Attorney for Defendants Roe and<br>Charter Township of Ypsilanti<br>500 Woodward Ave, Ste. 2500<br>Detroit, MI 48226<br>(313) 961-0200 (phone)<br>(313) 961-0388 (facsimile)<br>jtamm@kerr-russell.com<br>rstokan@kerr-russell.com<br>mhuart@kerr-russell.com |
| Heather S. Meingast (P55439)<br>Erik A. Grill (P64713) | |

i

| Assistant Attorneys General<br>Attorneys for Defendant Benson<br>P.O. Box 30736<br>Lansing, MI 48909<br>(517) 335-7659 (phone)<br>(517) 335-7640 (facsimile)<br>meingasth@michigan.gov<br>grille@michigan.gov | |

**BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS CHARTER TOWNSHIP OF YPSILANTI AND HEATHER JARRELL ROE'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION     **1**

II.     BACKGROUND & FACTS     **2**

    A. The Michigan Zoning Enabling Act     **2**

    B. The Zoning Amendment     **3**

III.     STANDARD OF REVIEW     **7**

IV.     LAW & ARGUMENT     **7**

    A. MICH. COMP. LAWS § 125.3402(B)(2) DIRECTLY INFRINGES ON PLAINTIFF'S RIGHT TO FREE POLITICAL SPEECH     **8**

    B. PLAINTIFF'S FIRST AMENDMENT CLAIM GIVES RISE TO DECLARATORY RELIEF     **14**

    C. PLAINTIFF HAS SUCCESSFULLY PLED A SUBSTANTIVE DUE PROCESS CLAIM     **15**

V.     CONCLUSION     **18**

## CONCISE STATEMENT OF ISSUES PRESENTED

Does Plaintiff's Complaint state a claim upon which relief can be granted?

## <u>INDEX OF AUTHORITIES</u>

**Cases:**

*Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001)                     7

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)                     8, 10, 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)                     7

*Betts v. Brady*, 316 U.S. 455 (1942)                     16

*Buckley v. Amer. Const. Law Foundation*, 525 U.S. 182 (1999)                     8, 9, 10

*Citizens for Tax Reform v. Deters*, 518 F.3d 375 (6th Cir. 2008)                     9, 10, 11

*Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1999)                     15, 16

*Daniels v. Williams*, 474 U.S. 327 (1986)                     15, 16

*Esshaki v. Whitmer*, 813 Fed.Appx. 170 (2021)                     14

*Graveline v. Benson*, 992 F.3d 524 (6th Cir. 2021)                     11, 14

*Libertarian Pty of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006)                     8

*Meyer v. Grant*, 486 U.S. 414 (1988)                     9, 10, 11

*Zinermon v. Burch*, 494 U.S. 113 (1990)                     15

**Statutes:**

42 U.S.C. § 1983                     17

Mich. Comp. Laws § 125.3202(1)                     2

Mich. Comp. Laws § 125.3308(5)                     2

Mich. Comp. Laws § 125.3402                     1, 2, 3, 5, 11, 12, 13, 14, 16, 17

Mich. Comp. Laws § 125.3402(1)                                                 1, 3

Mich. Comp. Laws § 125.3402(2)                                                    2

Mich. Comp. Laws § 125.3402(3)(b)                                                 6

Mich. Comp. Laws § 125.3402(3)(c)                                                 3

Mich. Comp. Laws § 125.3403                                                       3

Mich. Comp. Laws § 168.13                                                 5, 16, 17

**Constitutions**

U.S. Const. amend. I                                                             7

U.S. Const. amend. XIV, § 1                                                      7

**Court Rules**

Fed. R. Civ. P. 12(b)(6)                                                        6, 7

Fed. R. Civ. P. 15(a)(1)(B)                                                       7

## I.    __INTRODUCTION__

This action arises out of a voter's petition to refer a zoning amendment passed by the Ypsilanti Township Board of Trustees to the Ypsilanti Township (the "Township") voters for approval. Plaintiff spearheaded this referendum, hiring petition circulators and spending over $100,000.00 in attempt to obtain over 3,500 valid signatures in the 30 day period mandated by Mich. Comp. Laws § 125.3402. Despite Plaintiff's best and concentrated efforts, Defendant, Heather Jarrell Roe, Township Clerk ("Defendant Roe"), has invalidated over 5,000 of the obtained signatures, preventing the referendum's placement on the August 2022 ballot.

Plaintiff's cause of action arises out of the severe burden placed on Plaintiff and others similarly situated in large townships by the requirements of Mich. Comp. Laws § 125.3402. Despite Defendant Roe's and Defendant Township of Ypsilanti ("Defendant Township" or collectively "Township Defendants") allegations in their Motion to Dismiss, Plaintiff has plead a claim upon which relief can be granted. Mich. Comp. Laws § 125.3402 places a severe burden on Plaintiff's First Amendment rights to free speech and free association and effectively bars ballot access to Plaintiff and those similarly situated. Additionally, this Court has discretion to remedy these failings of the law, as applied to Plaintiff. As such, Plaintiff has stated a claim upon which relief can be granted and Township Defendants' Motion to Dismiss should be denied.

## II.     BACKGROUND AND FACTS

### A. The Michigan Zoning Enabling Act

Michigan municipalities have no authority to regulate land use by zoning legislation, unless such action has been expressly authorized by the legislature. *Whitman v. Galien Township*, 298 Mich. App. 672, 679 (Mich. Ct. App. 2010). The MZEA allows local municipalities to regulate zoning within their jurisdictions by passing zoning ordinances. Mich. Comp. Laws § 125.3202(1). Under the MZEA, "[t]he legislative body of a local unit of government may provide by ordinance for the manner in which the regulations and boundaries of districts or zones shall be determined and enforced or amended or supplemented." Mich. Comp. Laws § 125.3202(1). After undergoing a detailed process set out in the MZEA, a proposed zoning ordinance or amendment is adopted only if approved by majority vote of the local legislative body. Mich. Comp. Laws § 125.3308(5).

However, majority vote of the legislative body does not guarantee enactment of the proposed zoning ordinance or amendment. The MZEA reserves the right of referendum to the people. See Mich. Comp. Laws § 125.3402(1). A registered elector in a municipality can petition to have the zoning ordinance or amendment submitted to the people for approval or rejection. *See* Mich. Comp. Laws §§ 125.3402 and 125.3403. In counties and townships, the elector must submit a notice

of intent to file a petition for referendum within seven days after publication of the

zoning ordinance. Mich. Comp. Laws § 125.3402(1). If the notice is filed,

> the petitioner shall have 30 days following the publication of the zoning ordinance to file a petition signed by a number of registered electors residing in the zoning jurisdiction not less than 15% of the total vote cast within the zoning jurisdiction for all candidates for governor at the last preceding general election at which a governor was elected, with the clerk of the legislative body requesting the submission of a zoning ordinance or part of a zoning ordinance to the electors residing in the zoning jurisdiction for their approval.

Mich. Comp. Laws § 125.3402(2).

If the petition is filed by the deadline, is in the proper form, and contains the

requisite number of valid signatures, the zoning ordinance (or parts of the zoning

ordinance) will only become effective if it is approved by the county or township's

electors at the next regular or special election. Mich. Comp. Laws § 125.3402(3)(c).

### B. The Zoning Amendment

In 2019 and 2020, the Township's Planning Commission and Development

Team worked on revising its Zoning Ordinance to allow for marihuana businesses

to operate within the industrial and commercial district of the Township. Following

public hearing and revision, the Ypsilanti Township Board of Trustees voted to enact

a complete overhaul of its current zoning ordinance (the "Revised Zoning

Ordinance"). On February 24, 2022, the Township published a "Notice of Adoption

of an Amendment to the Zoning Ordinance Charter Township of Ypsilanti

Township" in the Washtenaw County Legal News. On March 1, 2022, Latrice T. Moore, a citizen of the Township who is concerned about the impact of an unlimited number of marihuana dispensaries in close proximity to residential areas, submitted her Notice of Intent to File Petition Pursuant to MCL 125.3402.

Because 23,856 registered electors voted for governor in the Township in 2018, Plaintiff was required to collect 3,578 valid signatures by March 26, 2022 to fulfill the mandates of the MZEA. To do so, Plaintiff contracted with two professional-signature gathering firms, Let the Voters Decide, and subsequently, Larsosa Management Service, to gather signatures for the petitions. Due to the nature of the petitioning process and condensed window to obtain signatures, Plaintiff agreed to pay these companies for each valid signature obtained, with the price for valid signatures steadily increasing as the signature gathering deadline approached.[1] On average, Plaintiff paid the circulators an average of $20.00 per valid signature and spent over $100,000.00 for this initiative.

From February 28, 2022 to March 26, 2022, Plaintiff obtained 7,895 signatures on its petitions, with a significant number of signatures being presented

---

[1] Plaintiff contracted with Let the Voters Decide LLC on or about February 28, 2022. From February 28, 2022 to March 11, 2022, Let the Voters Decide LLC charged 10.67 per valid signature. This amount rose to $17.33 on March 11, and $23.33 after March 17, 2022.  Additionally, Plaintiff contracted with Larsosa Management Service on March 16, 2022. From March 16, 2022 to March 22, 2022, Larsosa charged $20.00 per valid signature. This amount increased to $26.15 after March 22, 2022.

to Plaintiff in the days leading up to the filing deadline. Given the impending time frame, Plaintiff was unable to scrub all of its petitions to ensure it had obtained enough valid signatures by, for example, striking duplicate signatures and ensuring that all signatories are registered electors in the Township. On March 23, 2022, Plaintiff brought this present action to challenge the constitutionality of Mich. Comp. Laws § 125.3402 as applied to any populous township.

On or about March 23, 2022, Plaintiff's Counsel reached out to Defendant Roe, to coordinate a time to turn in signatures on March 26, 2022, a Saturday and the thirtieth day under the statute. On March 24, 2022, Plaintiff's Counsel emailed the Township Attorney for clarification as to whether or not Mich. Comp. Law § 168.13 applied. In lieu of indicating whether or not § 168.13 was applicable, the Township Attorney asked for verification that the petitions would be turned in by 5 p.m. on March 26, 2022.

On March 26, 2022, Plaintiff submitted petitions containing 7,895 signatures to Defendant Roe, with other Township officials present. On that date, one representative of Plaintiff turned in petitions containing multiple signatures at 5 p.m. and informed Defendant Roe and the Township agents that additional petitions were on the way. (Renewed Motion for Preliminary Injunction, ECF No. 22, Ex. 6).  In response, Plaintiff's representative was informed by Defendant Roe and/or Township agents that the Township would refuse to accept any petitions after 5:15

pm. (Renewed Motion for Preliminary Injunction, ECF No. 22, Ex. 6.) Although the additional petitions arrived and were accepted at 5:15 p.m., Defendant Roe and/or the Township agents' remarks led Plaintiff to believe that the filing window had closed and they were unable to submit any additional petitions after that time, despite the Clerk knowing that she was required to accept signatures on Monday per the affidavit attached to Defendant's Motion to Dismiss. (Motion to Dismiss, ECF No. 18, Ex. A.)

Following submission of the petitions, Defendant Roe canvassed the signatures and determined the adequacy of the petitions' contents, pursuant to Mich. Comp. Laws § 125.3402(3)(b). On April 13, 2022, Defendant Roe sent Plaintiff a letter, indicating the results of her canvassing. In this letter, Defendant Roe noted:

> Upon a review of the signatures and comparison with the Qualified Voter File, it was determined that 2,754 valid signatures were submitted. This falls short of the 3,578 signatures needed to place the referendum on the ballot. Therefore, a referendum will not be placed on the August ballot.

(Renewed Motion for Preliminary Injunction, ECF No. 22, Ex. 4).

On April 11, 2022, in lieu of responding to Plaintiff's Complaint, Defendants Roe and Township (the "Township Defendants") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). On April 18, 2022, Plaintiff filed a First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B), adding claims for due process violations against Township Defendants. (First Amended Complaint, ECF No. 20).

### III.   STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the pleadings. To survive a motion to dismiss pursuant to this Rule, a complaint must contain sufficient factual matter to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating such a motion, the court "view[s] the complaint in the light most favorable to the plaintiff, treat all well-pleaded allegations therein as true, and will dismiss the plaintiff's claims only if it is without doubt that the plaintiff 'can prove no set of facts in support of the claims that would entitle him to relief.'" *Amini v. Oberlin College*, 259 F.3d 493, 497 (6th Cir. 2001) (internal citation omitted).

### IV.   LAW AND ARGUMENT

#### A. MICH. COMP. LAWS 125.3402(B)(2) DIRECTLY INFRINGES ON PLAINTIFF'S RIGHT TO FREE POLITICAL SPEECH

The First Amendment provides that Congress "shall make no law . . . abridging the freedom of speech, or of the press, or the right of people peaceably assemble, and to petition the government for a redress of grievances." U.S. Const. amend I. Through the Due Process clause, the Fourteenth Amendment extends these protections against actions of the state government. U.S. Const. amend. XIV.  As such, neither federal nor local government can enact laws that infringe on the constitutional protections of the First Amendment.

A fundamental cornerstone of the First Amendment is the right to free political speech and association. *See Libertarian Pty of Ohio v. Blackwell*, 462 F.3d 579, 585 (6th Cir. 2006). These freedoms are directly tied to an elector's right to "associate for the advancement of political beliefs" and "cast [his] votes effectively." *See id.* (quoting *William v. Rhodes*, 393 U.S. 23, 30 (1968)). An individual cannot partake in political speech absent the opportunity to do so. *See id.* (noting that "[t]he right to cast an effective vote 'is of the most fundamental significance under our constitutional structure.'"). Given that political speech directly derives from a party's ability to vote, laws cannot limit a citizen group's access to the ballot in an unduly burdensome manner. *See e.g. Anderson v. Celebrezze*, 460 U.S. 780 (1983) (holding Ohio statute prevents voters from expressing their support for independent candidate by barring him from ballot access); *Blackwell*, 462 F.3d at 582 (holding that requirement that all minor political parties file a petition with the Secretary of State 120 days in advance of the primary prevents group from gaining access to general election ballot).

Many citizens groups gain ballot access through petitioning, whether it be for initiative or referendum. *See e.g. Buckley v. Amer. Const. Law Foundation*, 525 U.S. 182, 188 (1999). This process, in and of itself, involves political speech, as noted by the United States Supreme Court:

> The circulation of an initiative petition of necessity involves both the expression of a desire for political

change and a discussion of the merits of the proposed change. Although a petition circulator may not have to persuade potential signatories that a particular proposal should prevail to capture their signatures, he or she will at least have to persuade them that the matter is one deserving of the public scrutiny and debate that would attend its consideration by the whole electorate. This will in almost every case involve an explanation of the nature of the proposal and why its advocates support it. Thus, the circulation of petition involves the type of interactive communication concerning political change that is appropriately described as "core political speech." *Meyer v. Grant*, 486 U.S. 414, 421-422 (1988).

Stated succinctly, petitioning itself involves core political speech because circulators must advocate for their cause. *See id.*

Federal courts have struck down various laws that present barriers to circulation and, therefore, political speech. *See e.g.*, *Buckley v. Amer. Const. Law Foundation*, 525 U.S. 182 (1999) (holding that Colorado requirements that petition circulators be registered voters and wear identification badges inhibit free speech by drastically reducing number of persons available to circulate petitions); *Meyer v. Grant*, 486 U.S. 414 (1988) (declaring Colorado law prohibiting the use of paid circulators to violate the First Amendment); *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 388 (6th Cir. 2008) (striking down Ohio statute making it a felony to pay canvassers on a per-signature basis). Furthermore, the Court has acknowledged First Amendment violations occur when a barrier has the effective of limiting the amount of speech to be had in support of a petition. See *Meyer*, 486 U.S. at 422-23 (noting

that the prohibition on paying circulators "limits the number of voices who will convey [the petitioner's] message and the hours they can speak and, therefore, limits the size of the audience they can reach."). The limitation need not be express to be unconstitutional. *Citizens for Tax Reform*, 518 F.3d at 383 ("Bans on paying circulators, whether outright or partial can impact political expression in at least three related but distinct ways: (1) a ban can reduce the number and hours of voices which will convey the message; (2) it can limit the size of the audience of the petition; and (3) it can lower the likelihood that a measure will qualify for the statewide ballot."). "When core political speech is at issue, [the Supreme Court has] ordinarily applied strict scrutiny without first determining that the State's law severely burdens speech." *Buckley*, 525 U.S. at 207 (Thomas, J., concurring).

However, when a challenged election law regulates "the mechanics of the election process" in addition to speech, courts must analyze the "character and magnitude of the asserted injury" to the plaintiff's constitutional rights in relation to the defendant's interest in enforcing the regulation. *Anderson*, 470 U.S. at 789; *see also Blackwell*, 462 F.3d at 587. Regulations imposing severe burdens on a plaintiff's rights will only be upheld if they are narrowly drawn to advance a compelling state interest. *Graveline v. Benson*, 992 F.3d 524, 535 (6th Cir. 2021). Lesser burdens are subject to intermediate scrutiny, which requires the court to

weigh the burden on the plaintiff against the state's asserted interest and chosen means of pursuing it. *Id*.

Federal courts have found regulations to severely burden free speech if they limit the number of people engaging in the speech, *see Meyer*, 486 U.S. at 422-23; require political parties to collect a significant number of signatures at a time when the "electorate that is not yet politically energized," *Graveline*, 992 F.3d at 539; or require an increased expenditure of funds to meet statutory prerequisites. *Citizens for Tax Reform*, 518 F.3d at 383-387.

Applying this to the case at hand, Plaintiff has stated a claim upon which relief can be granted. Contrary to Township Defendants' assertions, Plaintiff's claim challenges Mich. Comp. Laws § 125.3402's framework for obtaining ballot access, not the MZEA's process for passing a zoning ordinance or amendment. *Plaintiff is challenging a law, which, as applied, bears different results.*[2] Neither Township

---

[2] It is worth noting that the cases Township Defendants reference for the proposition that referendum has been achieved concern Salem Township and Northfield Township in the early 2010s. The population for these townships in 2010 were 5,627 (Salem Township), *QuickFacts Salem Township, Washtenaw County, Michigan*, U.S. CENSUS BUREAU https://www.census.gov/quickfacts/fact/table/salemtownshipwashtenawcountymichigan/POP010210#POP010210 (last visited May 2, 2022), and 8,245 (Northfield Township), *QuickFacts Northfield Township, Washtenaw County, Michigan*, U.S. CENSUS BUREAU https://www.census.gov/quickfacts/northfieldtownshipwashtenawcountymichigan (last visited May 2, 2022), respectfully. As such petitioners in those townships had to solicit substantially less signatures than those required in Ypsilanti Township.

Defendants nor Defendant Secretary have raised any claims to justify these disparate results. As such, this is an arbitrary law that concerns fundamental rights.

Mich. Comp. Laws § 125.3402 is, at its core, a ballot access law. It dictates whether or not individuals residing in townships get the opportunity to vote for or against an adopted ordinance. The act of voting is free political speech at its core. The condensed window to obtain signatures places a legitimate restraint on one's ability to cast his vote and engage in political speech.

Additionally, it restrains the ability of circulators to advocate for their cause. The geographic layout of the Township, in conjunction with the adverse weather conditions in which Plaintiff canvassed, limited the amount of speech circulators could engage in. With limited public opportunities to reach the Township's populace, given the layout and weather, circulators were relegated to door-to-door canvassing. Such canvassing curtailed the amount of speech circulators engaged in, as circulators were required to canvass at such times that the home's occupants were at work or running errands.

Furthermore, the necessity of door-to-door canvassing restricts *who* can procure a sufficient number of valid signatures and therefore engage in political speech in large townships. To obtain thousands of signatures within a thirty-day period, a citizens group must either be well organized with numerous volunteers or have sufficient funding to hire a professional signature-gathering company.

Therefore, this inhibits the ability of average citizens to engage in political speech, as smaller operations will be unable to gain ballot access under the ordinance. In other words, the challenged restriction "unfairly or unnecessarily burdens ' the availability of political opportunity.'" *Anderson*, 460 U.S. at 795.

Simply put, if a citizens group is unable to obtain sufficient valid signatures within the thirty-day window, the buck stops there. No vote occurs and advocates for repeal of the zoning ordinance have no further outlet for political discourse. As such and as applied in this case, Mich. Comp. Laws § 125.3402 places an undue burden on the fundamental rights of free speech and free association. Plaintiff has stated a claim upon which relief can be granted, which must be assessed using the *Anderson-Burdick* framework.

Under this framework, Mich. Comp. Laws § 125.3402 places a severe burden on Plaintiff's right to engage in free political speech. Due to the expeditious nature of the circulation, Plaintiff spent over $100,000.00 in obtaining the signatures (many of which were deemed invalid). This exorbitant amount constitutes a severe burden on Plaintiff's right to free speech, as does the lack of process to appeal the Clerk's sufficiency determination under Mich. Comp. Laws § 125.3402.

Furthermore, even Plaintiff has failed to show a severe burden necessitating strict scrutiny, the scales of justice weigh in Plaintiff's favor. In their Motion to Dismiss, Township Defendants have not raised any justifications for the fast-tracked

nature of the petition. Nor have they put forth any reason why a petitioner must obtain the signatures of 15% of the voters who participated in the last gubernatorial election in in the Township to gain access on the ballot. Therefore, it can only be assumed that the burden imposed on Plaintiff by the regulation outweighs the harm to the government. As such, Plaintiff has stated a claim upon which relief can be granted and Township Defendant's Motion to Dismiss should be denied.

### B. PLAINTIFF'S FIRST AMENDMENT CLAIM GIVES RISE TO DECLARATORY RELIF

Federal courts have considerable discretion when determining the remedy for First Amendment violations. In the context of ballot access violations, the Sixth Circuit Court has recognized a district court's ability to reduce the number of signatures required to obtain ballot access. *Graveline v. Benson*, 992 F.3d 524, 546 (6th Cir. 2021). These limitations are determined on a case-by-case basis and should not be construed to override the statute as a whole. *See id.* (reducing the number of signatures required "to make sure a procedure is in place now for . . . access to the ballot"). Although courts can enjoin enforcement of portions of a statute based on their unconstitutionality, they cannot rewrite portions of the statute absent exigent circumstances. *See id.*, see also *Esshaki v. Whitmer*, 813 Fed.Appx. 170, 172 (2021) (unpublished per curiam opinion) (recognizing that while courts can enjoin enforcement of an unconstitutional statute, they cannot write the statute).

Given the above, this Court has the ability to enjoin enforcement of any part of Mich. Comp. Laws § 125.3402 that unconstitutionally burden Plaintiff's First and Fourteenth Amendment rights. Because the 30-day window, 15% signature requirement, and lack of ability to challenge the clerk's sufficiency determination severely burden Plaintiff's First Amendment rights, the Court has discretion to enjoin enforcement of those provisions and craft an appropriate remedy in light of the May 10, 2022 certification deadline.

Therefore, the Court may grant the relief Plaintiff has requested and Township Defendants' Motion to Dismiss should be denied.

### C. PLAINTIFF HAS SUCCESSFULLY PLED A SUBSTANTATIVE DUE PROCESS CLAIM.

Additionally, Plaintiff's First Amended Complaint adds a substantive due process claim against Township Defendants, which bars dismissal of this matter.

The Fourteenth Amendment protects against arbitrary and capricious actions of government officials in application of the law. The substantive component of the Due Process Clause "bars certain arbitrary wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "[T]he Due Process Clause was intended to prevent government officials ' " from abusing [their] power, or employing it as an instrument of oppression."'" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1999) (internal citations omitted).

15

To make a successful substantive due process claim, one must show that a government official has engaged in behavior that shocks the conscious. *Cty of Sacramento*, 523 U.S. at 848. "Historically, this guarantee of due process has been applied to *deliberate* decisions of governmental officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). However, the Supreme Court has recognized that substantive due process is fluid and requires assessment of the totality of the circumstances surrounding the case. *See Cty. Of Sacramento*, 523 U.S. at 850 (noting that assessment of due process claims must be "tested by an appraisal of the totality of facts in a give case" and "[t]hat which may, in one setting, constitute a denial of fundamental fairness . . . may, in other circumstances, and in light of other considerations, fall short of such denial") (quoting *Betts v. Brady*, 316 U.S. 455, 462 (1942)).

Defendant Roe, in her capacity as Township Clerk, and the Township acted arbitrary and capriciously by misleading Plaintiff into believing that the petitions needed to be filed by March 26, 2022. Although Plaintiff was initially under the belief that the petitions were due on March 26, 2022, pursuant to the statutory mandates of Mich. Comp. Laws § 125.3402, neither Defendant Roe nor the Township corrected this belief. When Plaintiff's Counsel asked the Township Attorney if Mich. Comp. Law § 168.13 applied, thereby making the filing date Monday, March 28, 2022, the Township Attorney disparaged her and refused to

correct Plaintiff's prior perception. Additionally, on March 26, 2022, a committee member was told by Township officials that no petitions would be accepted after 5:15 p.m. To put it frankly, Defendants allowed Plaintiff to operate under the false belief that the filing deadline was March 26, 2022.

This deception caused a direct burden on Plaintiff's right to ballot access. To begin, it robbed Plaintiff of valuable time to collect more signatures. Had the Township Attorney affirmed that March 28, 2022, as required by Mich. Comp. Laws § 168.13, was the deadline and not given Plaintiff an ultimatum to arrive at 5:15 p.m. on March 26, 2022, Plaintiff would have had another 2.5 days to attempt to collect valid signatures. Additionally, this extra time would have allowed Plaintiff to more thoroughly scrub the petitions, so as to avoid an exponential disqualification of duplicate signatures.

As such, Defendant Township and Defendant Roe's conduct was egregious, arbitrary, and capricious by imposing an additional burden on Plaintiff's right to ballot access under Mich. Comp. Law § 125.3402 and deprived Plaintiff of due process under the Fourteenth Amendment.

Because Plaintiff has stated a claim for violation of substantive due process pursuant to 42 U.S.C. § 1983, Township Defendants' Motion to dismiss should be denied.

17

## V.     <u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant

Township and Defendant Roe's Motion to Dismiss.

Respectfully Submitted,

Dated:  April 18, 2022

/s/ Hannah Stocker

By: _____

Hannah Stocker (P82847)
23332 Farmington Road, #98
Farmington, MI 48336
(248) 252-6405 (telephone)
Hannah@stockerlawpllc.com

CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2022, I filed the foregoing document with the Clerk of the Court using the Court's electronic filing system which will electronically serve all parties of record.

/s/ Hannah Stocker