# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

YPSILANTI TOWNSHIP CITIZENS FOR RESPONSIBLE GOVERNMENT, ballot question committee,

        Plaintiff,

v.

JOCELYN BENSON, in her official capacity as Secretary of State of Michigan, CHARTER TOWNSHIP OF YPSILANTI, and HEATHER JARRELL ROE, in her official capacity as Ypsilanti Township Clerk.

        Defendants.

Case No. 5:22-cv-10614-SFC-CI

Hon. Sean F. Cox

| | |
|---|---|
| Hannah Stocker (P82847)<br>Attorneys for Plaintiffs<br>23332 Farmington Road #98<br>Farmington, MI 48336<br>(248) 252-6405 (phone)<br>hannah@stockerlawpllc.com | James E. Tamm (P38154)<br>Richard V. Stokan, Jr (P61997)<br>Maxwell G. Shuart (P85692)<br>Kerr, Russell and Weber, PLC<br>Attorney for Defendants Roe and Charter Township of Ypsilanti<br>500 Woodward Ave, Ste. 2500<br>Detroit, MI 48226<br>(313) 961-0200 (phone)<br>(313) 961-0388 (facsimile)<br>jtamm@kerr-russell.com<br>rstokan@kerr-russell.com<br>mhuart@kerr-russell.com |
| Heather S. Meingast (P55439)<br>Erik A. Grill (P64713)<br>Assistant Attorneys General | |

i

| | |
|---|---|
| Attorneys for Defendant Benson<br>P.O. Box 30736<br>Lansing, MI 48909<br>(517) 335-7659 (phone)<br>(517) 335-7640 (facsimile)<br>meingasth@michigan.gov<br>grille@michigan.gov | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSES TO PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION**

## **STATEMENT OF ISSUES**

**Is Mich. Comp. Laws § 125.3402 a content neutral, nondiscriminatory regulation?**

## **CONTROLLING AUTHORITY**

*Meyer v. Grant*, 486 U.S. 414 (1988)

# ARGUMENT

### I. Contrary to Defendants' assertions, Mich. Comp. Laws § 125.3402 is not a content-neutral, nondiscriminatory regulation.

Defendants claim that rational basis review applies because Mich. Comp. Laws § 125.3402 is a "content-neutral, nondiscriminatory" regulation. However, this position completely disregards the *Anderson-Burdick* framework, which the Supreme Court has recognized as the appropriate authority to assess state election laws. *Buckley v. Amer. Con. Law Foundation*, 525 U.S. 182, 206 (1999) (Thomas, J., concurring) (noting that the Supreme Court has "developed . . . a framework for assessing the constitutionality, under the First and Fourteenth Amendments of state election laws.") *Anderson-Burdick* requires courts to weigh the burden on the plaintiff against the state's interests to determine the type of scrutiny to apply. *See Libertarian Pty of Ohio v. Blackwell*, 585. If the burden to the plaintiff is severe, then strict scrutiny applies and state regulations will only be upheld if it is narrowly tailored to serve a compelling government interest. *Buckley*, 525 U.S. at 207 (Thomas, J., concurring). "If the regulations are minimally burdensome, the state's regulatory interest will likely justify 'reasonable, nondiscriminatory restrictions.'" *Graveline v. Benson*, 992 F.3d 524, 535 (6th Cir. 2021). However, with an intermediate burden, the court must perform a balancing test, weighing the burden on plaintiff against the state's asserted interest and means of pursuing it." *Id.*

1

Township Defendants argue that Mich. Comp. Laws § 125.3402 constitutes a "content-neutral, nondiscriminatory" law and does not impose an undue burden on Plaintiff's rights, hence warranting rational basis review. This is inaccurate. To begin, under *Anderson-Burdick*, the $100,000.00 Plaintiff spent and the very limited time period for Plaintiff to collect signatures constitutes a severe burden on Plaintiff's right to free speech.

In its Renewed Motion for Preliminary Injunction, Plaintiff has set forth its arguments for heightened scrutiny and will not reiterate them herein. Turning to the question of whether or not the statute is "content-neutral" and "nondiscriminatory", Defendants rely upon *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291 (6th Cir. 1993). This is a mistake, as *Taxpayers United* is clearly distinguishable from the case at hand.

*Taxpayers United* acknowledges that "once a state creates an initiative, the initiative becomes a means by which voters can communicate with other voters; therefore, the state must ensure that the process does not violate federal constitutional rights," *id.* at 294, deals with a content-neutral, non-discriminatory law. The underlying Michigan procedures invalidated signatures on a petition, s*ee id.* at 293, notwithstanding the content of the petition. *See id.* at 297. It neither restricted a circulator's ability to engage in political speech during the circulation process nor inhibited a signer's right to vote. *Id.* at 296-297. As such, *Taxpayers*

2

*United* stands in stark contrast to our case, which involves a restriction that infringes on the petitioning process by imposing a time limit on circulation and impedes ballot access by setting different requirements for different petitioners.[1] Put another way, Mich. Comp. Laws § 125.3402(2) is not a content-neutral, non-discriminatory law.

Mich. Comp. Laws § 125.3402(2) treats plaintiffs differently than other parties seeking referendum. While appearing "non-discriminatory," Mich. Comp. Laws § 125.3402(2)(b) discriminates as applied to petitioners in large townships. *See Anderson*, at 794 ("A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment."). It requires petitioners to gather 15% of the number of signatures in the last gubernatorial election in 30 days, notwithstanding the size of the population. Mich. Comp. Laws § 125.3402(2). This is inherently unfair, as it places petitioners in large township at a disadvantage. They must gather more signatures, have less opportunities for free speech, *see Meyer v. Grant*, 486 U.S. 414, 422-23 (1988) (noting that the prohibition on paying circulators "limits the number of voices who will convey [the petitioner's] message and the hours they can speak and, therefore, limits the size of the audience they can reach."), and utilize

---

[1] In fact, *Taxpayers United* acknowledges the court's "result would be different if, as in *Meyer*, the plaintiffs were challenging a restriction on their ability to communicate with other voters about proposed legislation, or if they alleged they were being treated differently than other groups seeking to initiative legislation." *Id.* at 297.

a larger circulating force in order to achieve the same end goal (referendum) in the same amount of time. This is not a non-discriminatory regulation. Petitioners in large townships have a substantial handicap to ballot access.

Furthermore, Mich. Comp. Laws § 125.3402(2) sets different standards for zoning referenda than other types of referenda. Section 9 of the Michigan Constitution reserves the right of referendum to the people. 1963 Mich. Const., § 9. To invoke this right, petitioners must submit a petition signed by at least 5% of the total vote cast for all candidates for governor at the last preceding election at which a governor was elected. Mich. Const.§ 9. Despite the dictates of the Michigan Constitution, Mich. Comp. Laws § 125.3402(2) imparts a different standard in townships by cutting the time to obtain signatures by two-thirds, while requiring three times as many proportionate signatures. Defendants have raised no justifications for this divergence. As such, it can only be assumed to not be content neutral. See *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (noting that apparently facially content neutral laws will be considered content-based regulations if they "cannot be justified without reference to the content of the speech.") Because Mich. Comp. Laws § 125.3402(2) treats zoning referenda petitions differently, it is not content neutral and therefore does not fall under rational basis review. As such, *Taxpayers United* is inapplicable to the case at hand.

## II.   Plaintiff's claim survives notwithstanding the number of signatures collected.

All three Defendants allege that Mich. Comp.§ 125.3402(2) does not severely Plaintiff's First and Fourteenth Amendment rights because Plaintiff was able to obtain 7,895 signatures. This line of argument overlooks the fact that 5,000 of these signatures were invalidated (the statute requires a party to obtain *valid* signatures), the methods Plaintiff used to obtain the signatures, the subsequent invalidation of the signatures, and the extreme cost associated with gathering them. These were standard and reasonable measures, as evidenced by the affidavit from Plaintiff's expert.

Township Defendant's brief offers no evidence in support of their allegations that Plaintiff did not face a severe burden in collecting these signatures. Township Defendants allege that Plaintiff was charged "an excessive amount per signature by the signature-collection firm it selected." This is an inaccurate representation. Had Defendants engaged even in a cursory Google search, they would have discovered this allegation was incorrect. For example, on April 15, 2022, Bridge Michigan, a nonprofit news source, reported that "[a] lack of seasoned workers in Michigan has raised the cost of signature gathering up to $20 apiece." Yue Stella Yu, *Soaring Signature Costs May Bar Some Candidates from Making Michigan Ballot*, BRIDGE MI (Apr. 15, 2022), https://www.bridgemi.com/michigan-government/soaring-signature-costs-may-bar-some-candidates-making-michigan-ballot. With a higher

5

number of ballot initiatives taking place in Michigan this year, as well as low supply of circulators and high inflation, costs for ballot initiatives have risen exponentially. *Id.* As such, Township Defendant's allegations that Plaintiff spent an excessive amount on this initiative must be disregarded based on facts.

Additionally, Township Defendants have raised no legitimate allegations that Plaintiff could have procured these signatures absent a signature-gathering firm or without such a high cost. While Township Defendants reference cases in which petitioners were able to meet the threshold for referendum, these cases arose out of much smaller townships. (Plaintiff's Response to Motion to Dismiss, ECF No. 25, P. 11). Defendants offer no factual support for these allegations.

Simply put, no defendant addresses the undue burden caused by the methods Plaintiff had to undertake to meet the threshold. Instead, they attempt to reclassify these burdens as "reasons [Plaintiff] was unable to gather enough signatures." Simply ignoring an issue does not render it illegitimate. As such, Defendants' reclassification of the burden should fail.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Preliminary Injunction and enjoin the enforcement of Mich.

6

Comp. Laws § 125.3402(2) until disposition of this case on the merits or any other relief the Court deems just.

Respectfully Submitted,

Dated:  May 2, 2022

By:  /s/ Hannah Stocker
_____
Hannah Stocker (P82847)
Attorneys for Plaintiff
23332 Farmington Road, #98
Farmington, MI 48336
(248) 252-6405 (telephone)
Hannah@stockerlawpllc.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein via E-file on May 2, 2022.

Signature: /s/ Hannah Stocker
Hannah Stocker

7