# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

YPSILANTI TOWNSHIP CITIZENS FOR
RESPONSIBLE GOVERNMENT, ballot
question committee,

    Plaintiff,

vs.

JOCELYN BENSON, in her official capacity
as Secretary of State of Michigan,
CHARTER TOWNSHIP OF YPSILANTI,
and HEATHER JARRELL ROE, in her
official capacity as Ypsilanti Township
Clerk,

    Defendants.

Case No.: 5:22-cv-10614
Hon. Sean F. Cox

**DEFENDANTS CHARTER TOWNSHIP OF YPSILANTI AND HEATHER JARRELL ROE'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

---

HANNAH STOCKER (P82847)
Attorneys for Plaintiff
23332 Farmington Road, #98
Farmington, MI 48336
(248) 252-6405
hannah@stockerlawpllc.com

JAMES E. TAMM (P38154)
RICHARD V. STOKAN, JR. (P61997)
MAXWELL G. SHUART (P85692)
KERR, RUSSELL AND WEBER, PLC
Attorneys for Defendants
Charter Township of Ypsilanti
and Heather Jarrell Roe
500 Woodward Avenue, Ste. 2500
Detroit, MI 48226-3427
(313) 961-0200/(313) 961-0388 Fax
jtamm@kerr-russell.com
rstokan@kerr-russell.com
mshuart@kerr-russell.com

---

**DEFENDANTS CHARTER TOWNSHIP OF YPSILANTI AND
HEATHER JARRELL ROE'S
REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS**

### I.  Plaintiff has failed to state a claim under the First Amendment

Plaintiff's Response does little more than repeat the assertion that MCL 125.3402 is a "ballot access law" that imposes a severe burden on Plaintiff's right to free political speech. Plaintiff's Response, however, continues to be plagued by an issue fatal to its request for relief: **the authority cited by Plaintiff does not give rise to any right to relief under the circumstances presented by this dispute**.

Plaintiff's response first references the First and Fourteenth Amendments before quoting from cases that considered state statutes imposing different requirements for minor and major party candidates to appear on the election ballot such as *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 585 (6th Cir. 2008), *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Graveline v. Benson*, 992 F.3d 524, 535 (6th Cir. 2021). Plaintiff then refers to cases dealing with statutes that barred certain petitioning techniques such as *Buckley v. Amer. Const. Law Foundation*, 525 U.S. 182 (1999), *Meyer v. Grant*, 486 U.S. 414 (1988), and *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 388 (6th Cir. 2008). Yet, notably absent from Plaintiff's Table of Authorities is a case finding that neutral prerequisites to the submission of an adopted zoning ordinance to voters is unconstitutional. Such authority simply does not exist, and the cases cited by Plaintiff remain factually and

legally distinguishable. Consequently, contrary to Plaintiff's apparent assertion that a state may not impose prerequisites to having lawfully passed zoning ordinances submitted to voters, Justice Sotomayor has noted that

> …we must be mindful of the character of initiatives and referenda. These mechanisms of direct democracy are not compelled by the Federal Constitution. It is instead up to the people of each State, acting in their sovereign capacity, to decide whether and how to permit legislation by popular action. States enjoy 'considerable leeway' to choose the subjects that are eligible for placement on the ballot and to specify the requirements for obtaining ballot access (e.g. the number of signatures required, the time for submission, and the method of verification).

*John Doe No. 1 v. Reed*, 561 U.S. 186 (2010) (Sotomayor, J., concurring). This case does not deal with independent candidate ballot access where the requirements to appear on the ballot vary according to political party or a statute that restricts the methods by which circulators may collect signatures. Because Plaintiff's briefing remains devoid of any reference to a case finding a content neutral, nondiscriminatory limitation on Plaintiff's ability to initiate a referendum on a zoning ordinance unconstitutional, Plaintiff has failed to state a claim upon which relief may be granted under the First Amendment.

In addition, under the facts presented by this dispute, the statute at issue does not impose barriers on "core political speech." MCL 125.3402 is state regulation of the zoning referendum process that requires a threshold showing of support before an ordinance, adopted by the city's elected officials, will have its effectiveness

delayed and be submitted back to voters for approval or rejection. As noted by the Supreme Court in other contexts, states have a strong interest in ensuring both that its elections are run fairly and honestly and that "proposals are not submitted for enactment into law unless they have sufficient support." *Anderson*, 460 U.S. at 788, 788 n. 9. Because MCL 125.3402 does no more than condition use of the Michigan Zoning Enabling Act's referendum procedure on compliance with "content neutral, non-discriminatory regulations" that are "reasonably related to the purpose of administering a fair [referendum] procedure," the provision at issue passes constitutional muster. See *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291 (6th Cir. 1993). Plaintiff's argument that the *Anderson-Burdick* test governs this dispute remains unconvincing given that those cases and its progeny are distinguishable.

Plaintiff next goes on to allege that the statute, as applied, bears different results. Plaintiff's theory on this point is that it is more difficult for individuals in "large" townships to fulfill the statutory prerequisites, especially when the weather is "adverse." It remains unclear why Plaintiff believes that a statute imposing a signature threshold that is proportional to the total votes cast in the previous gubernatorial election is somehow more difficult to achieve in townships or cities that are more populous. The 15% requirement accounts for population differences, further demonstrating that the statute is nondiscriminatory. In addition, pursuant to

the Northwest Ordinance, the land that now makes up the state of Michigan was originally surveyed and subdivided, with each grant of land that would make up the state's cities and townships being a square area measuring six miles on each side.[1] Consequently, whether Plaintiff refers to "large" townships in the sense of population or area, the result is the same in that the statute accounts for the difference in population and the area making up each Michigan township is relatively similar, barring geographic (in the sense of topography rather than layout) disparities.

Further, Plaintiff notes that "if a citizens group is unable to obtain sufficient valid signatures within the thirty-day window, the buck stops there. No vote occurs and advocates for repeal of the zoning ordinance have no further discourse." (Plaintiff's Response to Motion to Dismiss, ECF No. 25, Page ID. 352). The text of MCL 125.3402 reveals that this is precisely what was intended by the Michigan Legislature when it enacted the Michigan Zoning Enabling Act.

Finally, Plaintiff's complaints regarding the lack of further discourse misses the fact that at some point City ordinances must achieve finality. Plaintiff and all similarly situated citizen groups had ample opportunity to make their voices heard. Plaintiff's Response even refers to the "detailed process set out in the MZEA" and notes that "a proposed zoning ordinance or amendment is adopted only if approved

---

[1] See Encyclopedia Britannica, Northwest Ordinances, United States, 1784, 1785, 1787, available at Northwest Ordinances | Definition, Summary, & Significance | Britannica.

{39751/1/D1717875.DOCX;1}               4

by a majority of the local legislative body." (Plaintiff's Response to Motion to Dismiss, ECF No. 25, Page ID. 352). This process provides a host of opportunities for citizens to engage in discourse regarding updates to a township's zoning ordinance. This was on display in the instant case. As noted by Plaintiff: "[i]n 2019 and 2020, the Township's Planning Commission and Development Team worked on revising its Zoning Ordinance . . . Following public hearing and revision. . . the Board of Trustees voted to enact a complete overhaul of its current zoning ordinance[.]" (Plaintiff Response, ECF No. 25, Page ID. 342). Here, the Township Planning Commission spent over a year on public meetings and legal review of the zoning ordinance and hosted a public hearing on November 23, 2021. Comments and recommendations given at the public hearing, along with the results of public workshops that were also sponsored by the Township, were considered and reflected in changes to the draft ordinance. Accordingly, under the facts of this lawsuit, Plaintiff and those similarly situated had ample opportunity to engage in political discourse regarding the zoning ordinance. Even after adoption, Plaintiff was still permitted to seek a challenge under the statute it now seeks to have declared unconstitutional. Plaintiff was unable to meet the statutory prerequisites that require a threshold showing of support within a timeframe deemed appropriate by the Michigan Legislature. Plaintiff has attempted to achieve by injunction what it could not achieve via discourse in the public arena pursuant to a content neutral,

nondiscriminatory regulation of the state's election mechanics. Where Plaintiff seeks a court order compelling a referendum election on Ypsilanti's revised ordinance, the proper avenue is for Plaintiff to seek mandamus relief in state court, not a declaration that the statute is unconstitutional. Because Plaintiff has not provided any authority demonstrating it has stated a claim upon which relief may be granted under the First Amendment, Plaintiff's claims must be dismissed.

### II. Plaintiff has failed to state a Fourteenth Amendment due process claim

Plaintiff has added a claim for violation of substantive due process since Defendants' Motion to Dismiss was filed. To support this claim, Plaintiff alleges Defendant Roe acted arbitrarily and capriciously by misleading Plaintiff into believing the petitions needed to be filed by March 26, 2022. (Plaintiff's Response, ECF No. 25, Page ID. 355). "Government conduct violates substantive due process rights only if it deprives an individual of a particular constitutional guarantee, or otherwise 'shock[s] the conscience.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014). By arguing that a "shock the conscience" standard applies, Plaintiff apparently concedes that it has no liberty or property interest on which to otherwise premise its due process claim. Proceeding accordingly, even under a view of the facts that is most favorable to Plaintiff, this standard is not met. That Plaintiff was "misled" is simply the interpretation of Plaintiff's attorney. The MZEA is clear that the Michigan election law applies to extend the submission deadline, and this was

recognized by Plaintiff's attorney. Thus, under the facts of this case, no reasonable jury could conclude that any action taken by the Township "shocks the conscience." See *EJS Properties, LLC v. Toledo*, 698 F.3d 845 (6th Cir. 2012), where the court found that:

> "the behavior against EJS in this case does not 'shock the conscience.' Perhaps it is unfortunate that the solicitation of a bribe by a public official does not shock our collective conscience…[b]ut, although we condemn McCloskey for his misconduct, we simply cannot say that his behavior is so shocking as to shake the foundation of this country. While appellees' alleged conduct was reprehensible, it is not that type of conduct which so 'shocks the conscience' that it violates appellant's due substantive due process rights."
> [Id. at 862].

## CONCLUSION & RELIEF REQUESTED

Because Plaintiff has not provided this Court with any authority demonstrating a right to relief under the First Amendment or the Fourteenth Amendment's Due Process Clause, Defendants respectfully request that this Court dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | KERR, RUSSELL AND WEBER, PLC<br>BY: /s/ *James E. Tamm*<br>James E. Tamm (P38154)<br>Attorneys for Defendants Charter Township of Ypsilanti and Heather Jarrell Roe<br>500 Woodward Avenue, Suite 2500<br>Detroit, MI 48226-3427<br>T: 313-961-0200; F: (313) 961-0388 |
| Dated: May 16, 2022 | jtamm@kerr-russell.com |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 16, 2022, I filed the foregoing document with the Clerk of the Court using the Court's electronic filing system which will electronically serve all parties of record.

                                    /s/ James E. Tamm
                                    James E. Tamm (P38154)