UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Ypsilanti Township Citizens for
Responsible Government,

     Plaintiff,

                                Civil Case No. 22-10614

v.

Jocelyn Benson, in her official         Sean F. Cox
capacity as Secretary of State of      United States District Court Judge
Michigan, *et al.*,

     Defendants.

_____/

## MEMORANDUM OPINION
## DENYING PLAINTIFF'S RENEWED
## MOTION FOR PRELIMINARY INJUNCTION

On May 11, 2022, this Court issued an "Order Denying Plaintiff's Renewed Motion For Preliminary Injunction," stating that the "Court is denying the motion because it concludes that Plaintiff has not met its burden of establishing that it is entitled to the preliminary injunctive relief sought by Plaintiff in its Renewed Motion For Preliminary Injunction." (ECF No. 27) The Court now issues this Memorandum Opinion, in order to more fully set forth its analysis and reasoning behind that decision.

## BACKGROUND

Under the Michigan Zone Enabling Act, Mich. Comp. Laws § 125.3101 *et seq*. ("ZEA"), before an adopted or amended zoning ordinance may take effect, a local agency of government is required to publish a "notice of ordinance adoption" within 15 days of adoption. Mich. Comp. Laws § 125.3401(7).

1

Michigan's ZEA provides a means for "a registered elector residing in the zoning jurisdiction of a county or township" to seek to have the ordinance submitted to the electorate for approval.  Mich. Comp. Laws § 125.3402.  Within 7 days after the publication of the zoning ordinance, a "registered elector residing in the zoning jurisdiction of a county or township may file with the clerk of the legislative body a notice of intent to file a petition."  Mich. Comp. Laws § 125.3402(1).

If such a notice of intent is filed, "the petitioner shall have 30 days following the publication of the zoning ordinance to file a petition signed by a number of registered electors residing in the zoning jurisdiction not less than 15% of the total vote cast within the zoning jurisdiction for all candidates for governor at the last preceding general election at which a governor was elected, with the clerk of the legislative body requesting the submission of a zoning ordinance or part of a zoning ordinance to the electors residing in the zoning jurisdiction for their approval."  Mich. Comp. Laws § 125.3402(2).

"Upon the filing of a notice of intent," the "zoning ordinance or part of the zoning ordinance adopted by the legislative body shall not take effect until 1 of the following occurs:" 1) the "expiration of 30 days after publication of the ordinance, if a petition is not filed within that time;" 2) "[i]f a petition is filed within 30 days after publication of the ordinance, the clerk of the legislative body determines that the petition is inadequate;" or 3) "[i]f a petition is filed within 30 days after publication of the ordinance, the clerk of the legislative body determines that the petition is adequate and the ordinance or part of the ordinance is approved by a majority of the registered electors residing in the zoning jurisdiction voting on the petition at the next regular election or at any special election called for that purpose."  Mich. Comp. Laws §

2

125.3402(3).  The petitions, and any election held as a result of a petition, are subject to the

Michigan election law.  Mich. Comp. Laws § 125.3402(4).

It is undisputed that the Township enacted amendments to its zoning ordinance and on

February 24, 2022, the Township published its "Notice of Adoption of an Amendment to the

Zoning Ordinance Charter Township of Ypsilanti" in the Washtenaw Legal News.  (*See* Roe Aff.

at ¶ 3).

Plaintiff alleges Latrice T. Moore is a citizen of the Township.  On March 1, 2022 Moore

filed a "Notice Of Intent to File Petition" pursuant to MCL 125.3402."  (Roe Aff. at ¶ 4).

Plaintiff alleges that Moore "coordinated with Plaintiff to meet the requirements of Mich. Comp.

Laws § 125.3402."  (Am. Compl. ¶¶ 34).

It is undisputed that 23,856 registered voters voted in the last gubernatorial election and,

therefore, under the statute, Plaintiff was required to obtain 3,578 valid signatures within 30 days

in order to meet the statute's signature requirement.  (*See* Am. Compl. at 37-38; Roe Letter; Roe

Affidavit).

With the publication of the notice of the amendment occurring on February 24, 2022, the

30-day period for filing petitions expired on Saturday, March 26, 2022.

Because the 30-day period expired on a Saturday, pursuant to statute, the deadline for

submission of petitions expired on the next secular day, Monday March 28, 2022.  Mich. Comp.

Laws § 168.13.

On March 22, 2022, Plaintiff Ypsilanti Township Citizens for Responsible Government,

ballot question committee ("Plaintiff") initiated this action by filing its "Complaint For

Declaratory And Injunctive Relief."  (ECF No. 1).  Plaintiff did not file a verified complaint and

the complaint attached no affidavits.

Plaintiff filed suit against Defendants Jocelyn Benson, in her official capacity as Secretary of State of Michigan ("the Secretary of State"), the Charter Township of Ypsilanti ("the Township"), and Heather Jarrell Roe ("Roe"), in her official capacity as the Ypsilanti Township Clerk. Plaintiff's March 22, 2022 complaint asserted one count, "Violation Of First And Fourteenth Amendments To The United States." Plaintiff challenges the constitutionality of Mich. Comp. Laws § 125.3402(2). Plaintiff contends the statute is unconstitutional because, in practice, the signature requirement is virtually impossible to meet and, therefore, places a severe burden on Plaintiff's First and Fourteenth Amendment rights. Plaintiff seeks a declaration that the signature requirement is unconstitutional.

On Wednesday, March 23, 2022, Plaintiff filed an Ex Parte Motion for Preliminary Injunction & Temporary Restraining Order and an Ex Parte Motion to Expedite Consideration of that motion, asking that this Court issue injunctive relief without notice to Defendants and to do so before March 26, 2022.[1] (ECF Nos. 6 & 7). This Court issued an order that same day, denying Plaintiff's request that an injunctive be issued without notice to Defendants, stating:

> . . . In these filings, Plaintiff appears to ask this Court to issue a preliminary injunction or temporary restraining order in this case on an ex parte basis. A preliminary injunction, however, may not be issued on an ex parte basis. *See* Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."). Accordingly, IT IS ORDERED that Plaintiff's request for an ex parte preliminary injunction is DENIED.
> Under Fed. R. Civ. P. 65(b), a temporary restraining order may be issued "without written or oral notice to the adverse party or its attorney only if:" 1)

[1]In this filing, Plaintiff stated that the deadline for collecting signatures on its petition was March 26, 2022.

4

"specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and 2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." (emphasis added).

Plaintiff has not provided this Court with any valid reason why it should not be required to give Defendants notice of its motion seeking injunctive relief and Plaintiff's counsel has not provided the Court with a certification, in writing, of the efforts made to give Defendants notice.  As such, to the extent Plaintiff's filings request an ex parte temporary restraining order, that request is also DENIED.

It is this Court's practice to hold an expedited status conference in cases wherein a preliminary injunction is requested. Plaintiff's counsel is directed to immediately serve Defendants with the Complaint in this action, along with the motion seeking injunctive relief, and file a proof of service on the docket. Plaintiff's counsel should also contact this Court's  chambers, to provide the contact information for Defendants' attorneys. This Court will then schedule an expedited status conference to discuss the Motion for Preliminary Injunction and a
briefing schedule for it.

(3/23/22 Order).

At the "request of Plaintiff's counsel," Roe "agreed to open the Ypsilanti Township Clerk's Office on Saturday, March 26, 2022, to receive petitions, despite the deadline not expiring until Monday, March 28, 2022."  (Roe Aff. at ¶ 7).

It is undisputed that on March 26, 2022, representatives of Plaintiff delivered petitions to Roe at the Township Clerk's Office at 5:00 p.m.  Zachary Lask was one of the individuals who delivered those petitions to Roe.  Lask states that he was advised, by an unidentified Township representative, that she would not be accepting petitions after 5:15 p.m. on Saturday.  A second batch of petitions arrived at the Township Clerk's Office on or about 5:15 p.m. and those petitions were accepted.  Zask states that he was not told that petitions could have been turned in on Monday and he was led to believe that "we barely made the turn in deadline of Saturday, March 26, 2022."  (Lask Aff., ECF No. 22-6).

It is undisputed that the petitions that Plaintiff delivered to Roe at the Township Clerk's Office on Saturday, March 26, 2022 included 7,895 signatures – more than twice the number of signatures required.

After Plaintiff's counsel served Defendants and provided contact information for Defense Counsel, this Court held a Status Conference with counsel on March 30, 2022, to discuss the pending Motion for Preliminary Injunction.  During that conference, counsel for the Secretary of State asserted that the Secretary of State should not be a named Defendant in this case because Michigan's Secretary of State has no role or function in the petition process set forth in the Michigan's Zoning Enabling Act.  And more importantly, the parties jointly advised the Court that Plaintiff's Motion for Preliminary Injunction was likely moot because, after filing this action and its motion, Plaintiff submitted a petition to the Township with more than 7,000 signatures. The parties agreed to postpone any briefing on the Motion for Preliminary Injunction and that the Court would hold another status conference on April 11, 2022.

At the April 11th Status Conference, Plaintiff's counsel advised the Court that Plaintiff is unsure if it intends to pursue any preliminary injunctive relief in this case.   Defense counsel advised that the Township and Roe intended to file a Motion to Dismiss this action.  The Township and Roe filed their motion later that same day.

On April 12, 2022, this Court issued an "Order Regarding Pending Motions" that denied Plaintiff's Motion for Preliminary Injunction without prejudice and ordered that if Plaintiff wishes to pursue a preliminary injunction, it shall file a new Motion for Preliminary Injunction no later than April 18, 2022.  (ECF No. 19).  This Court also ordered that if such a motion is filed, it "shall address all relevant facts that have occurred since March 23, 2022, shall specify

6

the injunctive relief that Plaintiff is seeking, and attach, as an exhibit, a proposed preliminary injunction." (*Id.*).

On April 13, 2022, Roe issued a letter to Plaintiff advising that "[u]pon a review of the signatures and comparisons wit the Qualified Voter File, it was determined that 2,754 valid signatures were submitted.  This falls short of the 3,578 signatures needed to place the referendum on the ballot.  Therefore, a referendum will not be placed on the August ballot." (ECF No. 22-4).

Five days later, on April 18, 2022, Plaintiff filed a "First Amended Complaint For Declaratory And Injunctive Relief" that superceded and replaced Plaintiff's original complaint. Like its original complaint, Plaintiff's First Amended Complaint is not a verified complaint.  It names the same three Defendants (the Township, Roe, and the Secretary of State).  Plaintiff's amended pleading includes additional factual allegations.  It also adds a second count, that is asserted against the Township and Roe – "Count II – Defendant Roe And Defendant Township Violated Plaintiff's Substantive Due Process Right To Political Speech And Ballot Access."  In this new count, Plaintiff alleges that the Township and Roe misled Plaintiff into believing that March 26, 2022 was the deadline to submit her petition, when the actual deadline was a few days later, and alleges that "Plaintiff might have obtained sufficient signatures" if Plaintiff had those additional days to gather signatures.

On April 18, 2022, Plaintiff filed a Renewed Motion for Preliminary Injunction.  (ECF No. 22).  The motion does not request an evidentiary hearing, but rather, asks the Court to rule in favor of Plaintiff based upon the briefs and exhibits filed.  Plaintiff filed the following exhibits in support of its motion:  1) a proposed order granting Plaintiff's requested preliminary injunction

(ECF No. 22-1); 2) a document that appears to list the 2020 populations of townships in Michigan (ECF No. 22-2); 3) a document showing the election results of the November 6, 2018 general election, from Washtenaw County's website (ECF No. 22-3);  4) Defendant Roe's April 13, 2022 letter to Plaintiff advising that Plaintiff has not met the signature requirement (ECF No. 22-4);  5) an email thread between Plaintiff's counsel and counsel for the Township (ECF No. 22-5); 6) an Affidavit from Zachary Lask, that addresses events that occurred on March 26, 2022 (ECF No. 22-6); 7) an Affidavit from Roe (ECF No. 22-7); and 8) an Affidavit from Mark Grebner, who identifies himself as an "expert in the drafting, organization, and circulation of ballot initiative campaigns."

The body of April 18th Plaintiff's Renewed Motion for Preliminary Injunction states that "[g]iven that Plaintiff was unable to obtain a sufficient number of valid signatures within the 30 day time frame, Plaintiff hereby moves for entry of a preliminary injunction, preventing enforcement of Mich. Comp. Laws § 125.3402 and the disqualification of Plaintiff's petition until final disposition of the present matter."  (ECF No. 22 at PageID.194).   At the Court's request, Plaintiff attached a proposed preliminary injunction as an exhibit to her motion and it states:

> Upon consideration of Plaintiff's Renewed Motion for Preliminary Injunction and the parties' briefing, this Court finds that Plaintiff has demonstrated a need for preliminary injunction in this case. *See Graveline v. Johnson*, 336 F. Supp.3d 801, 807 (E.D. Mich. 2018).
> Accordingly, it is hereby ORDERED that, pending a trial on the merits, Defendants and all of their respective officers, agents, servants, employees, attorneys, and persons acting in concert of participation with them are:
> 1. Enjoined and restrained from enforcing Mich. Comp. Laws § 125.3402 in so far as it prevents petitioners in large townships, such as Plaintiff, from obtaining access to the ballot if they have not obtained the signatures of 15% of the number of voting electors in the last gubernatorial election in the township.

IT IS FURTHER ORDERED that Plaintiff shall have an additional 2.5 days to obtain signatures for their petitions, so as to be allotted the full 30-days under Mich. Comp. Laws § 125.3402(2).

IT IS FURTHER ORDERED THAT This Preliminary Injunction shall take effect immediately and shall remain in effect pending trial in this action or until further order of this Court.

IT IS SO ORDERED.

(ECF No. 22-1).

The Secretary of State opposes Plaintiff's Renewed Motion for Preliminary Injunction. Among other things, the Secretary of State continues to assert that the Secretary of State should not have been named in this lawsuit, because the "Michigan Secretary of State has no role or function in the petition process set forth in the Z[oning Enabling Act]. Mich. Comp. Laws § 125.3402." (ECF No. 24 at PageID.310). Nevertheless, the Secretary of State opposes Plaintiff's motion on the merits. The Township and Roe also oppose Plaintiff's Renewed Motion for Preliminary Injunction. Plaintiff filed its Reply Brief on May 2, 2022.

## ANALYSIS

"A preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (citation omitted).

"In gauging requests for a preliminary injunction, district courts look at four factors: (1) the plaintiff's likelihood of success on the merits; (2) the risk of irreparable harm to plaintiffs absent injunctive relief; (3) the risk of harm to others resulting from an injunction; and (4) the broader public interest." *A1 Diabetes & Med. Supply v. Azar*, 937 F.3d 613, 618 (6th Cir. 2019). These "factors are to be balanced, not prerequisites to be met." *S. Glazer's Distibs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017).

9

Where, as here, material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, a district court need not hold an evidentiary hearing. *Nexus Gas Trans., LLC v. City of Green, Ohio*, 757 F. App'x 489, 496-97 (6th Cir. 2018). Here, Plaintiff did not request an evidentiary hearing. And the parties indicated during the status conferences with this Court that neither an evidentiary hearing nor oral argument would be necessary.[2]

The movant bears the burden of demonstrating entitlement to the preliminary injunction sought, and this burden is a heavy one. A preliminary injunction should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

This already stringent burden is even more difficult to meet where, as here, a plaintiff seeks an injunction not to maintain the status quo pending resolution of the case, but to obtain affirmative relief. *See, eg.*, *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc*., 60 F.3d 27, 34 (2d Cir. 1995); *Glauser-Nagy v. Med. Mut. of Ohio*, 987 F.Supp. 1002, 1011 (N.D. Ohio 1997). That is because "[t]he purposed of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be had."[3] *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535, 542 (6th Cir. 2017).

## I.    Substantial Likelihood Of Success On The Merits Of Plaintiff's Claims

---

[2] They also requested that the Court make its ruling as soon as possible, because of the time-line for certifying and printing ballots.

[3] A district court's findings of fact and conclusions of law in addressing a motion seeking a preliminary injunction are not binding on a trial on the merits. *Id.*

While no one factor is controlling, when a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits will often be the determinative factor.  *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (citing *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)).  Thus, the Court starts its analysis by considering whether Plaintiff has demonstrated that it has a strong likelihood of success on the merits of their claims.

**A.      Claims Against The Secretary Of State**

In response to the pending motion, the Secretary of State persuasively argues that Plaintiff has not established a likelihood of success on the merits as to any claim asserted against her in this action.  Her brief explains:

> In order to obtain a preliminary injunction against the Secretary of State, YTCRG must show a strong likelihood that it will prevail at trial against the Secretary. *See e.g. Ohio Republican Party*, 543 F.3d at 361. In this case, that means that YTCRG must show a strong likelihood that it can establish that the Secretary of State violated its First and Fourteenth Amendment rights through the enforcement of Mich. Comp. Laws § 125.3402(2). YTCRG cannot hope to prevail on that claim against the Secretary of State, however, because the Secretary has nothing to do with enforcing that statute.
>
> Mich. Comp. Laws § 125.3402(2) imposes no duty or obligation upon the Secretary of State, and no part of Mich. Comp. Laws § 125.3402 even mentions the Secretary of State. Instead, Mich. Comp. Laws § 125.3402 refers only to "the clerk of the legislative body." Mich. Comp. Laws § 125.3402(2-3). Plaintiff YTCRG, however, admits in its amended complaint that Defendant Roe is the Clerk of the Township of Ypsilanti. (R. 20, PageID.159, ¶15.) Simply put, the Secretary of State has nothing to do with zoning ordinances, the Plaintiff's petition, or any alleged violation of its constitutional rights.
>
> The only allegation against the Secretary of State in the Amended Complaint states that she serves as Michigan's chief election officer. (ECF No. 20, PageID.159, ¶14.) This is an accurate statement of the Secretary's supervisory role over local election officials in the performance of their duties under the Michigan Election Law. Mich. Comp. Laws §168.21. But Plaintiff YTCRG is not challenging any part of the election law or the Secretary's direction on how the election law is to be enforced. YTCRG is instead challenging the ZEA, and has made no allegations of how the Secretary of State did anything with regard to that

11

> act that violated its constitutional rights. Plaintiff has failed to state a claim
> against the Secretary of State, and it has consequently failed to demonstrate a
> strong likelihood of success on the merits of any claim against the Secretary of
> State. Plaintiff's motion for preliminary injunction should be denied.

(ECF No. 24 at PageID.316-18).  That argument should come as no surprise to Plaintiff, as the Secretary of State has asserted that same position since this Court's first status conference in this case.

Nevertheless, Plaintiff's opening brief does not explain how Plaintiff believes she has a likelihood of success as to any claim asserted against the Secretary of State in this case.  And even after the Secretary of State clearly and concisely explained her position in her response brief, Plaintiff failed to address her argument in Plaintiff's reply brief.

As such, this Court concludes that Plaintiff has not established that it has a likelihood of success on the merits as to any claim asserted against the Secretary of State in this case.

**B.     Count I - Violation Of First And Fourteenth Amendments To The United States Constitution**

In support of its motion, Plaintiff takes the position that Mich. Comp. Laws § 125.3402 is a ballot access law that should be analyzed under the Supreme Court's *Anderson/Burdick* framework, that was applied in *Graveline v. Johnson*, 336 F. Supp.3d 801 (E.D. Mich. 2018).

In response to Plaintiff's motion, Defendants take the position that the challenged statute is not a "ballot access law," at least not in the "traditional sense of using different eligibility criteria for candidates from the non-major political parties, nor does it regulate speech." (Twp./Roe's Br. at 18).  All three Defendants contend that Plaintiff's challenge should not be analyzed under the *Anderson/Burdick* framework.  Defendants contend that Mich. Comp. Laws § 125.3402 "is part of Michigan's statutory scheme governing zoning, and as such is social and

12

economic regulation that is subject to a rational basis standard of review. *See Village of Euclid, Ohio v. Amber Realty Co*, 272 U.S. 365 (1926)." (Township/Roe's Br. at 12). Defendants refer the Court to a number of cases in support of their position, including *Taxpayers United for Assessment Cuts v. Austin* 994 F.2d 291 (6th Cir. 1993). Defendants also take the position that, even if the *Anderson/Burdick* framework applies to Plaintiff's challenge, Plaintiff still has not established a likelihood of success on the merits.

Defendants have offered cogent arguments in support of their position that the *Anderson/Burdick* framework should not be applied, under the circumstances presented here, to Plaintiff's challenge. But the Court need not decide that issue because, even if the *Anderson/Burdick* framework is the one to be applied here, the Court concludes that Plaintiff still has not established a likelihood of success on the merits as to its challenge.

In *Kishore v. Whitmer*, the Sixth Circuit summarized the *Anderson-Burdick* framework as follows:

> "[T]he right to vote in any manner and the right to associate for political purposes through the ballot [are not] absolute," and "States retain the power to regulate their own elections." *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). The *Anderson-Burdick* framework governs First and Fourteenth Amendment challenges to ballot-access restrictions. *See Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Burdick*, 504 U.S. at 441, 112 S.Ct. 2059. Within that framework, "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick,* 504 U.S. at 434, 112 S.Ct. 2059.
>
> When state law imposes " 'severe' restrictions," "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.' " *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992)). When state law imposes "reasonable, nondiscriminatory restrictions," however, the law is subject to rational-basis review and "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Id.* (quoting *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564). When state law imposes an intermediate restriction that falls somewhere between those two poles, "we weigh

the burden imposed by the State's regulation against 'the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.' " *Thompson v. Dewine*, 959 F.3d 804, 808 (6th Cir. 2020) (per curiam) (quoting Burdick, 504 U.S. at 434, 112 S.Ct. 2059).

*Kishore v. Whitmer*, 972 F.3d 745, 749 (6th Cir. 2020).

Here, Plaintiff contends that strict scrutiny should be applied to Mich. Comp. Laws § 125.3402 because the statute's requirements constitute a "severe burden." The Court disagrees.

The "hallmark" of a severe burden is "exclusion or virtual exclusion from the ballot." *Schmitt v. LaRose*, 933 F.3d 628, 639 (6th Cir. 2019); *see also Thompson*, 959 F.3d at 809 ("At bottom, a severe burden excludes or virtually excludes electors or initiatives from the ballot.").

Plaintiff does not claim that the statute's ballot-access requirements constitute a severe burden in light of the impact of pandemic-created "stay-at-home orders" as was the claim in *Kishore[4], Esshaki[5]*, or *Thompson*. And although it cites such cases, Plaintiff does not claim a severe burden by virtue of the statute at issue prohibiting or restricting the kind of payments that can be made to petition circulators. Nor does Plaintiff claim a severe burden of the nature that was seen in *Graveline v. Johnson*, 747 F. App'x 408 (6th Cir. 2018).

Rather, in claiming a severe burden here, Plaintiff offers a list of complaints that the process was more difficult for Plaintiff than it believes it should be. Plaintiff's complaints include that: 1) the Township had a high voter turn-out in 2018, which resulted in more signatures being required than in years with lower voter turnouts; 2) in "a large township, such

---

[4]*Kishore v. Whitmer*, 972 F.3d 745 (6th Cir. 2020).

[5]*Esshaki v. Whitmer*, 813 F. App'x 170 (6th Cir. 2020).

14

as the Charter Township of Ypsilanti," a petitioner must gather what it believes is an "unreasonably high number" of signatures within a 30-day time period – though the number required is a small fraction of what was at issue in cases like *Graveline*;  3) gathering signatures is more difficult during winter weather; 4) Plaintiff needed to use paid circulators in order to try to gather the required signatures; 5) the geography and layout of the Township make it difficult to canvas for signatures.

Plaintiff also contends that a "substantial fraction" of this Township's voters "either do not frequent" public forums within the Township or "have adopted a general policy of not signing petitions carried by strangers."  (ECF No. 22-8).  As the *Thompson* court noted, constitutional violations require *state action* and "we cannot hold private citizens' decisions" or conduct against the state.  *Thompson,* 959 F.3d at 810.

In sum, Plaintiff argues that the statute's requirement effectively restrict ballot access to the "best funded" or "best organized" individuals or groups.  As the Secretary of State notes, the First and Fourteenth Amendments do not require initiative or referenda to be easy and the "right to vote in any manner . . . [is not] absolute."  *Burdick*, 504 U.S. at 433.  And the state's regulatory interests in the statute's requirements include ensuring that ordinances and amendments are not submitted to voters without sufficient support.  (*See* Twp./Roe's Br. at 21).

Plaintiff has not shown that Mich. Comp. Laws § 125.3402 imposes a severe burden.  To the contrary, the statute appears to impose reasonable nondiscriminatory restrictions that are subject to rational-basis review, that is certainly met here.

Accordingly, the Court concludes that Plaintiff has not established a likelihood of success on the merits as to Count I of its Amended Complaint.

15

C.     **Count II – Substantive Due Process Claim Asserted Against The Township
       And Defendant Roe**

In Count II of Plaintiff's Amended Complaint, Plaintiff asserts a substantive due process

claim against the Township and Roe.

Plaintiff acknowledges that [t]o make a successful substantive due process claim, one

must show that a government official has engaged in behavior that shocks the conscious." (Pl.'s

Br. at 23) (Citing *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)). That is, "the

official's actions must be "so egregious, so outrageous, that it may fairly be said to shock the

contemporary conscience." *Id.* at 847.

Plaintiff, despite being represented by counsel and having had access to all of the

relevant statutes, was under the impression that Plaintiff's petitions were due on March 26, 2022.

At the request of Plaintiff's counsel, Roe agreed to open her office on Saturday, March 26, 2022

to receive Plaintiff's petition. On March 26, 2022, representatives of Plaintiff then delivered

petitions to Roe at the Township Clerk's Office at 5:00 p.m. Zachary Lask was one of the

individuals who delivered those petitions to Roe. Lask states that he was advised, by an

unidentified Township representative, that she would not be accepting petitions after 5:15 p.m.

on Saturday. A second batch of petitions arrived at the Township Clerk's Office on or about

5:15 p.m. and those petitions were accepted.  The petitions that Plaintiff delivered to Roe at the

Township Clerk's Office on Saturday, March 26, 2022 included 7,895 signatures – more than

twice the number of signatures required. Zask states that he was not told that petitions could

have been turned in on Monday and he was led to believe that "we barely made the turn in

deadline of Saturday, March 26, 2022." (Lask Aff., ECF No. 22-6). Thus, as Plaintiff's brief

makes clear, Plaintiff's substantive due process claim is that "Defendants allowed Plaintiff to

operate under the false belief that the filing deadline was March 26, 2022." (Pl.'s Br. at 24).

Plaintiff has not directed this Court to any case wherein such conduct has been found to shock the conscious, for purposes of a substantive due process claim.

Plaintiff has not shown Roe, or any other Township official, engaged in conscious-shocking conduct towards Plaintiff that would support a substantive due process claim against either Roe or the Township. The Sixth Circuit's[6] decision in *EJS Properties, LLC v. City of Toledo* supports this ruling. *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012). In that case, the Sixth Circuit concluded that even allegations of corruption were insufficient to establish a substantive due process claim.

Accordingly, this Court finds that Plaintiff has not shown a substantial likelihood of success on its substantive due process claim.

Because Plaintiff has not established a likelihood of success as to either of its claims, this Court need not consider the remaining factors and concludes that Plaintiff has not met its burden of establishing that it is entitled to the preliminary injunctive relief that it requests.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: May 19, 2022

---

[6]As the Tenth Circuit noted in *Onyx Properties, LLC v. Board of Cnty. Commr's of Elbert Cnty.*, 838 F.3d 1039, 1049 (10th Cir. 2016), the Sixth Circuit is one of two circuits that have set "especially strict standards" regarding such substantive due process claims.